**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ELECTION TRUTH ALLIANCE**, *et al.,* | : | **ELECTRONICALLY FILED** |
| **Plaintiffs,** | : | **CIVIL NO. 1:25-cv-00329** |
| | : | |
| **v.** | : | **HONORABLE SUSAN PARADISE** |
| | : | **BAXTER** |
| **AL SCHMIDT, in his official capacity as** | : | |
| **Secretary of Commonwealth of Pennsylvania, et** | : | |
| **al.,** | : | |
| **Defendants.** | : | |

## ALLEGHENY COUNTY BOARD OF ELECTIONS' MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS

### I.    INTRODUCTION

The 2024 Presidential Election was held on November 5, 2024. Allegheny County conducted required equipment testing before the election and after the polls closed published initial returns as batches of ballots were processed. Democratic nominee Kamala Harris received a majority of votes in Allegheny County, but Republican nominee Donald Trump ultimately won the Commonwealth of Pennsylvania and was elected President. Following Election Day, the Allegheny County Board of Elections conducted a rigorous audit process, as required by the Commonwealth, to ensure the results were accurate. It then certified the County's election results. The Secretary of the Commonwealth subsequently certified the results state-wide. On December 17, 2024, the Electoral College formally elected President Trump as the 47th President of the United States, and he was sworn into office on January 20, 2025.

More than a year after Election Day 2024, more than 11 months after the election was certified, and nearly ten months after President Trump took office, Plaintiffs filed a Complaint

apparently seeking to cast doubt on the election results. The Complaint fails to establish Plaintiffs' Article III standing to pursue claims against Allegheny County, to plausibly allege claims sufficient to show that Plaintiffs are entitled to relief, as required by Rule 8, and to allege sufficient facts to state a claim under 42 U.S.C § 1983 or 52 U.S.C § 10101(a). For these reasons, the Complaint should be dismissed.

## II.    BACKGROUND

### A.  The 2024 Election

The Allegheny County Board of Elections ("the County") is responsible for administering all federal, state, county, and local elections in Allegheny County. The County carries out logic and accuracy testing, canvasses ballots, and conducts any post-election audits or recounts required by statute or directed by the Department of State, among many other duties of election administration.

The County conducts logic and accuracy testing of its election equipment consistent with statutory requirements and the Directive of the Pennsylvania Department of State.[1] Logic and accuracy testing is a set of pre-election processes that ensures that voting machines and other components of a county's voting system are correctly configured before the polls open.[2] Representatives of political parties and organizations that advocate for fair elections can observe logic and accuracy testing. 25 P.S. § 3031.10(d). In the lead up to the 2024 General Election,

---

[1] *Directive on Logic & Accuracy Testing,* Pennsylvania Department of State (March 7, 2024), https://www.pa.gov/content/dam/copapwp-pagov/en/dos/resources/voting-and-elections/directives-and-guidance/2024-Directive-on-Logic-Accuracy-Testing-3.0.pdf [https://perma.cc/S8RK-5ZJZ].

[2] *Id.*

Allegheny County's election equipment used Election Systems and Software Inc's (ES&S) EVS 6.3.0.0.[3]

In the 2024 General Election, the County canvassed ballots and published initial returns consistent with state statutory requirements. In the Commonwealth, county boards of elections may begin to review and count mail-in and absentee ballots as part of a "pre-canvass" no earlier than 7:00 AM on election day. 25 P.S. § 3146.8(g)(1.1).[4] At this pre-canvass, the county board reviews the outer envelope of these mail ballots to evaluate the sufficiency of the declaration of eligibility that the voter must complete and affirms the voter's eligibility. 25 P.S. § 3146.8(3). The board also confirms that the ballots are enclosed in the secrecy envelope. 25 P.S. § 3150.16. The eligible ballots are counted, computed, and tallied by the county board. 25 P.S. § 3146.8(g)(4). The county board must publish those initial returns following the close of the polls at 8:00 P.M.. *Id*. However, although counties may begin the pre-canvass at 7:00 AM, voters may return mail ballots until 8:00 PM on election day, 25 P.S. § 3146.8(g)(1)(ii), so any initial returns posted immediately following the close of polls at 8:00 PM are followed by updates as the canvass continues. Thus, as it has in the past, on Election Day in 2024 (hereinafter, "Election

---

[3] The Complaint implies that the EVS 6.4.0.0 or EVS 6.5.0.0 software updates somehow impacted the election results. However, it never alleges that the County used those versions of the software, nor could it. As of January 5, 2026, the County has never implemented EVS 6.4.0.0 or EVS 6.5.0.0.

[4] The term "canvass" refers to the post-election process that aggregates and confirms that all valid ballots cast in the election are accurately counted and included in the final election results. *See Canvassing & Certifying an Election*, U.S. Election Assistance Administration (May 1, 2022), https://www.eac.gov/sites/default/files/electionofficials/QuickStartGuides/Canvass_and_Certification_EAC_Quick_Start_Guide_508.pdf [https://perma.cc/8GZX-4MLA]. Mail-in and absentee ballots are treated the same for the purposes of the pre-canvass and canvass processes carried out by county boards of elections, and so this brief will refer to both absentee and mail-in ballots as "mail ballots."

3

Day"), the County posted its first batch of mail ballot results shortly after the polls closed at 8:00 PM. The County then continued to canvass mail ballots that arrived prior to the close of polls at 8:00 PM, and posted those returns online later in the evening or the following day.

Following Election Day, the County participated in two audit processes required by the Commonwealth to affirm the results. First, as required by law, it conducted a 2% statistical recount. 25 P.S. § 3031.17. During this audit, all county boards of elections pull a random sample of either 2% of all ballots cast in all races or a random sample of 2,000 ballots, whichever number is fewer. *Id*. For Allegheny County it is always 2,000 ballots. The county boards of elections then count those ballots using a different method than they used for the election results, *id*., to ensure the results match with those obtained using the election equipment. Second, the Secretary of the Commonwealth oversees a statewide risk-limiting audit, which is designed to confirm the results of an election with a high degree of statistical confidence.[5] To begin the risk-limiting audit, the Secretary randomly selects one race—in 2024, the race for State Treasurer—and randomly selects specific batches of ballots to audit—in 2024 this included four batches in Allegheny County.[6] For those batches selected in Allegheny County, the County conducted a full hand count to ensure the results matched with those obtained using the election equipment. By employing these two processes, Allegheny County and Pennsylvania ensure that any significant

---

[5] *Risk Limiting Audit Directive*, Pennsylvania Dep't of State (Sept. 30, 2022), https://www.pa.gov/content/dam/copapwp-pagov/en/vote/elections/2022-09-30-Risk-Limiting-Audit-Directive.pdf [https://perma.cc/K5JQ-5KCN].

[6] *November 5, 2024, Risk-Limiting Audit Report*, Pennsylvania Dep't of State, https://www.pa.gov/agencies/vote/elections/post-election-audits/2024-general-rla-report [https://perma.cc/HS48-SSZZ] (including link to a results spreadsheet that shows the results for four Allegheny precincts).

error in the counting of ballots would be identified. Following the audits, the County certified the election results. Nearly a year later, Plaintiffs filed their lawsuit.

**B. Plaintiffs' Allegations Regarding Allegheny County Board of Elections**

Plaintiffs make five categories of factual allegations that potentially relate to Allegheny County. First, the Complaint alleges that the County uses election equipment provided by ES&S. Compl. ¶ 21. It further alleges that "software utilized by ES&S . . . and provided to Pennsylvania counties is certified by Pro V&V," and that Pro V&V approved new software visions including ECO 1167 for EVS 6.4.0.0 (ES&S) and ECO 1188 for EVS 6.5.0.0 (ES&S) prior to the 2024 General Election. Compl. ¶¶ 22–24. Plaintiffs do not allege, nor could they, that the County used these updated versions of the EVS software in administering the 2024 General Election. In fact, there is no allegation as to what software was on Allegheny County's equipment. *See generally* Compl. ¶¶ 21–26.

Second, the Complaint alleges that certain numbers of ballots and votes were reported at particular times. Specifically, it alleges that as of 7:00 PM on November 5, 2024, the County reported mail ballots cast by 219,221 voters, including 144,417 from registered Democrats, 50,519 from registered Republicans, and 24,285 from unaffiliated and other party voters. Compl. ¶ 66. It further alleges that after 7:00 PM on November 5, 2024, the County reported 227,611 mail-in votes counted, including 164,979 votes for Harris, 59,740 for Trump, 1,968 for other party candidates, and 924 write-ins. Compl. ¶ 67. The Complaint describes a "net addition of 1,203 mail-in ballots between 7 PM EST and final results." Compl. ¶ 68. It also alleges that "[o]ther party and unaffiliated votes decreased by 23,155 relative to the number of ballots returned by registered voters in those categories," Compl. ¶ 68, an apparent reference to the fact

that most unaffiliated and third-party voters did not cast votes for unaffiliated and third-party candidates.

Third, the Complaint alleges statistical anomalies, namely that an unnamed statistical analysis identified abnormal correlations between turnout and Republican vote share, Compl. ¶¶ 69–70, and that an unnamed analysis model developed by Professor Walter Mebane identified Allegheny County as having a "manufactured votes parameter of 0.238 [0.089, 0.340]," Compl. ¶¶ 71–72.

Fourth, in a chart in Paragraph 78, the Complaint appears to allege that in Allegheny County Precinct 11760, 485 votes were cast despite the precinct having only 474 registered voters. Compl. ¶ 78.

Fifth, the Complaint alleges that the statewide election results exhibit statistical irregularities, including trends similar to those it alleges in Allegheny County, with a correlation between turnout and Republican vote share across the state. Compl. ¶¶ 79–85.

## III.    LEGAL STANDARD

A court lacking subject matter jurisdiction over a case must dismiss it pursuant to Federal Rule of Civil Procedure 12(b)(1). *Kerchner v. Obama,* 612 F.3d 204, 207 (3d Cir. 2010) ("It is axiomatic that standing to sue is a prerequisite to Article III jurisdiction."). "The person asserting jurisdiction bears the burden of showing that the case is properly before the court." *Packard v. Provident Nat. Bank*, 994 F.2d 1039, 1045 (3d Cir. 1993).

When deciding a motion to dismiss a complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept as true all well-pled facts in the complaint but may disregard legal conclusions. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). A complaint must be dismissed if it does not allege "enough facts to state a claim

to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007). In other words, a claim must be not merely "conceivable" but "plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009). Thus, it is not sufficient to allege facts that could be consistent with unlawful action, where the alleged facts are "more likely explained by[] lawful" action. *Id.* (citing *Twombly*, 550 U.S. at 567).

## IV.    ARGUMENT

### A.  Plaintiffs Lack Standing

To invoke this Court's jurisdiction, a plaintiff must meet the "irreducible constitutional minimum" of Article III standing by establishing three elements: (1) "that she has suffered an 'injury in fact' which is 'concrete and particularized' and 'actual or imminent'"; (2) "that the injury is 'fairly traceable to the challenged action of the defendant'"; and (3) "that it is likely 'that the injury will be redressed by a favorable decision.'" *Potter v. Cozen & O'Connor*, 46 F.4th 148, 154 (3d Cir. 2022) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). Plaintiffs fail to allege that they meet any of these three elements.

### 1.  *Plaintiffs Have Failed to Allege a Concrete and Particularized Injury*

To be particularized, an injury must "affect the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560 n.1. A mere "generalized grievance" that affects the plaintiff no differently from the public at large is not sufficient. *Common Cause of Pennsylvania v. Pennsylvania*, 558 F.3d 249, 258 (3d Cir. 2009). In the election context, courts have made clear that although a "person's right to vote is individual and personal in nature[,] . . . this right does not give plaintiffs carte blanche to challenge any action that conceivably infringes upon that right." *Pennsylvania Voters All. v. Ctr. Cnty.*, 496 F. Supp. 3d 861, 868 (M.D. Pa. 2020) (collecting cases). An allegation that a Defendant's policy could result in the inclusion of

fraudulent votes is insufficient to establish a particularized injury where there is a theoretical "mathematical impact on the final tally and thus on the proportional effect of every vote, but no single voter is specifically disadvantaged.'" *Bognet v. Sec'y Commonwealth of Pennsylvania*, 980 F.3d 336, 356 (3d Cir. 2020) (vacated as moot[7]) (collecting cases); *see also*, *Bowyer v. Ducey*, 506 F. Supp. 3d 699, 712 (D. Ariz. 2020).

Here, Plaintiffs do not allege that they were prevented from casting their ballots or that their ballots were not properly counted.[8] Indeed, they do not allege fraud or misconduct of any kind. Rather, they suggest that certain observations and purported statistical anomalies in the election results merit further investigation. Compl. ¶¶ 66–72. At best, this amounts to a generalized grievance and falls far short of a particularized harm sufficient to establish an injury in fact. *See Forman v. Schmidt*, No. 2:24-CV-266, 2025 WL 1207739, at *2 (W.D. Pa. Apr. 25, 2025) (concluding that allegations about vulnerable voting machines and the possibility of disenfranchisement were generalized grievances where plaintiff failed to allege that she was prevented from voting or that her vote was not counted). Even if Plaintiffs' Complaint explicitly alleged that the County's policies allowed for the inclusion of fraudulent ballots—an allegation they did not and could not make—it would still fall short of establishing a particularized harm

---

[7] A decision vacated as moot does not bind this court, but its analysis may still provide persuasive authority. *See Polychrome Int'l Corp. v. Krigger*, 5 F.3d 1522, 1534 & n.30 (3d Cir. 1993) (noting that a prior decision vacated as moot was not binding, but finding it persuasive); *In re W.R. Grace & Co.*, 475 B.R. 34, 156 (D. Del. 2012) ("Vacation of a decision only affects its binding authority on subsequent courts—the internal discussion remains useful for persuasive authority purposes.").

[8] Only Plaintiffs Craig-McCurdy and Hoffman have alleged that they are even Allegheny County voters. Election Truth Alliance has not alleged that any of its members are Allegheny County voters, let alone that any of its members suffered a concrete harm associated with Allegheny County.

because such inclusion would dilute the votes of all Pennsylvania voters equally. *Bognet*, 980 F.3d at 356 (3d Cir. 2020); *Bowyer*, 506 F. Supp. 3d at 712.

Under the Equal Protection Clause of the Fourteenth Amendment, "[t]he key inquiry for standing is whether the alleged violation of the right to vote arises from an invidious classification—including those based on 'race, sex, economic status, or place of residence within a State'—to which the plaintiff is subject and in which 'the favored group has full voting strength and the groups not in favor have their votes discounted.'" *Bognet*, 980 F.3d at 358 (quoting *Reynolds v. Sims*, 377 U.S. 533, 555 n.29, 561 (1964)). In other words, for standing purposes "a disadvantage to the plaintiff exists only when the plaintiff is part of a group of voters whose votes will be weighed differently compared to another group." *Id.*

Here, Plaintiffs never allege that they were part of a disadvantaged group. The closest they come is their allegation that "[t]he actions of the Defendants in failing to follow the statutory requirements for elections in Pennsylvania deprived Plaintiffs of the Equal Protection of the Laws, since the manner and effectiveness of their votes was *dependent on where they live*." Compl. ¶ 96 (emphasis added). Plaintiffs' theory of harm appears to be that if a county failed to adequately test its equipment, its voters would be more susceptible to inclusion of fraudulent votes. This is insufficient to allege a concrete and particularized injury for at least three reasons. First, Plaintiffs never allege any specific failure to test equipment, nor any other violation of state election law, by the County, nor could they.[9] Thus, Allegheny voters have no

---

[9] Plaintiffs include the conclusory allegation that "[a]s a result of their actions and inactions in failing to test and verify the accuracy of the counting machinery, Defendant County Boards of Elections for Cambria, Erie, and Allegheny reasonably caused and did cause the manufacture, disappearance, manipulation and/or theft of a number of votes resulted sufficient to affect the outcome of the 2024 election." Compl. ¶ 101. However, Plaintiffs never actually allege that the County failed to test and verify the accuracy of the counting machinery, nor could they.

basis to allege they were treated unequally. Second, Plaintiffs allege that the same statistical

irregularities that purportedly occurred in Allegheny County, occurred "across all Pennsylvania

counties that contain a large amount of precincts above and below 60% turnout." Compl. ¶¶ 82–

85. This allegation undermines any suggestion that fraud was more likely in some counties than

others. And third, even if a failure to follow the statutory requirements in some counties had

increased the risk that fraudulent ballots could be included in the results, the addition of such

fraudulent ballots would have "impact[ed] the entire electorate equally; not just voters in the

county where it occur[ed]," rendering Plaintiffs' allegations a generalized grievance rather than a

particularized harm. *Donald J. Trump for President, Inc. v. Boockvar*, 493 F. Supp. 3d 331, 387

(W.D. Pa. 2020).

Because Plaintiffs have failed to allege a concrete and particularized injury, they lack

standing and their claims against Allegheny County must be dismissed.

### 2. *Plaintiffs Have Failed to Allege that Any Injury was Caused by Allegheny County Board of Elections.*

Even if Plaintiffs had alleged an injury in fact, they would still lack standing to bring

claims against the County because they have failed to allege that such injury was *caused* by

Allegheny County Board of Elections.

Causation, for purposes of Article III standing, "requires the alleged injury to be fairly

traceable to the challenged action of the defendant, and not the result of the independent action

of some third party not before the court." *Finkelman v. Nat'l Football League*, 810 F.3d 187, 193

(3d Cir. 2016) (internal quotation marks omitted). "This requirement is akin to but for causation

in tort." *Id.* (internal quotation marks omitted).

Here, Plaintiffs have failed to allege any action or inaction by the County that in any way

caused injury to Plaintiffs. The Complaint includes the conclusory assertion that "[a]s a result of

their actions and inactions in failing to test and verify the accuracy of the counting machinery, Defendant County Boards of Elections for Cambria, Erie, and Allegheny reasonably caused and did cause the manufacture, disappearance, manipulation and/or theft of a number of votes resulted sufficient to affect the outcome of the 2024 election." Compl. ¶ 101. But Plaintiffs do not actually allege that the County failed to test and verify the accuracy of the counting machinery. At most, the Complaint alleges that Allegheny County used equipment provided by ES&S and that new versions of the software created for this equipment were not adequately tested. Even if it had alleged a specific problem with the new versions of the software, which it does not, it does not and could not allege that the County actually used a new version of the software. It also does not allege that any action or inaction by the County caused the alleged "statistical anomalies," nor that the County's reporting of election results on or after Election Day in any way caused injury to Plaintiffs.

Because Plaintiffs fail to allege that any action or inaction by the Allegheny County Board of Elections caused them any injury, they lack standing to bring claims against the County and those claims must be dismissed.

### 3.  *A Favorable Decision Would Not Redress Plaintiffs Alleged Injuries*

Plaintiffs filed their complaint more than a year after Election Day 2024, and more than eleven months after the election was certified. Even if Plaintiffs had legitimate concerns about the conduct of the 2024 General Election, they waited far too long to file their Complaint. There is no longer a live controversy and a favorable decision from this Court would not redress any injury to Plaintiffs.[10]

---

[10] The analysis here is similar to that for mootness. "[A]n issue is moot if changes in circumstances that prevailed at the beginning of the litigation have forestalled any occasion for meaningful relief." *Ordonez-Tevalan v. Att'y Gen. of United States*, 837 F.3d 331, 339–40 (3d

The redressability prong of Article III standing "looks forward to determine whether the injury will be redressed by a favorable decision." *Freeman v. Corzine*, 629 F.3d 146, 153 (3d Cir. 2010) (internal quotation marks omitted). "Redressability is not a demand for mathematical certainty, but it does require a substantial likelihood that the injury in fact can be remedied by a judicial decision. *Id.* (internal quotation marks omitted).

To the extent Plaintiffs believed that their votes had not been properly counted or that the election results were somehow fraudulent, they could have could have filed a petition for recount under the Election Code, 25 P.S. §§ 3154(e), 3261-3263, or an election contest pursuant to 25 P.S. §§ 3291, 3351. But they did not, and the time to do so has long since passed.[11] Plaintiffs tacitly acknowledge that it is too late to correct any errors they perceive to have occurred in the 2024 election, instead seeking forward-looking relief that would not redress their alleged injuries.

The relief Plaintiffs request against the County reinforces the conclusion that their alleged harms cannot be redressed by a favorable decision. That requested relief falls roughly into five buckets. First, Plaintiffs request that "the Court declare . . .  all Defendant[] [Boards of Elections

---

Cir. 2016). Here, however, there was no occasion for meaningful relief at the time the Complaint was filed. As such, exceptions to mootness are not applicable. *See Renne v. Geary*, 501 U.S. 312, 320 (1991) ("While the mootness exception for disputes capable of repetition yet evading review has been applied in the election context, . . . that doctrine will not revive a dispute which became moot before the action commenced."); *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 191 (2000) ("[I]f a plaintiff lacks standing at the time the action commences, the fact that the dispute is capable of repetition yet evading review will not entitle the complainant to a federal judicial forum.").

[11] A petition for recount must be made to the county board of elections prior to the completion of the computation of all returns. 25 P.S. § 3154(e). A petition to recanvass must be made no later than five days after completion of the computational canvassing of all returns by the County BOE. 25 P.S. § 3263. An election contest must be filed within twenty days of election day. 25 P.S.§ 3456.

("BOEs")] failed to follow proper elections procedures in the 2024 presidential election." Compl. ¶ 102. For standing purposes, a declaratory judgment can provide redress only where it "completely resolve[s] a concrete controversy susceptible to conclusive judicial determination." *Lutter v. JNESO*, 86 F.4th 111, 128 (3d Cir. 2023)). Here, Plaintiffs have not even alleged that the County failed to follow proper election procedures. But regardless, such a declaration at this late stage would do nothing to redress any alleged errors that occurred in the conduct of the 2024 election let alone to completely resolve any alleged harm.

Second, Plaintiffs request that the Court "require that the Defendant BOEs explain any discrepancies and statements about their voting machine and software updates in the 2024 Presidential Election" as well as "the mismatches and disappearances of ballots in the 2024 presidential election." Compl. ¶ 102. But an explanation of Defendants' conduct would do nothing to remedy any alleged vote dilution or denial.[12] Moreover, Plaintiffs point to no statutory or constitutional provision that would entitle them to such an explanation.

Third, Plaintiffs request that the Court "enjoin and require . . . Allegheny BOE to conduct a full hand recount of all ballots cast in the 2024 election in Allegheny County" and "enjoin and require that . . . Allegheny BOE determine the accuracy of all vote counts and reports in Allegheny County in the 2024 election." Compl. ¶ 130. Again, Plaintiffs cite no statutory or

---

[12] The Complaint baldly alleges that "Defendant Allegheny BOE systematically impaired Plaintiffs' ability to determine the accuracy of the count and reporting of those votes." Compl. ¶ 130. However, it provides neither an explanation as to how the County purportedly impaired Plaintiffs, nor any basis for the supposed right of voters to "determine the accuracy of the count and reporting" of votes. Plaintiffs' inability to receive an explanation that they wish they could receive is not a cognizable harm that can provide a basis for standing or be remedied by this Court.

constitutional provision entitling them to this relief.[13] As discussed, Pennsylvania law requires rigorous post-election audit processes that ensure the voting systems tabulated the paper ballots correctly—as such, a full hand recount would not produce meaningfully different results. Regardless, given that the election has long since been certified, President Trump has taken office, and Plaintiffs do not seek to have the election decertified, any errors identified in a hand count could not be remedied and such a hand count would to nothing to redress any injury Plaintiffs allege.

Fourth, Plaintiffs request that the Court "enjoin and require that . . . Allegheny BOE implement procedures satisfactory to the Plaintiffs and to the Court that will ensure all vote counts and reports will be accurate in the future." Compl. ¶ 130. Plaintiffs provide no legal justification, nor could they, for their assertion that they should be permitted to determine the procedures that the County will follow in future elections. Such a request is patently absurd—the County is required to follow the procedures dictated by state law, including mandatory directives of the Pennsylvania Department of State, not those concocted by an outside organization or even well-meaning Allegheny County voters. Moreover, Plaintiffs have not alleged that the County failed to follow proper procedures and even if they had, enjoining the County to follow proper procedures in the future would not redress any alleged harm that occurred in the 2024 General Election.

Finally, Plaintiffs request that the Court enjoin "all Defendant BOEs to ensure compliance with the statutes and laws regarding vote counting in all counties in future elections." Compl. ¶ 102. Again, the Complaint does not allege that the County violated any law. The

---

[13] As noted, state law does create mechanisms for requesting a recount. *See supra* Footnote 11. But Plaintiffs do not request relief under those state statutes and the deadlines to do so have long since passed.

County is already required to comply with all statutes and laws regarding vote counting, and such a general injunction to follow the law in future elections would not redress any alleged harm that occurred in the 2024 General Election.

As demonstrated by the requested relief, Plaintiffs do not seek, nor could they seek, relief that would redress any alleged injury they experienced as a result of the administration of the 2024 General Election. Plaintiffs did not follow state law procedures for requesting a recount or challenging an election and instead waited a year to file this case in federal court. Because this Court cannot meaningfully redress any alleged injury, Plaintiffs lack standing and the Complaint must be dismissed.

### B. Plaintiffs Have Not Plausibly Alleged Claims Sufficient to Show that They Are Entitled to Relief, as Required by Rule 8.

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This pleading standard "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (2009) (internal quotation marks omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

Here, Plaintiffs' Complaint contains no allegation that the County took any action or adopted any policy that caused harm to Plaintiffs or that violated any law. Thus, the alleged facts

do not allow the court to draw the reasonable inference that the County is liable for any misconduct and Plaintiffs' claims are facially insufficient.

But even setting aside Plaintiffs' failure to allege misconduct by the County, Plaintiffs' factual allegations are insufficient to meet the plausibility standard set out by the Supreme Court. In *Twombly*, the Supreme Court considered a claim that telecommunications providers had engaged in a conspiracy not to compete in violation of the Sherman Act. The Complaint alleged that the defendants' "parallel course of conduct . . . to prevent competition and inflate prices was indicative of the unlawful agreement alleged." *Iqbal*, 556 U.S. at 679–80 (describing *Twombly*). The Court, however, concluded that the factual allegation of a parallel course of conduct was not sufficient to render the claim of conspiracy plausible because parallel conduct was "not only compatible with, but indeed was more likely explained by, lawful, unchoreographed free-market behavior." *Id.* at 680. The same is true here. Even if Plaintiffs' factual allegations could be consistent with fraud or misconduct, they are also consistent with, and indeed more likely explained by, lawful conduct.

To start, Plaintiffs' factual allegations related to the timing of reported votes, Compl. ¶¶ 66–68, are likely explained by—or the clear result of—lawful conduct. Plaintiffs allege that Allegheny County reported most mail ballots around the time the polls closed, and that the number of votes increased somewhat in the final tally. This is clearly explained by the fact that the County received additional mail ballots on the afternoon of Election Day that were not processed until after the polls had closed. Similarly, Plaintiffs' allegation that "other party and unaffiliated votes decreased by 23,155 relative to the number of ballots returned by registered voters in those categories," Compl. ¶ 68—an apparent reference to the fact that most unaffiliated and third-party voters did not cast their votes for unaffiliated or third-party candidates—is

16

entirely consistent with most third-party and unaffiliated voters casting their votes for the Republican and Democratic party nominees, as is typical in most presidential elections. These allegations do not even suggest misconduct, let alone render it plausible.

Next, to the extent that Plaintiffs attempt to explain the alleged "statistical anomalies" identified in the Complaint, those supposed "anomalies" are also consistent with and more likely explained by lawful conduct. The allegation that turnout was positively correlated with Republican vote share, Compl. ¶ 70, appears entirely consistent with an election in which Republican voters turned out at higher rates than Democratic voters. Without more, this correlation does not suggest fraud or misconduct. Similarly, Plaintiffs' allegation that an unnamed model created by Professor Walter Mebane identified Allegheny County with "a manufactured votes parameter of 0.238 [0.089, 0.340], where the entirely positive credible interval indicates patterns inconsistent with normal electoral behavior," Compl. ¶¶ 71–72, appears to be consistent with lawful conduct,[14] and no related misconduct is alleged. Even assuming the unnamed study correctly identified unusual statistical results, this is hardly surprising or evidence of misconduct in a presidential election that was far from "normal." Anyone who lived through the 2024 election in Pennsylvania—which featured novel campaign tactics, the withdrawal of a major party nominee shortly before the election, and significant shifts in voting coalitions, among other anomalies—could have predicted that the 2024 results would not perfectly match with past "normal electoral behavior." Without more, a single unexplained statistic affirming that the 2024 election was not "normal" is entirely consistent with lawful election administration.

---

[14] The Complaint does not define the term "manufactured votes parameter."

Finally, Plaintiffs provide a table of what they describe as "voting districts, per official state reports, [in which] more votes for President were recorded than there were voters registered." Compl. ¶ 78. Only one of these voting districts, Precinct 11760, is alleged to be in Allegheny County. For that precinct, Plaintiffs allege there were 485 votes cast but only 474 registered voters. Compl. ¶ 78. However, Plaintiffs neglect to mention that for the subsequent precinct—Precinct 11761—the official state data includes 271 registered voters, but zero votes cast.[15] Given this context, it is likely that a quirk of the state's reporting system caused the votes cast in Precinct 11761 to be reported in Precinct 11760.[16] Thus, Plaintiffs' factual allegation is entirely consistent with and likely explained by lawful conduct. Regardless, this is the sort of "garden variety" election irregularity, that is "simply not a matter of federal constitutional concern." *See Donald J. Trump for President*, 493 F. Supp. 3d at 394; *see also Shannon v. Jacobowitz*, 394 F.3d 90, 96 (2d Cir. 2005) (collecting examples of "garden variety" irregularities such as "mechanical and human error in counting votes").

---

[15] In deciding a motion to dismiss, the Court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Here, Plaintiffs may have incorporated the official state results into the complaint by reference, but regardless, such official election results are public records of which this Court may properly take judicial notice. *See* Fed. R. Evid. 201; *Dudum v. Arntz*, 640 F.3d 1098, 1102 n.6 (9th Cir.2011); *Ostrowski v. D'Andrea*, No. CV 3:14-CV-00429, 2015 WL 10434888, at *6 n.4 (M.D. Pa. Aug. 11, 2015) (report and recommendation adopted sub nom. *Ostrowski v. Doe*, No. 3:14-CV-429, 2016 WL 862477 (M.D. Pa. Mar. 7, 2016)). The 2024 Pennsylvania State election results data is available at https://www.pa.gov/agencies/dos/resources/voting-and-elections-resources/voting-and-election-statistics/election-data#accordion-9f6b1feab5-item-8ad90604b2 [https://perma.cc/P9CC-7LKS].

[16] This quirk may be tied to the bizarrely configured congressional district boundary in the Swissvale area, where a small portion of District 12 is nearly entirely surrounded by District 17.

Because the alleged facts do not allow the Court to draw the reasonable inference that the County is liable for any misconduct, and because all of Plaintiffs' factual allegations are consistent with and likely explained by lawful conduct, Plaintiffs have not plausibly alleged claims sufficient to show that they are entitled to relief. Their claims must be dismissed.

**C. Plaintiffs Have Failed to State a Claim Under 42 U.S.C § 1983.**

A claim under Section 1983 must include two essential elements: "(1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Schneyder v. Smith*, 653 F.3d 313, 319 (3d Cir. 2011). "[G]arden variety election irregularities" are not actionable under 42 U.S.C. § 1983. *See Acosta v. Democratic City Comm*., 288 F.Supp.3d 597, 643 (E.D. Pa. 2018) (collecting cases). Only intentional acts or "willful conduct [that] undermines the organic process by which candidates are elected" can be held to violate Section 1983. *Id.* (internal quotation marks omitted). Furthermore, where a claim is against a local government, "it is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997). Rather, the plaintiff must also show that "through its deliberate conduct, the municipality was the moving force behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Id.* (internal quotation marks omitted).

Here, Plaintiffs have not alleged that the Allegheny County Board of Elections undertook any intentional acts or willful conduct that undermined the election process. They similarly have not alleged that the County engaged in deliberate conduct that in any way caused an injury to

Plaintiffs, let alone that the County's conduct was the "moving force" behind such injury. As such, Plaintiffs have failed to state a claim against the County under 42 U.S.C § 1983.

**D. Plaintiffs Have Failed to State a Claim Under 52 U.S.C § 10101(a).**

It is unclear in Plaintiffs' Complaint whether they seek to state a claim independently under 52 U.S.C § 10101(a). Regardless, they have failed to allege facts sufficient to support such a claim against the County.

The Complaint does not specify to which portion of Section 10101(a) it refers. Because the Complaint contains no allegations relating to determinations about eligibility or qualification to vote or about the use of literacy tests, 52 U.S.C § 10101(a)(2) is irrelevant. Therefore, Plaintiffs must be seeking to state a claim under 52 U.S.C § 10101(a)(1). That section provides:

> All citizens of the United States who are otherwise qualified by law to vote at any election by the people in any State, Territory, district, county, city, parish, township, school district, municipality, or other territorial subdivision, shall be entitled and allowed to vote at all such elections, without distinction of race, color, or previous condition of servitude; any constitution, law, custom, usage, or regulation of any State or Territory, or by or under its authority, to the contrary notwithstanding.

The provision is clearly targeted at preventing discrimination in voting on the basis of race, color, or previous condition of servitude, which Plaintiffs do not allege here. However, even setting that aside, to state a claim against the County, Plaintiffs would have to allege that the county did not allow them to "vote," as defined by the statute. For purposes of this section, "the word 'vote' includes all action necessary to make a vote effective including, but not limited to, registration . . ., casting a ballot, and having such ballot counted and included in the appropriate totals . . . ." 52 U.S.C § 10101(a)(3)(A); 52 U.S.C § 10101(e).

Plaintiffs have failed to allege they were prevented from registering, casting a ballot, or having their ballot counted. Instead, they have merely alleged that certain numbers of votes were

reported at specific times, and that largely unexplained statistical analyses detected differences from past voting patterns. As such, Plaintiffs have failed to state a claim under 52 U.S.C § 10101(a).

## V.    CONCLUSION

The Complaint is legally deficient for the reasons detailed above. First, Plaintiffs fail to satisfy each of the three prongs of Article III standing. Second, they fail to plausibly alleged claims sufficient to show that they are entitled to relief, as required by Rule 8. Finally, Plaintiffs have not (and cannot) plead any facts to show they are entitled to relief under any cause of action they allege. Although some of the defects in Plaintiffs' Complaint could conceivability be remedied through amendment, others—such as this Court's inability to redress any alleged injury at this late date—cannot. As such, the Complaint should be dismissed with prejudice.


                                    Respectfully submitted,

Date:  January 5, 2026              /s/ Lisa G. Michel
                                    Lisa G. Michel
                                    Assistant County Solicitor
                                    Pa. I.D. #59997

                                    ALLEGHENY COUNTY LAW DEPARTMENT
                                    445 Fort Pitt Boulevard, #300
                                    Pittsburgh, PA 15219
                                    (412) 350-1167
                                    Lisa.Michel@alleghenycounty.us

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 5, 2026, I caused the foregoing document to be filed with the United States District Court for the Western District of Pennsylvania via the Court's CM/ECF system, which will provide electronic notice to all counsel and parties of record.

<u>*/s/ Lisa G. Michel*</u>
Lisa G. Michel
Assistant County Solicitor
Pa. I.D. #59997

ALLEGHENY COUNTY LAW DEPARTMENT
445 Fort Pitt Boulevard, #300
Pittsburgh, PA 15219
(412) 350-1167
Lisa.Michel@alleghenycounty.us