# EXHIBIT 1

(Brief of Amicus Curiae, attorney Patrick D. Cummins,

in Support of Amended Complaint, ECF No. 26)

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ELECTION TRUTH ALLIANCE, | ) | Case No. 1:25-cv-00329 |
| | ) | |
| Plaintiff, | ) | Judge Susan Paradise Baxter |
| | ) | |
| v. | ) | |
| | ) | |
| SCHMIDT, et al., | ) | ELECTRONICALLY FILED |
| | ) | |
| Defendants. | ) | |
| | ) | |

**BRIEF OF AMICUS CURIAE PATRICK CUMMINS**

**IN SUPPORT OF AMENDED COMPLAINT**

## I.  INTEREST OF AMICUS CURIAE

Amicus Curiae Patrick Cummins ("Amicus") is an attorney with a Master's degree in Electrical Engineering, and currently represents a former CIA paramilitary officer with field experience in critical infrastructure security. Amicus is additionally the Plaintiff in a related Freedom of Information Act ("FOIA") litigation seeking the raw transactional data logs associated with the Pennsylvania's Statewide Uniform Registry of Electors ("SURE System") records at issue in this case.

Amicus submits this brief to offer the Court a forensic engineering perspective on the mail-in ballot return data cited in the Amended Complaint. Amicus's background in both law and electrical engineering may be of assistance to the Court in evaluating the mathematical patterns present in the Cambria County data. While the Plaintiff's Amended Complaint sets forth substantive factual and legal claims for relief, and while the Defendants may respond with procedural defenses, Amicus respectfully suggests that neither party's filings to date have presented the specific numerical analysis set forth herein.

## II.  INTRODUCTION TO ZERO-BALANCE ANOMALY

In furtherance of rendering the forensic anomaly accessible to any non-technical audience members, Amicus presents the following analogy. The analogy maps the abstract election data to a tangible and relatable scenario. The scenario is not a rhetorical embellishment but a structured forensic parallel to which each element corresponds to data points published by the Defendants.

Consider a Joint Birthday Party (the *Election*) being planned by Parents (each *Board of Elections* and *Secretary of Commonwealth*) for two children: Katie (*Candidate A*) and Danny

(*Candidate B*). The Parents approve and mail 16,827 Invitations (*mail-in ballots*) to potential guests: 8,301 to Katie's Friends (*registered Democrats*), 7,137 to Danny's Friends (*registered Republicans*), and 1,389 to Other Friends (*unaffiliated/third-party voters*). See Exhibits B and C, attached (annotated).

By the 8:00 PM deadline mandated by Act 88, the Parents record that 15,121 RSVPs (*returned mail-in ballots*) have been received. See Exhibit A. The critical derived quantity is therefore:

$$16{,}827 \; - \; 15{,}121 \; = \; \textbf{1,706 Unreturned Mail-in Ballots}$$

In any natural system, this 1,706 remainder is a *static* quantity: it reflects the number of voters who simply chose not to return their mail-in ballots. It bears no causal relationship to the preferences of those who did vote. It is an inventory figure, not a behavioral variable.

When the gifts (*mail-in votes*) are opened, however, a striking anomaly emerges that defies expectation of causal independence. Danny receives 7,328 mail-in votes—an unexpected surplus of 853 above the 6,475 his known friends had indicated by RSVP. See Exhibit C compared to Exhibit D. Katie receives 7,541 mail-in votes—a deficit of 55 below the 7,596 RSVPs from her known friends. See Exhibit C compared to Exhibit D.  The remaining Third Parties receive a combined total of only 153 mail-in votes despite 1,187 RSVPs from the Other Friends category, a deficit of 1,034. See Exhibit C compared to Exhibit E (annotated).

///
///
///
///
///
///

The following simple arithmetic reveals the striking anomaly:

> Danny's surplus of mail-in votes:  +853
> Katie's deficit of mail-in votes:  −55
> Third-Party deficit of mail-in votes:  −1,034
> Lost RSVPs (7 PM → 8 PM discrepancy):  +236
> Net swing to Danny:  55 + 1,034 − 236 = 853

> **Total bilateral swing:  853 + 853 = 1,706**

The total bilateral swing in mail-in votes—the magnitude of mail-in votes that went *to* Danny combined with the magnitude that went *away from* all other recipients—is exactly 1,706. This is the same figure as the unreturned mail-in ballot inventory. In an election and system of this magnitude, this precise figure is a red flag warranting further investigation and forensic accounting, as further discussed in Section III(C), *infra.*

## III.  TECHNICAL FRAMEWORK

### A.  Variable Definitions and Data Sources

To assess the anomaly with precision, Amicus defines the following variables drawn from publicly available Commonwealth records:

| Variable | Definition |
|---|---|
| $B_t$ | Total mail-in ballots sent (SURE System stored value) = 16,827 |
| $B_r$ | Total mail-in ballots returned (Act 88 manual report) = 15,121 |
| $\Delta B$ | Unreturned mail-in ballot inventory: $B_t - B_r$ = 1,706 |
| $V_a$ | Mail-in votes received by Candidate A (Harris) = 7,541 |
| $V^b$ | Mail-in votes received by Candidate B (Trump) = 7,328 |
| $V_{tp}$ | Mail-in votes received by Third Parties (combined) = 153 |
| $E_a$ | Expected mail-in votes for Candidate A (from returned |

|  | ballots) = 7,596 |
|---|---|
| $E^b$ | Expected mail-in votes for Candidate B (from returned ballots) 6,475 |
| $\delta_a$ | Mail-in vote deficit for Candidate A: $E_a - V_a = 55$ |
| $\delta_{tp}$ | Mail-in vote deficit for Third Parties: $1{,}187 - 153 = 1{,}034$ |
| $\delta^b$ | Mail-in vote surplus for Candidate B: $V^b - E^b = 853$ |
| S | Total bilateral swing in mail-in votes = $\delta^b + \delta^b = 1{,}706$ |

## B.  The Zero-Balance Equation

The forensic significance of the Cambria County data reduces to a single equation. Define the *total bilateral swing* S as the sum of the absolute magnitudes of mail-in vote displacement toward Candidate B and away from all other candidates:

$$S \;=\; |\delta^b| \;+\; |\delta_a + \delta_{tp} - \varepsilon| \;=\; 853 + 853 \;=\; 1{,}706$$

where $\varepsilon = 236$ represents the discrepancy between the SURE System 7:00 PM total (15,258) and the final reported mail-in ballot returns (15,022). See Exhibit C compared to Exhibit E (annotated). The Zero-Balance Equation is then:

$$S \;-\; \Delta B \;=\; 1{,}706 \;-\; 1{,}706 \;=\; 0$$

This identity—that the total mail-in vote displacement equals the unreturned mail-in ballot inventory with zero remainder—is what Amicus terms the "Zero-Balance Anomaly." In a natural election system, there is no mechanism by which mail-in vote-switching behavior should be constrained by, or derive its magnitude from, the mail-in ballot inventory surplus. The two quantities are generated by entirely different causal processes.

## IV.  ARGUMENT: FORENSIC INDICIA OF FABRICATION

### A.  Fabricated Precision: *HealthSouth Corp.*

*In re HealthSouth Corp.* involves accounting fraud perpetrated by HealthSouth Corporation, one of the largest providers of rehabilitative healthcare services in the United States. *In re HealthSouth Corp. Ins. Litig.*, 308 F.Supp.2d 1253 (N.D. Ala. Mar. 16, 2004). The fraud was not detected through traditional audit failure but through forensic analysis of numerical *precision*. See Department of Justice, *Former HealthSouth Chief Financial Officer Agrees to Plead Guilty in Probe of Corporate Fraud Conspiracy,*

*https://www.justice.gov/archive/opa/pr/2003/March/03_crm_165.htm* (Mar. 19, 2003).

The prosecutors demonstrated that HealthSouth's Chief Financial Officers employed a systematic methodology: they would first identify the "hole"—the gap between actual earnings and the consensus expectations of Wall Street analysts—and then generate fictitious accounting entries, termed "dirt," to fill that hole exactly. *Id.* The hallmark of the fraud was not that the numbers were wrong, but that they were *too right*. The reported earnings matched analyst expectations to the penny across multiple quarters, a precision that was itself the primary indicia of fabrication. See *Id*., and https://www.justice.gov/archive/opa/pr/2003/March/03_crm_165.htm ("The difference between HealthSouth's true earnings per share and Wall Street expectations was referred to internally as the 'gap' or the 'hole.'...HealthSouth conspired to fill the 'gap' or 'hole' with 'dirt' – fraudulent postings that artificially inflated HealthSouth's earnings in order to meet the Wall Street earnings expectations…").

Amicus submits that a parallel structure is present in the Cambria County data. The "Hole" can be analogous to the mail-in vote margin required to alter the election outcome. The

"Dirt" is analogous to the 1,706 unreturned mail-in ballots—an inventory variable that could be exploited as a computational ceiling without triggering an overvote alarm. The "Plug Figure" is analogous to the bilateral mail-in vote swing of exactly 1,706—a derived quantity that fills the Hole using the Dirt as its constraint.

Just as HealthSouth's reported earnings were reverse-engineered from the target, the Cambria County mail-in vote swing appears to have been reverse-engineered from the available mail-in ballot inventory. The unreturned ballots would have served as the upper bound of the manipulation—the maximum number of mail-in votes that could be reallocated without the total returned ballots exceeding the total sent ballots.

**B. Implausible Consistency: Bernie Madoff.**

Forensic accountant, Harry Markopolos allerted the Securities Exchange Commission to Bernard L. Madoff Investment Securities, LLC's Ponzi scheme via complaint that alleged the returns of BMIS themselves were a red flag.  See, *e.g.*, *In re Tremont Securities Law*, 703 F. Supp. 2D 362, 369 (S.D.N.Y. 2010). See also,  Oversight of the Securities and Exchange Commission's Failure to Identify the Bernard L. Madoff Ponzi Scheme and How to Improve SEC Performance: Hearing Before the S. Comm. on Banking, Hous., & Urban Affairs, 111th Cong. 54 (2009) (para. 5) (https://www.congress.gov/111/chrg/CHRG-111shrg55785/CHRG-111shrg55785.pdf).

Madoff reported consistent positive returns over a period of decades, producing an equity curve that ascended at a nearly perfect 45-degree angle with effectively zero volatility. *Id*. This pattern was not evidence of superior investment acumen but was itself evidence of human fabrication over the course of 20 years. *In re Tremont Securities Law* at 367 and 369 ("plaintiffs

concede that the SEC also failed to uncover Madoff's fraud through its inquiries even after Harry Markopolos submitted a letter in May 1999 and repeatedly voiced his concerns to the SEC about the legitimacy of Madoff's trading operations").

The same forensic accounting may be applied in this Case. In any natural election, mail-in vote switching between candidates and mail-in ballot non-return rates are generated by entirely different human behaviors: the former reflects preference change (or cross-party voting); the latter reflects apathy, logistical failure, or deliberate abstention. For these two causally independent processes to produce the same number—not approximately, but exactly—is the election equivalent of Madoff's perfect returns and 45-degree equity curve. It is a result that becomes *more suspicious* precisely because it is *more perfect*.

## C. Conclusion Regarding Zero-Balance Anomaly

Combining the *HealthSouth* and Madoff frameworks, the Cambria County anomaly exhibits both hallmarks of fabrication: (1) a derived value that exactly fills a gap defined by an inventory variable (*HealthSouth*'s "plug figure" methodology), and (2) a degree of numerical precision between independent variables that is implausible in a natural system (Madoff's impossible consistency). Together, these indicia may evidence a pattern that is consistent with machine-generated output and *in*consistent with human behavioral processes.

Specifically, the data are consistent with an automated process that may have: (a) queried the SURE System for the stored value of total mail-in ballots sent ($B_t = 16,827$); (b) queried the Act 88 returns ($B_r = 15,121$); (c) computed the available manipulation ceiling ($\Delta B = 1,706$); and (d) redistributed mail-in votes to Candidate B up to that ceiling. The algorithm's apparent design constraint—that the total manipulated mail-in votes could not exceed the unreturned mail-in

ballot inventory—would have been rational from a concealment perspective, because any manipulation beyond that ceiling would produce a returned-ballot count exceeding the sent-ballot count, an immediately detectable overvote condition.

## V.  REBUTTAL TO ANTICIPATED DEFENSES

### A.  Conflating these Facts to a "Single Data Point" is a Gross Misapprehension

One may argue that the Cambria County result is a single data point among sixty-seven Pennsylvania counties, and that because other counties may exhibit different distributions, this result is a statistical coincidence.

This objection misapprehends the nature of forensic analysis. In any audit population, the presence of background noise does not negate the presence of an anomalous signal within a specific observation. If a casino operator examines sixty dice and finds that fifty-nine of them produce random outcomes while one consistently produces sevens, the fifty-nine random dice do not exonerate one loaded die. The anomaly *is* the evidence.

Forensic science recognizes that targeted manipulation will, by definition, appear in only those locations where it was deployed. The absence of the anomaly in other counties is *consistent with* targeted manipulation; it is not evidence against it.

### B.  The Causal Independence Objection

One may further argue that the exact numerical identity of S and $\Delta$B is coincidental and does not establish a causal link.

Amicus responds that causal independence is precisely the point. The variables S (bilateral mail-in vote swing) and $\Delta$B (unreturned mail-in ballot inventory) *should* be

independent. Variable S is a function of individual voter preferences (a behavioral variable); Variable ΔB is a function of ballot logistics (an administrative variable). There is no natural mechanism by which a citizen's decision to switch their mail-in vote should be influenced by, or constrained to equal, the number of mail-in ballots that *other* citizens failed to return.

The exact identity S = ΔB thus has only two possible explanations: (1) extraordinary coincidence, at the probability level established in Section III.C, *supra*; or (2) a process that used ΔB as an input to calculate S. Explanation (2) is the definition of algorithmic manipulation of mail-in vote tallies.

## VI.  CONCLUSION

The Cambria County mail-in ballot data contain what Amicus believes to be the mathematical fingerprints of artificial manipulation. The Zero-Balance Anomaly—the exact identity between the bilateral mail-in vote swing and the unreturned mail-in ballot inventory—is consistent with the forensic signatures identified in *HealthSouth Corp.* and BMIS's returns.

Amicus respectfully submits that this analysis may assist the Court in evaluating the factual allegations in the Plaintiff's Amended Complaint and provides a quantitative framework for assessing those claims on their merits.

Respectfully submitted,

/s/Patrick Cummins
Patrick D. Cummins
as Amicus Curiae, *Pro Se*
Dean Cummins Law Firm LLC
Columbus, Ohio 43215
Patrick@CumminsIP.com                              Dated: February 17, 2026

# EXHIBIT A



**FIGURE 1: Manual Act 88 report of 15,121 mail-in ballots received.**

# EXHIBIT B



**FIGURE 2: Link to download SURE System 7PM report from PA.gov.**

# EXHIBIT C

| | A | B | C | D | E | F | G | H | I |
|---|---|---|---|---|---|---|---|---|---|
| | **Information as of 11/05/2024 7:00 PM** | | | | | | | | |
| | CountyName | Total Applications Approved | Dem Applications Approved | Rep Applications Approved | Oth Applications Approved | Total Ballots Returned | Dem Ballots Returned | Rep Ballots Returned | Oth Ballots Returned |
| | ADAMS | 19883 | 7398 | 9980 | 2505 | 17497 | 6560 | 8862 | 2075 |
| | ALLEGHENY | 257984 | 167408 | 59895 | 30681 | 225484 | 148324 | 52037 | 25123 |
| | ARMSTRONG | 7914 | 3060 | 4170 | 684 | 7291 | 2837 | 3843 | 611 |
| | BEAVER | 25759 | 13851 | 9167 | 2741 | 23667 | 12857 | 8406 | 2404 |
| | BEDFORD | 6279 | 1733 | 4011 | 535 | 5911 | 1643 | 3788 | 480 |
| | BERKS | 58238 | 29512 | 20964 | 7762 | 47563 | 24970 | 17150 | 5443 |
| | BLAIR | 18468 | 6408 | 10288 | 1772 | 16980 | 5900 | 9534 | 1546 |
| | BRADFORD | 6857 | 2970 | 2976 | 911 | 6200 | 2790 | 2810 | 600 |
| | BUCKS | 151195 | 76699 | 52930 | 21566 | 132819 | 68613 | 46326 | 17880 |
| | BUTLER | 34933 | 14259 | 16555 | 4119 | 31723 | 13098 | 15030 | 3595 |
| | CAMBRIA | 16827 | 8301 | 7137 | 1389 | 15258 | 7596 | 6475 | 1187 |
| | CAMERON | 600 | 190 | 358 | 52 | 569 | 183 | 340 | 46 |
| | CARBON | 8538 | 4086 | 3361 | 1071 | 7225 | 3568 | 2852 | 850 |
| | CENTRE | 26274 | 13755 | 8715 | 3804 | 24005 | 12653 | 8031 | 3321 |
| | CHESTER | 120071 | 61729 | 37893 | 20439 | 108637 | 56416 | 34400 | 17821 |

**FIGURE 3: SURE System 7PM report from PA.gov.**

8

# EXHIBIT D



**FIGURE 4: Final Mail-in / Absentee Tallies for DEM and REP candidates.**

# EXHIBIT E



**FIGURE 5: Final Mail-in / Absentee Tallies for 2024 Presidential Election.**