# EXHIBIT A

(Reply Brief of Amicus Curiae, attorney Patrick D. Cummins,

in Support of Motion for Leave)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ELECTION TRUTH ALLIANCE,<br>    Plaintiff,<br>v.<br>SCHMIDT, et al.,<br>    Defendants. | Case No. 1:25-cv-00329<br><br>Hon. Judge Susan Paradise Baxter<br><br>(Electronically Filed) |

**REPLY BRIEF OF AMICUS CURIAE PATRICK D. CUMMINS**

**IN SUPPORT OF MOTION FOR LEAVE TO FILE BRIEF OF AMICUS CURIAE**

Proposed Amicus Curiae Patrick D. Cummins ("Amicus") submits this Reply Brief to address the procedural objections raised in Defendant Secretary of the Commonwealth Al Schmidt's ("Secretary Schmidt") Opposition, ECF No. 35 ("Opposition"). Secretary Schmidt relies on a restrictive standard for amicus participation that has been expressly rejected by the United States Court of Appeals for the Third Circuit. Based on the Third Circuit's guidance, Amicus's specialized engineering expertise and statutory interest in parallel FOIA litigation satisfy the criteria for amicus participation.

**I. The Third Circuit has Rejected the Requirement of Strict Impartiality.**

Secretary Schmidt argues that Amicus should be denied leave because Amicus previously contacted the Secretary Schmidt regarding the anomalies in the 2024 election and is therefore "partial to a particular outcome." ECF No. 35, pg. 7. This argument relies

1

on an antiquated standard that not required by this Circuit, and sadly attempts to cast the prior contact with Secretary Schmidt in a negative light.

In *Neonatology Associates, P.A. v. Commissioner of Internal Revenue*, No. 01-2862, pg. 4 (3d Cir. May 20, 2002) (not precedential), the Third Circuit expressly rejected the argument that an amicus must be an "impartial individual". The Third Circuit noted that this restrictive description "became outdated long ago". See *Neonatology Associates, P.A. v. Commissioner of Internal Revenue*, pg. 4 (3d Cir. 2002). Instead, the Third Circuit affirmed that an amicus's interest or partiality is not a disqualifying factor. *Id*. at pg. 6 ("Strong (but fair) advocacy on behalf of opposing views promotes sound decision making.").

District courts within this Circuit adhere to this standard. For example, in *Liberty Res., Inc. v. Phila. Hous. Auth.*, 395 F. Supp. 2d 206 (E.D. Pa. 2005), the court reiterated that "there is no rule that amici must be totally disinterested" and cited *Neonatology* for the proposition that an amicus need not be an impartial person. See, *Liberty Res., Inc. v. Phila. Hous. Auth.,* 395 F. Supp. 2d 206, 209 (E.D. Pa. 2005) (granting amicus status to an organization "offer[ing] information that [was] both timely and useful concerning the rights of nonparties who [were] affected by th[e] litigation").

Nonetheless, Amicus's prior communications with Pennsylvania's Department of State to report a systemic anomaly should demonstrate professional diligence and patriotism, not a disqualifying bias. The email to Secretary Schmit's office evidences Amicus's consistent willingness to *work with* Secretary Schmidt and the Department of

State, as well as Plaintiff. If Amicus should be considered partial for working with Plaintiff Election Truth Alliance, Amicus is equally partial to Secretary Schmidt for having offered to "volunteer" to help Secretary Schmidt and the Department of State. ECF No. 35-1, pg. 2.

## II. Secretary Schmidt's Opposition Makes No Express Rebuttal Regarding the Utility of Amicus's Brief.

Secretary Schmidt avoids addressing the utility of the proposed Amicus Brief with any substance. Amicus's Motion for Leave and Amicus Brief attempt to give a technical analysis of a particular fact in Plaintiff's Amended Complaint and also present the technical analysis to a non-technical audience. See, ECF No. 34 at pg. 4, citing to ECF No. 26, pg. 14, paragraph 53. See also, ECF No. 34-1 at pg. 4 (explaining that a purpose of the Amicus Brief is to render the Zero-Balance Anomaly "accessible to any non-technical audience members"). In response, Secretary Schmidt concludes the Amicus Brief is not useful at this stage because the Court will already be accepting the factual allegations in the Amended Complaint as true. ECF No 35, pg. 6. Secretary Schmidt's conclusion is not drawn from any content of the Amicus Brief or Motion for Leave.

Secretary Schmidt's conclusion tends to render Amicus's Brief even more useful. Because the Court is required to accept factual allegations in the Amended Complaint as true at this stage of the Case, the Amicus Brief will help to understand the scope of the accepted factual allegations, further clarifying the case and controversy set forth in the Amended Complaint.

3

Separately, Secretary Schmidt also seems to insinuate that an amicus brief would be more appropriate if it address "Defendants' legal arguments". *Id*. at pg. 5. This is not the purpose of the Amicus Brief, nor would it help Amicus's motion for leave to file the Amicus Brief.

**II. Amicus Timely Provided the Proposed Amicus Brief to All Parties *Before* Secretary Schmidt filed his Renewed Motion to Dismiss.**

Amicus timely provided a copy of the proposed Amicus Brief via email to Secretary Schmidt on February 18, 2026. See Exhibit 1, attached. Secretary Schmidt's Opposition appears to insinuate that Amicus's Brief was untimely filed with this Court "several days" after Secretary Schmidt filed their renewed motion to dismiss on February 23, 2026. ECF No. 35, pg. 1. Secretary Schmidt's counsel responded to Amicus's email the same day, February 23, 2026, indicating Secretary Schmidt would not be consenting to the filing. *Id*. If Secretary Schmidt is alleging the delivery of the Amicus Brief was untimely, that allegation is easily debunked by the actual timely delivery of the Amicus Brief to Secretary Schmidt the week prior. *Id*.

**II. Amicus Offers Specialized Technical Expertise Not Possessed by the Parties.**

Secretary Schmidt erroneously argues that because Plaintiff Election Truth Alliance ("ETA") has representation already, Amicus's intervention is unnecessary, suggesting that Amicus should merely be called as an expert witness if his facts are relevant. ECF No. 35, pg. 6. The Third Circuit has rejected the premise that the party supported must be inadequately represented. See, *Neonatology Associates, P.A. v. Commissioner of Internal Revenue*, pg. 4 (3d Cir. May 20, 2002).

*Neonatology* instructs that an amicus brief is highly desirable when the amicus provides "important assistance to the court," even when the parties are well represented. *Id*. at pg. 5 ("an amicus brief may be particularly helpful when the party supported is unrepresented or inadequately represented, but it does *not* follow that an amicus brief is undesirable under all other circumstances.") (emphasis added). The Third Circuit noted that amicus curiae means "friend of the court", and are therefore merely entities willing to offer particular expertise not possessed by any party to the case. *Id*.

As an attorney with a graduate degree in electrical engineering, and who currently represents ex-CIA paramilitary personnel, Amicus brings a highly specialized, quantitative forensic framework—the "Zero-Balance Anomaly"—to evaluate the Cambria County's mail-in ballot data, which the Defendants make publicly available. ECF No. 34-1. Neither Plaintiff nor Defendants have presented this specific mathematical and technical analysis regarding the Zero-Balance Anomaly of Cambria County.

Courts grant amicus status to ensure a "complete and plenary presentation of difficult issues so that the court may reach a proper decision". See, *Portland Pipe Line Corp. v. City of Portland*, 2:15-cv-00054-JAW (D. Me. Jan. 9, 2017). Because this case involves complex, systemic data patterns and issues of "general public interest" (e.g., the right to vote and election integrity), the Amicus Brief's technical analysis and analogy will assist the Court in reaching a sound and just decision.

///

///

5

**III. Secretary Schmidt Fails to Rebut Amicus's Cognizable Special Interest.**

Secretary Schmidt attempts to dismiss Amicus's active Freedom of Information Act (FOIA) litigation as insufficient to confer a "special interest."[2] ECF No. 35, pg. 3. The only argument that Secretary Schmidt makes is to allege: "Mr. Cummins does not, however, explain how his educational background, ability to evaluate patterns, or status as a plaintiff seeking records gives him a special interest in this case, let alone "the type of particularized 'special interest' favoring the grant of amicus status." *Id*. Secretary Schmidt then follows this allegation with a series of case citations, but no other argument. *Id*. This conclusory allegation does not favor a finding of no special interest, especially considering courts within the Third Circuit routinely permit parties from parallel or related litigation to participate as amici to protect their independent interests.

Amicus is an active plaintiff in FOIA litigation involving the National Security Agency (NSA), U.S. Army Cyber Command, and U.S. Cyber Command. See, *Cummins v. U.S. Army Cyber Command et al.*, 2:2026cv00133, Doc. No. 7 (February 5, 2026) (Notice of Hearing set for April 14, 2026). Amicus also represents ex-CIA paramilitary personnel in a related matter. Amicus has a direct, statutory interest in the integrity and public release of certain data that this Case may rely upon. If this Court were to make a premature legal determination (*e.g.*, not affirming Secretary Schmidt's duty to investigate manipulation of Cambria County's mail-in tabulators) without reviewing the forensic

---

[2] Schmidt indicates he is not currently aware of the FOIA litigation to which Amicus is a plaintiff. See, ECF No. 34, pg. 3, n.1. While it may have been prudent for Amicus to expressly cite to the referenced FOIA litigation, it is also easy to find via party search in Pacer. See, *Cummins v. U.S. Army Cyber Command et al.*, 2:2026cv00133 (February 5, 2026).

engineering evidence, such a ruling could severely prejudice Amicus's parallel statutory claims to related data. Alternatively, should Amicus be successful the parallel FOIA litigation, the resulting information disclosed by the NSA may be helpful to satisfy certain injunctive relief being requested in this Case. This supports a finding of Amicus's special interest in this particular case. See, *e.g.*, ECF No. 26, pg. 30 ("Enjoin and require that Defendants SOC and Cambria BOE implement procedures satisfactory to the Plaintiffs and to the Court that will ensure all vote counts and reports will be accurate in the future").

### IV. The Third Circuit Guides Courts to "Err on the Side of Granting Leave".

Secretary Schmidt asks this Court to take a highly restrictive approach, scrutinizing the proposed brief at the Motion to Dismiss stage. ECF No. 35, pg. 6. The Third Circuit warns against this exact strategy. *Neonatology* holds that the criterion of desirability for an amicus brief should be given a "broad reading". *Neonatology Associates, P.A. v. Commissioner of Internal Revenue*, pg. 5 (3d Cir. May 20, 2002). Because a decision on leave must be made at an early stage where it is difficult to determine if a filing will ultimately be helpful, the Third Circuit explicitly directs that "it is preferable to err on the side of granting leave". *Id*. Furthermore, the court noted that a restrictive policy toward amicus briefs may create "the perception of viewpoint discrimination" and convey an "unfortunate message about the openness of the court".

///

///

## V. Conclusion

Amicus provides an objective, highly relevant forensic engineering analysis that is currently absent from the record, fulfilling the exact role envisioned by the Third Circuit for an amicus curiae. For the foregoing reasons, Amicus respectfully requests that the Court grant the Motion for Leave to File Brief of Amicus Curiae.

Date: March 6, 2026

Respectfully submitted,

/s/ Patrick Cummins
Patrick D. Cummins (SBN Ohio 105801)
*as Amicus Curiae, Pro Se*
Dean Cummins Law Firm LLC
470 W Broad St. #22
Columbus, Ohio 43215
Patrick@CumminsIP.com

# Exhibit 1

3/4/26, 9:09 AM
Case 1:25-cv-00329-SPB Document 41-1 Filed 03/06/26 Page 11 of 20
Patrick Cummins Mail - Request for Consent to File Amicus Curiae Brief — Election Truth Alliance v. Schmidt, No. 1:25-cv-00329 (W....



Patrick Cummins <patrick@cumminsip.com>

# Request for Consent to File Amicus Curiae Brief — Election Truth Alliance v. Schmidt, No. 1:25-cv-00329 (W.D. Pa.)

10 messages

**Patrick Cummins** <patrick@cumminsip.com>  
To: kamullen@pa.gov, mirupp@pa.gov, Lisa.Michel@alleghenycounty.us

Wed, Feb 18, 2026 at 12:44 PM

Dear Counsel,

I am writing regarding the above-captioned matter, currently pending before the Honorable Susan Paradise Baxter in the United States District Court for the Western District of Pennsylvania. I respectfully request the Defendants' consent to the filing of a Brief of Amicus Curiae, pursuant to the Court's inherent discretion and by analogy to Federal Rule of Appellate Procedure 29.

My proposed brief provides the Court with a quantitative analysis of the Cambria County mail-in ballot return data—specifically, an analysis of the reported correspondence between the bilateral mail-in vote swing (1,706 mail-in votes) and the unreturned mail-in ballot inventory (1,706 mail-in ballots), termed a "Zero-Balance Anomaly."

I believe this quantitative perspective—which addresses the mathematical patterns in the SURE System logs—may be a "timely and useful" addition to the record that could assist the Court in evaluating the plausibility of the Amended Complaint's allegations.

I am seeking to file this brief in the interim window before the next briefing cycle begins, to ensure that this analysis is available to the Court and all parties as the litigation proceeds.

For your convenience and review, I have enclosed a copy of (1) the proposed Motion for Leave to File Amicus Curiae Brief, (2) proposed order granting leave, and (3) the proposed Brief of Amicus Curiae, as one PDF.

**Kindly advise me of your position by 5:00PM EST, Monday, February 23, 2026.** If I do not receive a response by that date, I will note the Defendants' non-response or opposition in my Motion for Leave filed with the Court.

Thank you for your time and consideration.

Sincerely,

Patrick D. Cummins

[Patrick@CumminsIP.com](mailto:Patrick@CumminsIP.com)

Phone:502-445-9880

---

 **Proposed Motion with Brief and Exh.pdf**
2127K

---

**Michel, Lisa** <Lisa.Michel@alleghenycounty.us>  
To: "patrick@cumminsip.com" <patrick@cumminsip.com>  
Cc: "Mullen, Kathleen" <kamullen@pa.gov>, Kathleen Gallagher <kag@gallagherlawllc.com>, "ttalarico nwpalawyers.com" <ttalarico@nwpalawyers.com>, "Rupp, Michelle" <mirupp@pa.gov>

Mon, Feb 23, 2026 at 4:01 PM

Good afternoon,

# Exhibit 2

3/4/26, 9:10 AM    Patrick Cummins Mail - Request for Consent to File Amicus Curiae Brief - Election Alliance v. Schmidt, No. 1:25-cv-00329 (W....

Case 1:25-cv-00329-SPB    Document 41-1    Filed 03/06/26    Page 13 of 20

📄 **Proposed Motion with Brief and Exh.pdf**
2127K

---

**Patrick Cummins** <patrick@cumminsip.com>    Mon, Feb 23, 2026 at 4:17 PM
To: "Michel, Lisa" <Lisa.Michel@alleghenycounty.us>, "ttalarico nwpalawyers.com" <ttalarico@nwpalawyers.com>, Kathleen Gallagher <kag@gallagherlawllc.com>
Cc: "Mullen, Kathleen" <kamullen@pa.gov>, "Rupp, Michelle" <mirupp@pa.gov>

Lisa,

Thank you, I appreciate that.

Kathleen and Thomas,

Would you be able to indicate your consent or non-consent by the end of the day this Wednesday? I expect you may have the same positions as Allegheny, since the brief is to support Plaintiff's position. Please let me know when you have a moment.

Thank you,
Patrick

[Quoted text hidden]

---

**Rupp, Michelle** <mirupp@pa.gov>    Mon, Feb 23, 2026 at 4:26 PM
To: Patrick Cummins <patrick@cumminsip.com>, "Michel, Lisa" <Lisa.Michel@alleghenycounty.us>, "ttalarico nwpalawyers.com" <ttalarico@nwpalawyers.com>, Kathleen Gallagher <kag@gallagherlawllc.com>
Cc: "Mullen, Kathleen" <kamullen@pa.gov>

Hi Patrick,

==On behalf of the Secretary, the brief is procedurally improper and we do not consent.==

Best,

Michelle

Michelle Rupp | Assistant Counsel

Office of Chief Counsel | Pennsylvania Department of State

Governor's Office of General Counsel

306 North Office Building | Harrisburg, PA 17120-0102

Phone: 717.787.9201| Fax: 717.214.9899

mirupp@pa.gov | www.dos.pa.gov

# Exhibit 3

REPORTER NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 01-2862
_____

NEONATOLOGY ASSOCIATES, P.A.

v.

COMMISSIONER OF INTERNAL REVENUE

(Tax Court No. 97-1201)


JOHN J. and OPHELIA J. MALL

v.

COMMISSIONER OF INTERNAL REVENUE

(Tax Court No. 97-1208)

ESTATE OF STEVEN SOBO, DECEASED and BONNIE SOBO, EXECUTRIX, and
BONNIE SOBO, SURVIVING WIFE

v.

COMMISSIONER OF INTERNAL REVENUE

(Tax Court No. 97-2795)

AKHILESHI S. and DIPTI A. DESAI

v.

COMMISSIONER OF INTERNAL REVENUE

(Tax Court No. 97-2981)

KEVIN T. and CHERYL MCMANUS

v.

COMMISSIONER OF INTERNAL REVENUE

(Tax Court No. 97-2985)

ARTHUR and LOIS M. HIRSHKOWITZ

v.

COMMISSIONER OF INTERNAL REVENUE

(Tax Court No. 97-2994)

```
                LAKEWOOD RADIOLOGY, P.A.

                           v.

           COMMISSIONER OF INTERNAL REVENUE

               (Tax Court No. 97-2995)


    Neonatology Associates, P.A., John J. and Ophelia Hall,
    Estate of Steven Sobo, Deceased and Bonnie Sobo, Executrix,
    and Bonnie Sobo, Surviving Wife, Akhilshi S. and Dipti A.
    Desai, Kevin T. and Cheryl McManus, Arthur and Lois M.
         Hirshkowitz and Lakewood Radiology, P.A.,

                                       Appellants


                    _____


      ON APPEAL FROM THE UNITED STATES TAX COURT

           (D.C. No. 0090-1 : 97-1201)
       Honorable David Laro, Tax Court Judge
                  _____


           Before:  ALITO, Circuit Judge

        (Opinion Filed: May 20, 2002)

                         David R. Levin, Esq.
                         Wiley, Rein & Fielding, LLP
                         1776 K Street, N.E.
                         Washington, DC   20006

                         Counsel for Appellant

                         Kenneth L. Greene, Esq.
                         Robert W. Metzler, Esq.
                         Tax Division
                         Department of Justice
                         P.O. Box 502
                         Washington, DC   20044

                         Counsel for Appellee

                         Steven J. Fram, Esq.
                         Archer & Greiner, P.C.
                         One Centennial Square
                         Haddonfield, NJ   08033

                         Counsel for Amicus Curie


                _____

               OPINION OF THE COURT
                _____
```

ALITO, Circuit Judge:

Before me is a motion under Rule 29(b) of the Federal Rules of Appellate Procedure for leave to file a brief as amicus curiae over the opposition of the appellants. The motion has been referred to me as a single judge under our Internal Operating Procedure 10.5.1. Because it appears that the criteria set out in Rule 29(b) are met, i.e., that the amici have a sufficient "interest" in the case and that their brief is "desirable" and discusses matters that are "relevant to the disposition of the case," the motion is granted.

## I.

This is an appeal from a decision of the Tax Court. See Neonatology Associates, P.A. v. Commissioner, 115 T.C. 43 (2000). The appeal has been taken by two professional medical corporations (Neonatology Associates, P.A. and Lakewood Radiology, P.A.), physicians who owned the corporations, and spouses who signed joint tax returns. The appellants participated in the Southern California Voluntary Employees' Beneficiary Association ("SC VEBA"), which was promoted by certain insurance brokers. The Commissioner of Internal Revenue determined that the professional corporations had erroneously claimed deductions on their income tax returns for payments made to plans set up under the SC VEBA and that the individual taxpayers had failed to report on their income tax returns income arising from certain related transactions. The appellants filed a petition in the Tax Court challenging the deficiencies and associated penalties. After a trial, the Tax Court sustained the Commissioner's determinations, and this appeal followed.

The motion for leave to file an amicus brief in support of the Commissioner was submitted by five other physicians who also participated in same plan. In the statement of interest in their proposed amicus brief, these five physicians ("the amici") state:

> During pre-trial proceedings in the Tax Court, the Appellants in this case entered into a Settlement Agreement and Release with Commonwealth Life Insurance Company ("Commonwealth") pursuant to which Commonwealth agreed to defend this case at its expense and to pay certain portions of Appellants' tax liabilities in the event of an unfavorable outcome. Appellants (hereafter "the Settling Physicians") then proceeded to trial in what was designated as a "test" case for all of the parties who had challenged the IRS's position. Pursuant to Appellants' settlement with Commonwealth, Commonwealth now controls and is funding the appeal in this litigation.
>
> Unlike Appellants, amici declined to release their claims and have filed litigation against Commonwealth and its related parties to recover the losses they suffered through their participation in the "VEBA scheme" condemned by the Tax Court in this case. An Amended Complaint in the proposed class action in which amici are plaintiffs, Sankhla v. Commonwealth Life Ins. Co., No. 01-CV-4761 (D.N.J.) (AET), was filed on March 20, 2002 (the "Sankhla Litigation").
>
> Amici have an interest in the outcome of this case because it has become apparent that Commonwealth, through its control of this appeal, will attempt to induce this Court to address certain non-tax law issues that will impact the rights of amici against Commonwealth and related parties.

Amicus Br. at 1-2. Specifically, the amici are concerned that the appellants have argued that the Employee Retirement Income Security Act ("ERISA") applies to the plan and that our court's discussion of this issue will have a bearing in their litigation on the question whether the plaintiffs' claims against Commonwealth are preempted by ERISA. Amicus Br. at 2. The amici also wish to preserve the factual findings of the Tax Court concerning the roles of various parties in the underlying events because the amici hope to

prove that Commonwealth and its agents controlled the Tax Court litigation on behalf of the appellants and that Commonwealth and its agents are therefore bound by those findings.

The appellants argue that the amici do not satisfy the standards for filing a brief as amici.  Among other things, the appellants contend that an amicus must be "'an impartial individual'" and not a person who is "partial to the outcome" or who has "a pecuniary interest in the outcome."  Opposition to Motion for Leave to File Amicus Brief ("Opp.") at 2-4 (quoting Leigh v. Engle, 535 F. Supp. 418, 420 (N.D. Ill. 1982)).  The appellants also argue that leave to file an amicus brief should not be granted unless the party to be supported is either unrepresented or inadequately represented.  Opp. at 5-6.  In making these arguments, the appellants cite a small body of judicial opinions that look with disfavor on motions for leave to file amicus briefs.  See, e.g., National Org. for Women, Inc. v. Scheidler, 223 F.3d 615 (7th Cir. 2000); Ryan v. CFTC, 125 F.3d 1062 (7th Cir. 1997) (single judge opinion); Liberty Lincoln Mercury, Inc. v. Ford Marketing Corp., 149 F.R.D. 65, 82 (D.N.J. 1993); Yip v. Pagano, 606 F. Supp. 1566, 1568 (D.N.J. 1985).  The appellants argue that restrictive standards espoused in these opinions represent the views of "the judiciary" and are "settled law" "in this jurisdiction."  Opp. 3-4.

## II.

The standards for filing an amicus brief are set out in Rule 29.  Under Rule 29(a), a private amicus may file if all parties consent or if the court grants leave.  When a party objects to filing by a private amicus and leave of court is sought, Rule 29(b) provides that the motion for leave to file must be accompanied by the proposed brief and must state:

> (1) the movant's interest; and
> (2) the reason why an amicus brief is desirable and why the matters asserted are relevant to the disposition of the case.

Although the Rule does not say expressly that a motion for leave to file should be denied if the movant does not meet the requirements of (a) an adequate interest, (b) desirability, and (c) relevance, this is implicit.  With these requirements in mind, I turn to the restrictive standards that the appellants urge us to apply.

A.  I begin with the appellants' argument that an amicus must be "an impartial individual who suggests the interpretation and status of the law, gives information concerning it, and whose function is to advise in order that justice may be done, rather than to advocate a point of view so that a cause may be won by one party or another."  Opp. at 3-4.  This description of the role of an amicus was once accurate and still appears in certain sources, see 3A C.J.S. Amicus Curiae  2 at 422-23 (1973), but this description became outdated long ago.  See Samuel Krislov, The Amicus Curiae Brief: From Friendship to Advocacy, 72 Yale L. J. 694, 703 (1962).

Today, as noted, Rule 29 requires that an amicus have an "interest" in the case, see Fed. R. App. Proc. 29(b)(1) and (c)(3), and the appellants' argument that an amicus must be "impartial" is difficult to square with this requirement.  An accepted definition of the term "impartial" is  "disinterested," Black's Law Dictionary 752 (6th ed. 1990), and it is not easy to envisage an amicus who is "disinterested" but still has an "interest" in the case.

It is particularly difficult to reconcile impartiality and interestedness if the latter requirement is interpreted as a panel of our court did in American College of Obstetricians & Gynecologists v. Thornburgh, 699 F.2d 644 (3d Cir. 1983).  In that case, the sharply divided panel denied a motion for leave to file an amicus brief because the proposed amici, a group of law professors, "d[id] not purport to represent any individual or organization with a legally cognizable interest in the subject matter at issue, and [gave] only their concern about the manner in which this court will interpret the law."  Id. at 645 (emphasis added).  It would be virtually impossible for an amicus to show that it is "an impartial individual . . . whose function is to advise in order that justice may be done" but not a person who is "only . . . concern[ed] about the manner in which [the] court will interpret the law."  In any event, whether or not the American College panel was correct in its narrow interpretation of Rule 29's "interest" requirement, the "interest" requirement weighs strongly against the appellants' argument.

The appellants suggest, however, that the very term "amicus curiae"

suggests a degree of impartiality. The appellants quote the comment that "[t]he term 'amicus curiae' means friend of the court, not friend of a party." Opp. at 3 (quoting Ryan, 125 F.3d at 1063). The implication of this statement seems to be that a strong advocate cannot truly be the court's friend. But this suggestion is contrary to the fundamental assumption of our adversary system that strong (but fair) advocacy on behalf of opposing views promotes sound decision making. Thus, an amicus who makes a strong but responsible presentation in support of a party can truly serve as the court's friend.

The argument that an amicus cannot be a person who has "a pecuniary interest in the outcome" also flies in the face of current appellate practice. A quick look at Supreme Court opinions discloses that corporations, unions, trade and professional associations, and other parties with "pecuniary" interests appear regularly as amici. (Some of the Supreme Court cases in which the greatest number of amici have filed illustrate this point. See, e.g., Pacific Mut. Life Ins. Co. v. Haslip, 499 U.S. 1, 3 n.* (1991); Container Corp. of America v. Franchise Tax Bd., 463 U.S. 159, 161 n.* (1983).) Parties with pecuniary, as well as policy, interests also appear as amici in our court. See, e.g., South Camden Citizens in Action v. New Jersey Dep't of Envtl. Protection, 274 F.3d 771, 773 (3rd Cir. 2001). I thus reject the appellants' argument that an amicus must be an impartial person not motivated by pecuniary concerns.

C. I also disagree with the appellants' argument that an amicus seeking leave to file must show that the party to be supported is either unrepresented or inadequately represented. Rule 29 does not contain any such provision, and therefore if the requirement is valid it must represent an elaboration on the requirement of "desirability" set out in Rule 29(b)(2). In my view, however, such a requirement is most undesirable. To be sure, an amicus brief may be particularly helpful when the party supported is unrepresented or inadequately represented, but it does not follow that an amicus brief is undesirable under all other circumstances.

Even when a party is very well represented, an amicus may provide important assistance to the court. "Some amicus briefs collect background or factual references that merit judicial notice. Some friends of the court are entities with particular expertise not possessed by any party to the case. Others argue points deemed too far-reaching for emphasis by a party intent on winning a particular case. Still others explain the impact a potential holding might have on an industry or other group." Luther T. Munford, When Does the Curiae Need An Amicus?, 1 J. App. Prac. & Process 279 (1999). Accordingly, denying motions for leave to file an amicus brief whenever the party supported is adequately represented would in some instances deprive the court of valuable assistance. Moreover, requiring a prospective amicus to undertake the distasteful task of showing that the attorney for the party that the amicus wishes to support is incompetent is likely to discourage amici in instances in which the party's brief is less than ideal and an amicus submission would be valuable to the court. See Robert L. Stern, Appellate Practice in the United States 306 (2d ed. 1989) (The lawyer preparing an amicus brief "would normally be unwilling to state, except in most unusual circumstances, that the counsel for the party being supported will do an inadequate job."). The criterion of desirability set out in Rule 29(b)(2) is open-ended, but a broad reading is prudent. The decision whether to grant leave to file must be made at a relatively early stage of the appeal. It is often difficult at that point to tell with any accuracy if a proposed amicus filing will be helpful. Indeed, it is frequently hard to tell whether an amicus brief adds anything useful to the briefs of the parties without thoroughly studying those briefs and other pertinent materials, and it is often not feasible to do this in connection with the motion for leave to file. Furthermore, such a motion may be assigned to a judge or panel of judges who will not decide the merits of the appeal, and therefore the judge or judges who must rule on the motion must attempt to determine, not whether the proposed amicus brief would be helpful to them, but whether it might be helpful to others who may view the case differently. Under these circumstances, it is preferable to err on the side of granting leave. If an amicus brief that turns out to be unhelpful is filed, the merits panel, after studying the case, will often be able to make that determination without much trouble and can then simply disregard the amicus brief. On the other hand, if a good brief is rejected, the merits panel will be deprived of a resource that might have been of assistance.

A restrictive policy with respect to granting leave to file may also create at

least the perception of viewpoint discrimination.  Unless a court follows a policy of either granting or denying motions for leave to file in virtually all cases, instances of seemingly disparate treatment are predictable.  A restrictive policy may also convey an unfortunate message about the openness of the court.

Those favoring the practice of restricting the filing of amicus briefs suggest that such briefs often merely duplicate the arguments of the parties and thus waste the court's time, and I do not doubt that some amicus briefs make little if any contribution.  However, a restrictive practice regarding motions for leave to file seems to be an unpromising strategy for lightening a court's work load.  For one thing, the time required for skeptical scrutiny of proposed amicus briefs may equal, if not exceed, the time that would have been needed to study the briefs at the merits stage if leave had been granted.  In addition, because private amicus briefs are not submitted in the vast majority of court of appeals cases, and because poor quality briefs are usually easy to spot, unhelpful amicus briefs surely do not claim more than a very small part of a court's time.  For all these reasons, I think that our court would be well advised to grant motions for leave to file amicus briefs unless it is obvious that the proposed briefs do not meet Rule 29's criteria as broadly interpreted.  I believe that this is consistent with the predominant practice in the courts of appeals.  See Micael E. Tigar and Jane B. Tigar, Federal Appeals -- Jurisdiction and Practice 181 (3d ed. 1999)("Even when the other side refuses to consent to an amicus filing, most courts of appeals freely grant leave to file, provided the brief is timely and well-reasoned."); Robert L. Stern, supra, at 307-08.

III.

Turning to the circumstances of the present case, I believe that the amici have stated an "interest in the case,"and it appears that their brief is "relevant" and "desirable" since it alerts the merits panel to possible implications of the appeal.  The appellants charge that the amici wish to inject new issues into the case, but it does not appear to me that the amici are attempting to do that.  Rather, as I understand their position, they are primarily interested in making sure that our court does not inadvertently stray into issues that need not be decided in this case.  Finally, the appellants contend that the proposed amicus brief is full of "spleen" and "invective," Opp. at 10, but no specifics are cited.  My reading of the amicus brief did not spot any violations of our LAR 28.1(c), which requires that briefs be phrased in appropriate, professional terms, but if the merits panel views the matter differently, it can of course take appropriate action at that time.

For the reasons noted above, the motion for leave to file the brief as amici curiae over the objection of the appellants is granted.


TO THE CLERK OF THE COURT:

Kindly file the foregoing Opinion.


/s/Samuel A. Alito Jr.
Circuit Judge