## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| | : | |
| | : | |
| ELECTION TRUTH ALLIANCE, | : | Case No.: 1:25-cv-00329 |
| NICHOLAS BRUNO, EMILY CRAIG- | : | |
| MCCURDY, LAUREN HOFFMAN, | : | |
| KIMBERLY MINARDI, JENNIFER | : | SECOND AMENDED COMPLAINT |
| REESE, CHRISTOPHER MACK, JOHN | : | |
| PECZE, and GRACE HOHMAN, | : | |
| | : | |
| Plaintiffs | : | Filed on behalf of: Plaintiffs |
| | : | |
| v. | : | Counsel of Record: |
| | : | |
| AL SCHMIDT, individually and in his | : | Timothy D. McNair, Esquire |
| official capacity as the SECRETARY OF | : | PA ID No.: 34304 |
| COMMONWEALTH OF PENNSYLVANIA, | : | tmcnair@mcnairlaw.com |
| BOARD OF ELECTIONS OF ALLEGHENY | : | |
| COUNTY, BOARD OF ELECTIONS OF | : | McNair Law Offices, PLLC |
| CAMBRIA COUNTY, BOARD OF | : | 821 State Street |
| ELECTIONS OF ERIE COUNTY, | : | Erie, PA 16501 |
| | : | Phone: (814) 452-0700 |
| Defendants | : | Fax: (814) 454-2371 |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |

2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ELECTION TRUTH ALLIANCE, NICHOLAS BRUNO, EMILY CRAIG-MCCURDY, LAUREN HOFFMAN, KIMBERLY MINARDI, JENNIFER REESE, CHRISTOPHER MACK, JOHN PECZE, and GRACE HOHMAN,

Plaintiffs

v.

AL SCHMIDT, individually and in his official capacity as the SECRETARY OF COMMONWEALTH OF PENNSYLVANIA, BOARD OF ELECTIONS OF ALLEGHENY COUNTY, BOARD OF ELECTIONS OF CAMBRIA COUNTY, BOARD OF ELECTIONS OF ERIE COUNTY,

Defendants

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

Case No.: 1:25-cv-00329

SECOND AMENDED COMPLAINT

*Electronically Filed*

## SECOND AMENDED COMPLAINT

NOW COME the Plaintiffs, Election Truth Alliance, Nicholas Bruno, Jennifer Reese, Kimberly Minardi, Emily Craig-McCurdy, Lauren Hoffman, Christopher Mack, John Pecze, and Grace Hohman, by counsel, and bring this Complaint for redress of violations of 42 U.S.C. § 1983 and other statutes, respectfully representing:

## I.    INTRODUCTION

The voting systems and practices used in the Western District of Pennsylvania in the General Election of November 2024 deprived voters of equal protection under the law arising out of use and misuse of voting equipment and methods of administering elections which resulted in the inaccurate counting and reporting of the votes Plaintiffs attempted to cast. If not remedied, the next election will again be manipulated and Plaintiffs' votes again rendered nugatory.

In the following counties, there were failures to properly certify and secure voting systems. These failures were exploited to permit alteration of the count of the votes and to arrive at inaccurate conclusions as to the winners of several contests, as demonstrated by patterns of votes that were inconsistent with a fair election. The software used to count and report votes enabled manipulation of the counting and reporting of votes to favor the party opposed by Plaintiffs.

Plaintiffs seek prospective injunctive relief to prevent a repeat of the deprivations of equal protection arising from the inaccurate counting of their votes to the unfair advantage of candidates they opposed, and to ensure that election systems will not be exploited and unlawfully manipulated, thus ensuring that Plaintiffs' constitutional rights to equal protection under the law that their votes for candidates they support will not be overridden by manufactured or switched votes.

## II.    PARTIES

1.      Plaintiff Election Truth Alliance ("ETA") is a nonprofit corporation comprised of individual citizens who are registered voters in the various states, including Pennsylvania. Its mission is to protect and enhance the integrity of elections as required by the Constitution and laws of the United States and the States, including the Commonwealth of Pennsylvania. ETA and its members have expended substantial resources in Pennsylvania to investigate, respond to, and publicize election irregularities. As voters, the members of ETA share an interest in making sure their votes are accurately tabulated. This is central to ETA's mission. ETA seeks to vindicate the rights of its members, all of whom will suffer a deprivation of Equal Protection to the unfair advantage of candidates they oppose if elections were not properly administered.

2.      Plaintiff Nicholas Bruno is an adult citizen residing in and registered to vote in Erie County, Pennsylvania, who attempted to cast a vote on a voting machine in the 2024 General Election in that County. He is a member of Election Truth Alliance. As the result of improper manipulation of the counting and reporting of votes, Plaintiff Bruno's vote was not counted fairly and accurately as more fully set forth in this Complaint, to the unfair advantage of candidates he opposed.

3.      Plaintiff Kimberly Minardi is an adult citizen residing in and registered to vote in Allegheny County, Pennsylvania, who attempted to cast a vote in the 2024 General Election in that County. She is a member of Election Truth Alliance. As the result of improper manipulation of the counting and reporting of votes, Plaintiff Minardi's vote was not counted fairly and accurately as more fully set forth in this Complaint to the unfair advantage of candidates she opposed.

3

4.      Plaintiff Jennifer Reese is an adult citizen residing in and registered to vote in Cambria County, Pennsylvania, who attempted to cast a vote on a voting machine in the 2024 General Election in that County. She is a member of Election Truth Alliance. As the result of improper manipulation of the counting and reporting of votes, Plaintiff Reese's vote was not counted fairly and accurately as more fully set forth in this Complaint, to the unfair advantage of candidates she opposed.

5.      Plaintiff Emily Craig-McCurdy is an adult citizen residing in and registered to vote in Allegheny County, Pennsylvania, who attempted to cast a vote in the 2024 General Election in that County. She is a member of Election Truth Alliance. As the result of improper manipulation of the counting and reporting of votes, Plaintiff Craig-McCurdy's vote was not counted fairly and accurately as more fully set forth in this Complaint, to the unfair advantage of candidates she opposed.

6.      Plaintiff Lauren Hoffman is an adult citizen residing in and registered to vote in Allegheny County, Pennsylvania, who attempted to cast a vote on a voting machine in the 2024 General Election in that County. She is a member of Election Truth Alliance. As the result of improper manipulation of the counting and reporting of votes, Plaintiff Hoffman's vote was not counted fairly and accurately as more fully set forth in this Complaint, to the unfair advantage of candidates she opposed.

7.      Plaintiff Christopher Mack is an adult citizen residing in and registered to vote in Cambria County, Pennsylvania, who attempted to cast a vote on a voting machine in the 2024 General Election in that County. He is a member of Election Truth Alliance. As the result of improper manipulation of the counting and reporting of votes, Plaintiff Mack's vote was not counted fairly and accurately as more fully set forth in this Complaint, to the unfair advantage of candidates he opposed.

8.      Plaintiff John Pecze is an adult citizen residing in and registered to vote in Cambria County, Pennsylvania, who attempted to cast a vote in the 2024 General Election in that County. He is a member of Election Truth Alliance. As the result of improper manipulation of the counting and reporting of votes, Plaintiff Pecze's vote was not counted fairly and accurately as more fully set forth in this Complaint, to the unfair advantage of candidates he opposed.

9.      Plaintiff Grace Hohman is an adult citizen residing in and registered to vote in Cambria County, Pennsylvania, who attempted to cast a vote on a voting machine in the 2024 General Election in that County. She is a member of Election Truth Alliance. As the result of improper manipulation of the counting and reporting of votes, Plaintiff Hohman's vote was not counted fairly and accurately as more fully set forth in this Complaint, to the unfair advantage of candidates she opposed.

10.     Defendant Al Schmidt ("Secretary Schmidt," or "SOC") is the Secretary of the Commonwealth of Pennsylvania, having been appointed Acting Secretary of the Commonwealth by Governor Shapiro on January 17, 2023, and confirmed as Secretary of the Commonwealth on June 29, 2023. He is sued in both his individual and official capacities. Defendant Schmidt is charged with:

> a.  the duty to "examine and reexamine voting machines, and ...not approve any voting machine for any election, Federal or State, in this Commonwealth, that does not comply with the requirements of section 301 of the Help America Vote Act of 2002 (Public Law 107-252, 42 U.S.C. § 15481). ((b) amended July 14, 2009, P.L. 86, No. 20)". PA Election Code § 201(b);
>
> b.  The duty to "receive from county boards of elections information on voting system errors or difficulties or other election data pursuant to regulation." Id. at § 201(e.1);

5

c.  To receive such reports from county boards of elections as are required by the Election Code, and to demand such additional reports on special matters as he may deem necessary. PA Election Code § 201(e.1);

d.  The duty to receive from county boards of elections information on voting system errors or difficulties or other election data pursuant to regulation. PA Election Code § 201(e);

e.  The duty to "compute the votes cast for candidates "...to proclaim the results of such primaries and elections." *Id.* at § 201(f);

f.  The duty to order a county board to conduct a recount or recanvass of an election under Section 1404 for a public office which appears on the ballot in every election district in this Commonwealth or for a ballot question which appears on the ballot in every election district in this Commonwealth. PA Election Code § 201(f.2); and

11.  Defendant SOC's refusal to examine any ballot boxes, to order the county boards of elections to submit additional reports, or to order from the county boards their reports of system errors and difficulties, violates the Plaintiffs' right to Equal Protection guaranteed by the Fifth and Fourteenth Amendments of the U.S. Constitution, the Help America Vote Act, and the PA Election Code.

12.  Defendant, Allegheny County Board of Elections ("Allegheny"), is a County Board of Elections established pursuant to 25 P.S.§ 2641, having jurisdiction over the conduct of primaries and elections in such county, in accordance with the provisions the Pennsylvania Election Code, 25 P.S. §2600 *et seq*. Allegheny has the following duties:

a.  To select and equip polling places that meet the requirements of the Election Code, PA Election Code §302(b);

b.  To ascertain any errors in vote counting, and "[i]f any error is detected, the cause of it shall be ascertained and corrected and an errorless count shall be made and certified to by the county board of elections prior to election day." Id. at §1401-A(a) (modified);

6

c.  The duty to "compare the signature on [a] provisional ballot envelope with the signature on [an] elector's registration form and, if the signatures are determined to be genuine, shall count the ballot if the county board of elections confirms that the individual did not cast any other ballot, including an absentee ballot, in the election. Id. at § 1210(a.3)(5)(1); and

d.  The duty to "investigate election frauds, irregularities and violations of [Pennsylvania's Election Code], and to report all suspicious circumstances to the district attorney. Id. at § 302.

13.     Defendant, Cambria County Board of Elections ("Cambria"), is a County Board of Elections established pursuant to 25 P.S. 2641, having jurisdiction over the conduct of primaries and elections in such county, in accordance with the provisions the Pennsylvania Election Code, 25 P.S. 2600 *et seq*. Cambria has the following duties:

a.  To select and equip polling places that meet the requirements of the Election Code, PA Election Code §302(b);

b.  To ascertain any errors in vote counting, and "[i]f any error is detected, the cause of it shall be ascertained and corrected and an errorless count shall be made and certified to by the county board of elections prior to election day." Id. at §1401-A(a) (modified);

c.  The duty to "compare the signature on [a] provisional ballot envelope with the signature on [an] elector's registration form and, if the signatures are determined to be genuine, shall count the ballot if the county board of elections confirms that the individual did not cast any other ballot, including an absentee ballot, in the election. Id. at § 1210(a.3)(5)(1); and

d.  The duty to "investigate election frauds, irregularities, and violations of [Pennsylvania's Election Code], and to report all suspicious circumstances to the district attorney. Id. at § 302.

14.     Defendant, Erie County Board of Elections ("Erie"), is a County Board of Elections established pursuant to 25 P.S. 2641, having jurisdiction over the conduct of primaries and elections in such county, in accordance with the provisions the Pennsylvania Election Code, 25 P.S. 2600 *et. seq*. Erie has the following duties:

7

a. To select and equip polling places that meet the requirements of the Election Code, PA Election Code §302(b);

b. To ascertain any errors in vote counting, and "[i]f any error is detected, the cause of it shall be ascertained and corrected and an errorless count shall be made and certified to by the county board of elections prior to election day." Id. at §1401-A(a) (modified);

c. The duty to "compare the signature on [a] provisional ballot envelope with the signature on [an] elector's registration form and, if the signatures are determined to be genuine, shall count the ballot if the county board of elections confirms that the individual did not cast any other ballot, including an absentee ballot, in the election. Id. at § 1210(a.3)(5)(1); and

d. The duty to "investigate election frauds, irregularities, and violations of [Pennsylvania's Election Code], and to report all suspicious circumstances to the district attorney. Id. at § 302.

## III.   JURISDICTION AND VENUE

15.     This Court has jurisdiction of this matter pursuant to 28 U.S.C. §1343, which provides for original jurisdiction in all suits authorized by 42 U.S.C. §1983 for redress of deprivation under color of state law of Constitutional rights, privileges, or immunities or of rights under federal law, including the right to vote. *Meisel v. Kremens*, 405 F. Supp. 1253, 1254 (E.D. Pa. 1975).

16.     Citizens have a "constitutionally protected right to participate in elections," which is protected by the Equal Protection Clause. *Dunn v. Blumstein*, 405 U.S. 330, 336 (1972). The franchise is the guardian of all other rights. *Reynolds v. Sims*, 377 U.S. 533, 562 (1964).

17.     This Court further has jurisdiction of this matter pursuant to 28 U.S.C. §1331, since this case arises under the Constitution, treaties, and laws of the United States and in particular the Fifth and Fourteenth Amendments to the Constitution of the United States and the Civil Rights Act of 1871, 42 U.S.C. §1983.

18. This Court has jurisdiction under 28 U.S.C. § 2201(a), because Plaintiffs are requesting a declaration of rights and other legal relations, especially regarding an actual controversy regarding the conduct of the vote count in counties located within the Western District of Pennsylvania and the denial of the Equal Protection of the laws occasioned by depriving Plaintiffs' attempted votes their appropriate weight and the threat that the deprivation will occur again.

19. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in counties in this District.

20. Venue is proper in this District per 28 U.S.C. § 1391(b)(1) because all Defendants reside in Pennsylvania, and Allegheny, Erie, and Cambria reside in this District.

21. Defendants are "persons acting under the color of state law" in that as Pennsylvania County Boards of Elections, they act pursuant to the authority conferred by a state statute. See *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690–91 (1978) (recognizing § 1983 claim against units of local government); *Rogin v. Bensalem Twp.*, 616 F.2d 680, 686 (3d Cir. 1980) (same).

## IV.    STATEMENT OF FACTS

### Software Vulnerabilities Exploited

22. Upon information and belief, the voting machines operated by Allegheny, Cambria, and Erie Counties contain cellular modems permitting communication with the machines over cellular networks.

23.    Cambria and Allegheny utilize election equipment provided by Elections Systems and Software ("ES&S"), consisting of machines ("hardware") operated by software programs provided exclusively by ES&S. Erie utilizes election equipment provided by Dominion Voting Systems ("Dominion"), consisting of machines operated by software programs provided exclusively by Dominion.

24.    Dominion and ES&S closely guard the substance of the software operating the hardware they provide. The software is not made available for testing of its accuracy and fairness except by business entities recognized by the Commonwealth to do so, and then only on a limited basis.

25.    The software utilized by ES&S and Dominion and provided to Pennsylvania counties is certified by Pro V&V and SLI Compliance, "testing laboratories" accredited by the Election Assistance Commission ("EAC"). These entities are supposed to determine if the machines and software provided by vendors such as ES&S and Dominion accurately tabulate and report the results of voter choices at the various polling places and identify if vulnerabilities exist and could be exploited.

26.    ES&S Voting systems machines continue to run ECO for EVS 6.3.0.0, a software system known to be vulnerable to manipulation. New York State testing of EVS 6.3.0.1, conducted by SLI Compliance, identified 430 source code vulnerabilities which a knowledgeable vendor insider could exploit. These exploits would allow modification of memory, privilege escalation, removal of logs, and would allow the ability to manipulate the counting and recording of votes.

27.    Erie County used the Dominion ImageCast X ballot marking device and the ImageCast Precinct scanner in 2024.

28.     CISA confirmed nine vulnerabilities in the ImageCast X (June 2022), including the ability to install unsigned code, forge voter activation, and spread malware from the Election Management System to all connected devices. The vulnerabilities were reported by J. Alex Halderman (University of Michigan) and Drew Springall (Auburn University). Exploitation requires physical or EMS access, or a compromise of the vendor supply chain.

29.     Pennsylvania's June 9, 2011, Use Directive, incorporated as a binding condition of the EVS 6.3.0.0 certification, requires physical removal or disabling of all wireless modems before delivery to counties.

30.     ES&S withdrew the modem-equipped DS200 from EAC certification before testing was completed. Only the modem-less version is certified.

31.     ES&S admitted to NBC News in February 2020 that 14,000 DS200s with active modems were in use nationally. Erie County has not verified that the Dominion machines it uses are without functioning modems.

32.     The EAC formally admonished ES&S on March 20, 2020, for falsely marketing the modem version as EAC-certified.

33.     The modem configuration has never undergone any security assessment by an EAC-approved lab.

34.     Despite the requirement of the Pennsylvania Department of State that voting machines must not have a modem or that the modems be disabled, there has been no examination of the machines to verify the absence of functioning modems in light of the report of thousands of machines being "in the wild" with functioning modems. Erie County has admitted that no such examination has occurred.

35.     In Lake Township in Missaukee County, Michigan, ES&S DS200 machines tabulators were removed from County offices and taken to hotels and rental properties in Oakland County where they were broken into, and election management software was copied. The copying of the software enables exploitation of the machines to manipulate the reported vote counts.

36.     In Roscommon county, Michigan, ES&S equipment was breached, allowing the software to be copied and vulnerabilities to be identified and exploited to be used on other machines. The newer version of the ES&S software runs on Windows 10. Identification of vulnerabilities in the software copied allows manipulation of the newer versions.

37.     Despite request, Erie County has refused to identify the software version installed on its Dominion ImageCast machines in November 2024.

38.     In Coffee County, Georgia, Dominion Democracy Suite, a statewide system deployed under a 2019 contract covering all 159 Georgia counties was compromised. 100 ImageCast X ballot marking devices, 100 printers, 10 precinct tabulators, 21 poll pads, plus the central EMS server and central ballot scanner devices were confirmed to have been copied and were later replaced by the Secretary of State. Hard drives of every device in the secured elections office were imaged. Software was distributed on the internet and accessed from IP addresses internationally.

39.     In Colorado, Dominion Democracy Suite ImageCast Precinct Scanners were subjected to hard drive imaging during a routine "trusted build" software update., resulting in the decertification and replacement of the equipment. Tina Peters, the Republican Mesa County Clerk who enabled the breach, was convicted of four felonies and sentenced to nine years in prison.

40.     These breaches and vulnerabilities make it plausible that the reported vote results of the 2024 election were manipulated, causing Plaintiffs' votes to be miscounted to the unfair advantage of candidates they opposed.

41.    The pattern of votes recorded and reported proves that the systems were exploited and that the counting and reporting functions of the election systems in all three Defendant Counties were manipulated to the advantage of Republican candidates opposed by Plaintiffs.

**Cambria County Certification and Machine Issues**

42.    On September 28, 2024, Cambria County officials claimed to have certified completion of the Logic & Accuracy ("L&A") testing certifying that all voting equipment had been tested and verified as functioning properly. The certification explicitly stated the Central Count Scanner as well as its backup were tested. That statement was not true in that the Central Count Scanner and Express Vote scanners were never tested.

43.    No Express Vote cards were ordered prior to election day.

44.    Cambria has not disclosed the number of ballots tabulated using Express Vote machines on Election Day.

45.    Cambria did not provide ballot accounting or chain of custody documentation despite statutory obligations. Coupled with the statistical discrepancies noted below, the vote tabulation in Cambria County was inaccurate and did not accurately record or report the votes of the Plaintiffs or of voters voting differently from the Plaintiffs.

46.    On Election Day, November 5, 2024, Cambria was unable to scan any printed ballots completed by voters due to the absence of "TIS" marks which provide for alignment of the ballot to the counting equipment allowing the ballot reader to locate and identify filled-in ovals on the ballot. This issue affected all precincts within the County.

47.    Cambria requested and was granted an order of court extending poll closures from 8 PM to 10 PM. Some voters who showed up to the polls were told to either return later or were told to give their completed ballots to poll workers to be scanned at a later time.

13

48.     Poll workers were instructed to store the completed, unscannable ballots in "emergency storage bins," meant to hold ballots in the event of an emergency. However, when these bins reached their capacity, the poll workers removed the ballots. No chain of custody documentation was completed for these ballots. This introduced inaccuracies into the recording and reporting of Plaintiffs' votes.

49.     In response to the unscannable ballots, Cambria ordered an additional 74,075 ballots with the TIS marks. These arrived at Cambria's election headquarters in the afternoon of Election Day, where volunteers assisted in dividing and packing them for transport to individual precincts. No chain of custody documentation was provided for these ballots.

50.     After the closure of the polls, Board officials began to hand-count the ballots that could not be read. However, the decision was ultimately made to duplicate all unscannable ballots onto ballots that could be scanned. According to Cambria BOE, there is no record as to which ballots were individually copied or how many ballots this affected.

51.     Cambria has not publicly documented a tally of how many ballots cast were unable to be scanned on Election Day versus how many ballots were able to be scanned successfully.

52.     The failure of Cambria County to adhere to the requirements of the law resulted in the miscounting of the votes of the Plaintiffs by inaccurately reporting their votes and by permitting the introduction and counting of nonexistent votes offsetting Plaintiffs' votes to the unfair advantage of candidates Plaintiffs opposed.

### **Cambria County Ballot Discrepancies**

53.     In advance of the Election, Cambria County ordered a total of 112,655 ballots. Of these 87,050 were election day ballots, 15,855 mail-in (absentee) ballots, 6,250 provisional ballots, 500 specimen ballots and 3,000 test ballots from William Penn Printing.

54. In response to the unscannable ballots on Election Day, Cambria ordered 74,075 regular ballots, 35,000 ExpressVote cards and 24,000 BOD ("ballots on demand") stock.

55. Cambria volunteers and poll workers initially hand-counted the ballots that voters completed but then duplicated them at the suggestion of Election Systems & Software ("ES&S"). The process of duplication introduced inaccuracies in the counting and reporting of the vote in Cambria County.

56. Cambria solicited County employees who were registered voters to volunteer to perform ballot duplication.

57. These volunteers were not sworn in, deputized, or otherwise authorized to handle ballots.

58. Cambria expected about 35,000 ballots originally that would have to be hand counted or duplicated but duplicated 65,000 ballots.

59. Official County results indicate 55,661 Election Day votes, over 9,000 fewer than the number of ballots duplicated. Official Cambria results include 164 write-in candidates which are excluded in the official results published on the state website.

60. On the Election Day 7 PM report, Cambria reported 16,827 mail-in ballots were requested.

61. On the Pennsylvania Mail Ballot Dashboard, Cambria reported distributing 16,816 total mail-in ballots.

62. Cambria participated in Act 88 for the 2024 November General Election, which mandates that counties report the number of mail-in ballots received and processed at poll closure. Cambria reported 16,645 mail-in ballots requested and 15,121 mail-in ballots received, creating a third distinct total received that matches neither the 7 PM report (15,258) nor the official results (15,022). No explanation has been provided for these discrepancies.

15

63. However, Cambria only ordered 15,855 mail-in ballots which leaves a deficit of 972, or 961, or 790 mail-in ballots depending on which report is referenced. The counting of these nonexistent votes violated Plaintiffs' right to the Equal Protection of the law by permitting nonexistent votes to offset their votes.

64. Provisional ballots were not properly documented or entered into the Statewide Uniform Registry of Electors system (SURE).

65. Cambria ordered 176,980 total ballots against 88,508 registered voters — an excess of 88,472 ballots — and subsequently duplicated approximately 65,000 ballots, with only a final documented count of 55,661 Election Day votes. Cambria has no available records showing ballots issued to each precinct and unused ballot accounting despite statutory requirements and formal appeals.

66. The duplication and counting of thousands of ballots by volunteers introduced a tremendous vulnerability to manipulation of votes by those involved.

67. These discrepancies resulted in the miscounting of Plaintiffs' votes to the unfair advantage of candidates they opposed.

**Cambria County Miscounted Votes**

68. Statistical analysis of Cambria County precinct-level data from Pennsylvania Department of State website was conducted using expert methodologies of Roman Udot, Peter Klimek, and Sergei Shpilkin. The analysis, omitting precincts with fewer than 50 registered voters, demonstrates divergence in candidate vote shares in the Presidential Election at higher turnout levels, inconsistent with patterns observed in fair elections. The analysis identified statistically significant abnormal correlations between turnout and Republican vote share ($r \approx 0.78$), indicating that as turnout increased, the Republican Candidate's vote share systematically increased in patterns inconsistent with normal electoral variance and matching peer-reviewed fraud signatures, indicating manipulation of the voting and reporting processes.

16

69.     Upon information and belief, these discrepancies resulted from the improper programming of the voting machines and the manipulation of the counting and reporting mechanisms and affected Plaintiffs' votes, and the failure of Cambria County to protect their voting systems from manipulation.

70.     The patterns in the reported votes establish that Cambria County failed to prevent its election system from being compromised to the unfair advantage of candidates Plaintiffs opposed.



71.     As the result of the improper programming of the voting machines and tabulators, the exploitation of software weaknesses, and the other irregularities set forth above, Plaintiffs' attempted votes were not counted fairly and accurately, depriving Plaintiffs of the Equal Protection of the laws in violation of the statutes cited above to the unfair advantage of candidates they opposed.

72.     These discrepancies resulted from improper programming of the voting machines and manipulation of the voting and reporting processes resulting from manipulation of the software used and the failure of Erie County to protect its voting system from manipulation as required by the Pennsylvania Election Code to the unfair advantage of candidates Plaintiffs opposed.

### Erie County Miscounted Votes

73.     Statistical analysis of Erie County precinct-level data from the Pennsylvania Department of State website was conducted using expert methodologies of Roman Udot, Peter Klimek, and Sergei Shpilkin.

74.     The analysis, omitting precincts with fewer than 50 registered voters, demonstrates divergence in candidate vote shares at higher turnout levels in the Presidential Election, inconsistent with patterns observed in fair elections. The analysis identified statistically significant abnormal correlations between turnout and Republican vote share ($r \approx 0.67$), indicating that as turnout increased, the Republican Candidate's vote share systematically increased in patterns inconsistent with normal electoral variance and matching peer-reviewed fraud signatures.



75.    These discrepancies resulted from improper programming of the voting machines and manipulation of the voting and reporting processes resulting from manipulation of the software used and the failure of Erie County to protect its voting system from manipulation as required by the Pennsylvania Election Code to the unfair advantage of candidates Plaintiffs opposed.

### Allegheny County Miscounted Mail-in Votes

76.    As of 7 PM EST on November 5, 2024, Allegheny publicly reported 219,221 total returned and processed mail-in ballots: 144,417 from registered Democrats, 50,519 from registered Republicans, and 24,285 from unaffiliated / other party voters.

77.    After 7 PM EST on November 5, 2024, Allegheny reported 227,611 mail-in votes received and counted: 164,979 for Harris, 59,740 for Trump, 1,968 for other party candidates, and 924 write-ins.

78.    Unlike the 43 counties that experienced reductions in overall reported ballots, Allegheny showed a net addition of 1,203 mail-in ballots between 7 PM EST and final results. Nonetheless, other party and unaffiliated votes decreased by 23,155 relative to the number of ballots returned by registered voters in those categories, reflecting unexplained variances in ballot accounting procedures observed statewide to the unfair advantage of candidates Plaintiffs opposed.

**<u>Allegheny County Miscounted Votes</u>**

79.    Statistical analysis of Allegheny County precinct-level data from Pennsylvania Department of State website was conducted using expert methodologies of Roman Udot, Peter Klimek, and Sergei Shpilkin.

80.    The analysis, omitting precincts with fewer than 50 registered voters, demonstrates divergence in candidate vote shares at higher turnout levels in the Presidential Election, inconsistent with patterns observed in fair elections. The analysis identified statistically significant abnormal correlations between turnout and Republican vote share ($r \approx 0.66$), indicating that as turnout increased, Trump's vote share systematically increased in patterns inconsistent with normal electoral variance and matching peer-reviewed fraud signatures.



81.     These discrepancies resulted from improper programming of the voting machines and manipulation of the voting and reporting processes resulting from manipulation of the software used, and affected Plaintiffs' votes by either failing to count them or by counting them for a candidate for whom they did not intend to vote.

82.     In the Spring of 2025, the results of the vote in Pennsylvania were forensically analyzed by Walter Mebane, Ph.D. a Professor of Political Science at University of Michigan and a recognized expert in detecting election fraud. Dr. Mebane has forensically analyzed numerous elections, and his work has been recognized and relied upon by experts in the field.

83.     Dr. Mebane's *eforensics* model identified Allegheny County with a manufactured votes parameter of 0.238 [0.089, 0.340], where the entirely positive credible interval indicates patterns inconsistent with normal electoral behavior, demonstrating improper counting of the votes cast.

**Statewide Vote Reconciliation**

84.    As of 7 PM EST on November 5, 2024, the Counties of the Commonwealth of Pennsylvania ("Counties") publicly reported 1,912,676 total returned and processed mail-in ballots: 1,053,971 from registered Democrats, 629,505 from registered Republicans, and 229,200 from unaffiliated / other party voters.

85.    After 7 PM EST on November 5, 2024, the Counties reported 1,946,206 mail-in votes received and counted: 1,263,611 for Harris, 664,982 for Trump, 17,613 for other party candidates.

86.    The change in total votes added after 7 PM EST is a net of 35,477 mail-in votes: 210,040 changed to or from Harris, 211,587 were lost from unaffiliated / other party candidates, 52,379 changed to or from Trump.

| reconciliation between counts published at 7PM and final counts | | | | | |
|---|---|---|---|---|---|
| COUNTY | Δ TOT | Δ DEM | Δ OTH | Δ REP | |
| ALLEGHENY | 1203 | 16655 | -23155 | 7703 | |
| CAMBRIA | -279 | -55 | -1077 | 853 | |
| ERIE | 1193 | 3356 | -3045 | 882 | |
| PHILADELPHIA | 11091 | 20051 | -17294 | 8334 | |
| STATE TOTAL | 33530 | 209640 | -211587 | 35477 | net change |
| | 43094 | 210040 | 211587 | 52379 | absolute change |

87.    The change in total votes added after 7 PM EST is a net of 33,530 mail-in votes; however, 43 counties experienced a reduction in overall ballots.[1]

88.    Ballots registered to unaffiliated / other party candidates had low incidence of realized votes for unaffiliated / other party candidates in every county.

**ETA Statistical Analysis Of Select Counties and Statewide Voting Behavior**

89.    The statistical methodologies employed by Klimek, Yegorov, Hanel, and Thurner (Klimek, et al.) identify patterns and anomalies that constitute indicators of electoral irregularities.

22

90.     In 2012, Dr. Klimek, Yegorov, Hanel, and Thurner published research demonstrating that fraudulent elections exhibit distinctive statistical patterns. In fair or normal elections, vote share for winning candidates remains stable across different turnout levels. Fraudulent elections show unusual clustering at high turnout/high vote percentages.

91.     Instead of tight clustering around typical values, fraudulent elections show data spreading or smearing toward the upper-right corner of vote-turnout plots.



92.     ETA conducted independent statistical analysis of certified results from Allegheny, Cambria, and Erie using Klimek, Thurner, et al., methodology.

93.     Vote-turnout fingerprints for the Commonwealth of Pennsylvania exhibit turnout characteristics of electoral irregularities documented in peer-reviewed research. Precinct-level data shows that candidate vote shares follow more statistically normal trends at lower turnout levels (below ~50-60%) but diverge significantly at higher turnout levels, with Trump's vote share increasing and Harris's vote share decreasing as turnout rises above this threshold. This demonstrates manipulation of the counting and reporting functions.

94.     This effect is observed across all Pennsylvania counties that contain a large number of precincts above and below 60% turnout.



24





95.     State-level data from Pennsylvania demonstrates divergence in candidate vote shares at higher turnout levels, inconsistent with patterns observed in fair elections. The correlation analysis reveals statistically significant relationships between Republican Presidential candidate vote shares and turnout levels ($r \approx 0.609$) that exceed normal variance thresholds and demonstrate manipulation of the vote count or reporting to the unfair advantage of candidates Plaintiffs opposed.

96.     Upon information and belief, these anomalies resulted from the improper programming or manipulation of the voting and counting machines and altered the manner in which the Plaintiffs' votes were counted to the unfair advantage of candidates they opposed. The counting of fraudulent votes diminished the weight of Plaintiffs' votes and altered the outcome of the election. These issues need to be corrected through appropriate prospective injunctive relief.

**COUNT I – ELECTION TRUTH ALLIANCE, NICHOLAS BURNO, EMILY CRAIG-MCCURDY, LAUREN HOFFMAN, KIMBERLY MINARDI, JENNIFER REESE, JOHN PECZE, AND GRACE HOHMAN V. AL SCHMIDT IN HIS OFFICIAL CAPACITY AS THE SECRETARY OF COMMONWEALTH OF PENNSYLVANIA, BOARD OF ELECTIONS OF ALLEGHENY COUNTY, BOARD OF ELECTIONS OF CAMBRIA COUNTY, BOARD OF ELECTIONS OF ERIE COUNTY 42 U.S.C. §1983 – VIOLATION OF THE RIGHT TO THE EQUAL PROTECTION OF THE LAWS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION**

97.     Plaintiffs incorporate by reference the averments of the preceding paragraphs.

98.     Plaintiffs ETA, Nicholas Bruno, Emily Craig-McCurdy, Lauren Hoffman, Kimberly Minardi, Jennifer Reese, Christopher Mack, John Pecze, and Grace Hohman have the right to vote and to have their votes accurately tabulated and reported, so that their votes be given the same effect no matter where they reside, as guaranteed by the U.S. Constitution Amendments V and XIV, in violation of 42 U.S.C. §1983.

26

99.     ETA requested the SOC to direct a hand count of ballots, under the authority vested in him by PA Election Code § 201(e.1), of the precincts in which Plaintiffs voted. Such an examination is authorized by Section 201 (e.1) of the Election Code and would have demonstrated that the anomalies identified above resulted from improper programming or manipulation of the voting and counting machines to the unfair advantage of candidates Plaintiffs opposed.

100.     The anomalies presented by the analysis of the vote statewide including the precincts in which Plaintiffs live result from the improper programming of the voting, counting, and reporting machines used in the election in which they voted, or attempted to vote. This deprived Plaintiffs of their right to the Equal Protection of the laws in that their votes were not counted for the candidates they supported.

101.     Unless the cause of the discrepancies in counting is identified and corrected, the next election in which Plaintiffs vote will be just as compromised. When the cause of the discrepancies is identified, Defendant Schmidt can (and should be required to) act pursuant to his statutory duty under Section 301 of the Help America Vote Act of 2002 (Public Law 107-252, 42 U.S.C. § 15481) ((b) amended July 14, 2009, P.L. 86, No. 20) PA Election Code § 201(b), and this Court's general equitable powers, to ensure that the voting machines used in the districts in which Plaintiffs vote, and the machines in other districts whose votes will be tallied against Plaintiffs comply with the requirements of Section 301 of the Help America Vote Act, since machines that do not accurately tabulate Plaintiffs' votes, to the unfair advantage of candidates they opposed, do not comply.

102.    Defendant SOCs' refusal to examine any ballot boxes, to order the County Boards of Elections to submit additional reports, or to order from the County Boards their reports of system errors and difficulties to identify and correct the causes of the inaccuracies in tabulation and reporting of votes, violates the Plaintiffs' right to Equal Protection guaranteed by the Fifth and Fourteenth Amendments of the U.S. Constitution, the Help America Vote Act, and the PA Election Code, in that their votes will not accurately be counted and reported, to the unfair advantage of candidates they oppose.

103.    Defendant Schmidt's refusal to direct the examination of any ballot boxes, to order the County Boards of Elections to submit additional reports, to require the Defendant Counties to identify the cause of the inaccurate reports of votes cast, or to order from the county boards their reports of system errors and difficulties, violates the Plaintiffs' right to Equal Protection guaranteed by the Fifth and Fourteenth Amendments of the U.S. Constitution, the Help America Vote Act, and the PA Election Code because those actions prevent the correction of errors affecting the votes Plaintiffs attempted to register, which will deprive plaintiffs of the ability to cast an effective vote in the upcoming election.

104.    If the cause of the miscounting is not identified and corrected, the Plaintiffs will again be deprived of the Equal Protection of the Laws, since the manner and effectiveness of their votes will be dependent on where they live to the unfair advantage of candidates they oppose. Voters in precincts with lower voter turnout will be treated more favorably than Plaintiffs in that their votes will accurately be counted and reported.

105.    The Defendants will deprive Plaintiffs of the Equal Protection of the Laws in violation of 42 U.S. C. §1983 by failing fully to determine the cause of the miscounting in past elections and to fully examine and correct the counting and tabulating equipment and associated software used to count the votes in the next election. If the counting and tabulating systems and software are not corrected, the votes Plaintiffs attempt to cast in the next election will not be properly counted, to the unfair advantage of candidates they oppose.

28

106.    As a result of their actions and inactions in failing fully to test and verify the accuracy of the counting machinery and to identify the causes of the inaccurately reported results, Defendant County Boards of Elections for Cambria, Erie, and Allegheny will permit the manufacture, disappearance, manipulation and/or theft of votes in the 2026 election in which Plaintiffs will again attempt to vote, offsetting and rendering null and void the votes they will attempt to cast to the unfair advantage of candidates they oppose.

107.    As a result of all of their actions and inactions, Plaintiffs will be caused harm and deprivation of their constitutionally protected right to have their vote weighed equally against all others in the election to the unfair advantage of candidates they oppose.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court grant the following relief forthwith pursuant to its statutory authority and its general equitable powers:

a.    That the Court declare that the counting and reporting systems used by Defendants in the 2024 general election are not capable of accurately counting and reporting the votes cast;

b.    That Defendant SOC and all Defendants BOEs failed to follow proper procedures in conducting the 2024 general election which failures affected the weight of the votes attempted to be cast by Plaintiffs;

c.    That the Court mandate and require the Defendant SOC to determine the cause of the discrepancies between votes cast and votes reported and take all necessary steps to avoid a repetition of the inaccurate recording and reporting of votes in the 2026 general election;

d.    direct the Defendant County Boards of Elections to perform such examination including, if necessary, the hand counting of sufficient ballots to demonstrate the accuracy of the equipment used when compared to the tabulation created by the voting apparatus;

e.    That the Court require that the Defendant BOEs determine the cause of the discrepancies between votes actually cast and votes reported and take all necessary steps to avoid a repetition of the inaccurate recording and reporting of votes in the 2026 general election;

f.   That the Court require that the Defendant BOEs explain the mismatches and disappearances of ballots in the 2024 presidential election and enjoin the Defendant BOEs to undertake all necessary steps to avoid repetition of the conditions that led to the inaccurate recording and reporting of votes in the 2024 election;

g.   That the Court enjoin the Defendant SOC and all Defendant BOEs to ensure compliance with the statutes and laws regarding vote counting in all counties in future elections; and

h.   That the Court grant the Plaintiffs their attorney fees, expert witness fees, and costs in this action, and such other and further relief that the Court deems just.

**COUNT II. ELECTION TRUTH ALLIANCE, JENNIFER REESE, CHRISTOPHER MACK, JOHN PECZE, AND GRACE HOHMAN V. AL SCHMIDT IN HIS OFFICIAL CAPACITY AS THE SECRETARY OF THE COMMONWEALTH AND CAMBRIA COUNTY BOARD OF ELECTIONS 42 U.S.C. § 1983 – VIOLATION OF THE RIGHT TO EQUAL PROTECTION OF THE LAWS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION**

108.   Plaintiffs incorporate by reference the preceding averments of this Complaint as though fully set forth at length.

109.   Defendant Cambria BOE filed a false Logic and Accuracy certification in the 2024 Election.

110.   Defendant Cambria BOE used untested election machinery and equipment in the 2024 election.

111.   Upon information and belief, Defendant Cambria BOE did not create or maintain documentation regarding handling and custody of ballots and votes in the 2024 Election.

112.   Defendant Cambria BOE did not scan all provisional ballots submitted in the 2024 Election.

113.   Defendant Cambria BOE did not explain ballot discrepancies in the 2024 Election.

114.   Defendant Cambria BOE inexplicably ordered 88,472 more ballots than registered votes in the 2024 Election.

30

115. The votes reported by Defendant Cambria BOE evidenced manipulation and did not reflect the actual votes cast in the County.

116. Defendant SOC failed sufficiently to validate security of voting machinery equipment and software used by Defendant Cambria BOE in the 2024 Election, in particular by failing to ensure the integrity of the software used and in failing to ensure the absence of modems in the equipment used by the Counties which it approved.

117. The false L&A certification, untested equipment, missing chain of custody documentation, unscanned provisional ballots, unexplained ballot discrepancies, ordering of 88,472 more ballots than registered voters, statistical precinct-level divergence patterns, vote-turnout clustering, and inaccurate reporting of the actual votes cast demonstrate that Cambria will deprive voters of their rights under 42 U.S.C. §1983 to have ballots counted and included in appropriate totals if the conditions that led to the inaccurate reporting are not identified and corrected.

WHEREFORE, Plaintiffs respectfully demand that this Honorable Court:

a. Require Defendant Cambria to determine the cause of the incorrect reporting of votes and, if necessary, examine the software used, the devices used and if necessary, hand count a sufficient number of ballots to enable a determination of the accuracy of the reported vote count, and to take such steps as are necessary to prevent a recurrence of the miscounting;

b. Enjoin and require Defendants SOC and Cambria BOE to conduct a full hand recount of all ballots cast in the precincts in which Plaintiffs voted in the 2024 general election in Cambria County and, if such examination shows manipulation of recording or reporting of votes, of the other precincts in the County;

c. Enjoin Defendants SOC and Cambria BOE to determine the accuracy of all vote counts and reports in the precincts in which Plaintiffs voted in Cambria County in the 2024 election and if inaccuracies are found, the balance of the County;

d. Enjoin and require that Defendants SOC and Cambria BOE implement procedures satisfactory to the Plaintiffs and to the Court that will ensure all vote counts and reports will be accurate in the future; and

e.   Grant Plaintiffs their attorney fees, expert witness fees and costs in this action, and such other and further relief that the Court deems just.

## COUNT III – ELECTION TRUTH ALLIANCE AND NIC BRUNO V. AL SCHMIDT IN HIS INDIVIDUAL AND OFFICIAL CAPACITY AS THE SECRETARY OF THE COMMONWEALTH AND ERIE COUNTY BOARD OF ELECTIONS - 42 U.S.C. § 1983 - VIOLATION OF THE RIGHT TO THE EQUAL PROTECTION OF THE LAWS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

118.   Plaintiffs incorporate by reference the preceding averments of this Complaint.

119.   Defendant Erie BOE failed to fulfill its duties mandated by statute.

120.   Defendant Erie BOE exhibited mail-in ballot delivery failures affecting up to 17,000 voters in the 2024 election.

121.   Defendant Erie BOE sent ballots incorrectly to 365 voters in the 2024 election.

122.   Defendant Erie BOE distributed mail-in ballots which listed candidates for Pennsylvania State House races applicable for different election districts than those in which the voter was registered in the 2024 election.

123.   The data from Defendant Erie BOE exhibited ballot count discrepancies, precinct-level divergence patterns, and vote-turnout clustering in the 2024 election, and did not accurately reflect the actual votes cast.

124.   Defendant SOC failed to validate security of voting machinery equipment and software used by Defendant Erie BOE in the 2024 election.

125.   As a direct result of their actions and inactions, Defendant Erie BOE systematically impaired Plaintiffs' ability to determine the accuracy of the count and reporting of those votes, depriving them their right to have their votes counted, in violation of 52 U.S.C. §10101 under 42 U.S.C. §1983.

WHEREFORE, Plaintiffs respectfully demand that this Honorable Court:

32

a.  Require Defendant Erie to determine the cause of the incorrect reporting of votes and, if necessary, examine the software used, the devices used and if necessary, hand count a sufficient number of ballots to enable a determination of the accuracy of the reported vote count, and to take such steps as are necessary to prevent a recurrence of the miscounting;

b.  Enjoin and require Defendants SOC and Erie BOE to conduct a full hand recount of all ballots cast in the precincts in which Plaintiffs voted in the 2024 general election in Erie County and, if such examination shows manipulation of recording or reporting of votes, of the other precincts in the County;

c.  Enjoin Defendants SOC and Erie BOE to determine the accuracy of all vote counts and reports in the precincts in which Plaintiffs voted in Erie County in the 2024 election and if inaccuracies are found, the balance of the County;

d.  Enjoin and require that Defendants SOC and Erie BOE implement procedures satisfactory to the Plaintiffs and to the Court that will ensure all vote counts and reports will be accurate in the future; and

e.  Grant Plaintiffs their attorney fees, expert witness fees and costs in this action, and such other and further relief that the Court deems just.

**COUNT IV – ELECTION TRUTH ALLIANCE, KIMBERLY MINARDI, EMILY CRAIG-MCCURDY, AND LAUREN HOFFMAN V. AL SCHMIDT IN HIS OFFICIAL CAPACITY AS THE SECRETARY OF THE COMMONWEALTH AND ALLEGHENY COUNTY BOARD OF ELECTIONS - 42 U.S.C. § 1983 - VIOLATION OF THE RIGHT TO THE EQUAL PROTECTION OF THE LAWS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION**

126.    Plaintiffs incorporate by reference the preceding averments of this Complaint.

127.    Defendant Allegheny BOE's report of votes was inaccurate in the 2024 Election. These inaccuracies affected the votes cast by Plaintiffs.

128.    Defendant SOC failed to validate security of voting machinery equipment and software used by Defendant Allegheny BOE in the 2024 election.

33

129.    The ballot count discrepancies, precinct-level divergence patterns and statistically significant fraud parameters identified by expert analysis, demonstrate that Allegheny failed to accurately count ballots and systematically deprived voters of their rights under 52 U.S.C. §10101 to have ballots counted and included in appropriate totals.

130.    As a direct result of their actions and inactions, Defendant Allegheny BOE systematically impaired Plaintiffs' ability to determine the accuracy of the count and reporting of those votes, depriving them their right to have their votes counted, in violation of 52 U.S.C. §10101 under 42 U.S.C. §1983.

WHEREFORE, Plaintiffs respectfully demand that this Honorable Court:

a. Require Defendant Allegheny to determine the cause of the incorrect reporting of votes and, if necessary, examine the software used, the devices used and if necessary, hand count a sufficient number of ballots to enable a determination of the accuracy of the reported vote count, and to take such steps as are necessary to prevent a recurrence of the miscounting;

b. Enjoin and require Defendants SOC and Allegheny BOE to conduct a full hand recount of all ballots cast in the precincts in which Plaintiffs voted in the 2024 general election in Allegheny County and, if such examination shows manipulation of recording or reporting of votes, of the other precincts in the County;

c. Enjoin Defendants SOC and Erie BOE to determine the accuracy of all vote counts and reports in the precincts in which Plaintiffs voted in Allegheny County in the 2024 election and if inaccuracies are found, the balance of the County;

d. Enjoin and require that Defendants SOC and Allegheny BOE implement procedures satisfactory to the Plaintiffs and to the Court that will ensure all vote counts and reports will be accurate in the future;

e. Grant Plaintiffs their attorney fees, expert witness fees and costs in this action, and such other and further relief that the Court deems just.

Respectfully submitted,


MCNAIR LAW OFFICES, PLLC


By: ___*s/ Timothy D. McNair*_____
       Timothy D. McNair, Esquire
       Pa. ID# 34304
       821 State Street
       Erie, PA 16501
       (814) 452-0700
       (814) 454-2371 (fax)
       tmcnair@mcnairlaw.com