IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ELECTION TRUTH ALLIANCE,** *et al.,* | : | **ELECTRONICALLY FILED** |
| **Plaintiffs,** | : | **CIVIL NO. 1:25-cv-00329** |
| | : | |
| **v.** | : | **HONORABLE SUSAN PARADISE** |
| | : | **BAXTER** |
| **AL SCHMIDT, in his official capacity as** | : | |
| **Secretary of Commonwealth of Pennsylvania,** *et* | : | |
| *al*, | : | |
| **Defendants.** | : | |

## SECRETARY SCHMIDT'S OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND

Defendant, Secretary of the Commonwealth Al Schmidt, by and through his undersigned counsel, hereby files this Opposition to Plaintiffs' motion for leave to file a second amended complaint ("SAC). Dkt. No. 45.

### I.    INTRODUCTION

More than a year after the Secretary's certification of the 2024 General Election, Plaintiffs seek leave to file a second amended complaint that clarifies some of their legal theories but continues, at its heart, to relitigate the results of the 2024 General Election. The proposed complaint also continues to suffer from repeated failures to allege necessary facts to support standing and a claim for relief, or to overcome Secretary Schmidt's immunity under the Eleventh Amendment. Accordingly, Plaintiffs' motion should be denied as futile.

### II.    BACKGROUND

#### A.  Allegations of Proposed Second Amended Complaint

Plaintiff Election Truth Alliance ("ETA") claims a mission to "protect and enhance the integrity of elections" and purports to have an interest in ensuring that its members' votes are

accurately tabulated. Proposed SAC ("Prop. SAC"), Dkt. No. 45-1 ¶ 1. Eight individual Plaintiffs reside in Allegheny, Cambria, or Erie counties; each claims their vote was "not counted fairly and accurately . . . to the unfair advantage of candidates [he or she] opposed" due to "improper manipulation of the counting and reporting of votes." *Id.* ¶¶ 2-9. Plaintiffs allege there to be an "actual controversy regarding the conduct of the vote count" in these counties. *Id.* ¶ 18. Yet absent from the 130-paragraph proposed SAC is any plausible injury-in-fact, let alone one caused by the Defendants or that can be remedied. Instead, Plaintiffs assert various perceived security issues with election systems, manipulation of the vote count by some apparently unknown actor (each such reference being in the passive voice), and alleged irregularities in each county. They then claim there to be "statistically significant abnormal correlations between turnout and Republican vote share," caused by "improper programming" and "manipulation of the voting and reporting processes." *Id.* ¶¶ 68-69 (Cambria), ¶¶ 74-75 (Erie), ¶¶ 80-81 (Allegheny).

With respect to state-wide numbers, Plaintiffs make a variety of claims, including that: reported unofficial returns changed on the evening of November 5, 2024; there are "anomalies that constitute indicators of electoral irregularities," which are "observed across all Pennsylvania counties that contain a large number of precincts above and below 60% [voter] turnout; and this again "demonstrate[s] manipulation of the vote count or reporting" which "diminished the weight of Plaintiffs' votes and altered the outcome of the election." *Id.* ¶¶ 84-96. Plaintiffs then go so far as to request that Defendants examine the software and devices used, conduct a full hand recount of all ballots cast in Plaintiffs' precincts, "determine the accuracy of all vote counts and reports" in Plaintiffs' precincts, and implement procedures that they find satisfactory. *See, e.g.*, *id.* at 31.

Plaintiffs put forth four counts, all for violations of Equal Protection under the Fifth and Fourteenth Amendments, pursuant to 42 U.S.C. § 1983. Count I apparently pertains to the

allegedly-unsecure election systems, as it alleges a hand count would have demonstrated that the "anomalies" identified by Plaintiffs "resulted from improper programming or manipulation of the voting and counting machines," *id.* ¶ 99, and that failure to fully "test and verify the accuracy of the counting machinery . . . will permit the manufacture, disappearance, manipulation and/or theft of votes in the 2026 election." *Id.* ¶ 106. Count II claims that Cambria BOE used "untested election machinery and equipment," among other things, and that Secretary Schmidt "failed sufficiently to validate security" of the equipment and software used by Cambria BOE. *Id.* Count II, ¶¶ 110, 116. Count III claims that Erie BOE made mistakes with respect to mail ballots and that Secretary Schmidt "failed to validate security" of the equipment and software used by Erie BOE. *Id.* Count III, ¶¶ 115-121. Finally, Count IV claims that Allegheny BOE exhibited "statistically significant fraud parameters" and that Secretary Schmidt "failed to validate security" of the equipment and software used by Allegheny BOE. *Id.* Count IV, ¶¶ 123-126.

Plaintiffs seek a declaration that the Commonwealth-approved counting and reporting systems used by Defendants (and across the Commonwealth) are not capable of accurately counting and reporting the vote and that Defendants failed to follow proper procedures. Plaintiffs also seek to enjoin: (a) the Secretary to determine the cause of the alleged discrepancies and to direct the Defendant Counties to demonstrate the accuracy of the equipment used; (b) the Defendant Counties to determine the cause of the alleged discrepancies  and take steps to avoid the same in 2026; and (c) all Defendants to ensure compliance with the law.

### B.  The 2024 General Election

The 2024 General Election took place on November 5, 2024. As required by the Pennsylvania Election Code, 25 P.S. § 3031.5(a), all voting systems used by Pennsylvania's 67 counties, including Cambria, Erie and Allegheny, were certified by the United States Election

Assistance Commission and approved for use by the Secretary.[1] The Pennsylvania Election Code authorizes counties to decide which approved voting system to use. 25 P.S. § 2642(c).

Two post-election audits conducted prior to certification confirmed the accuracy of the unofficial returns for the 2024 Election.[2] On December 4, 2024, Secretary Schmidt certified the results from Pennsylvania's 67 counties, pursuant to 25 P.S.§ 2621(c). On December 10, 2024, Governor Josh Shapiro signed a Certificate of Ascertainment as required by Federal and Pennsylvania law. 3 U.S.C. § 5; 25 P.S. § 3166.[3]

## III.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 15(a)(2) instructs that a court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. Pro. 15(a)(2). "The Rule's 'purpose is to provide maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities.'" *BLOM Bank SAL v. Honickman*, 605 U.S. 204, 213 (2025) (quoting 6 C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1471, p. 587 (3d ed. 2010)).

"Nevertheless, leave to amend is not an absolute right," *Plouffe v. Cevallos*, 777 Fed. Appx. 594, 602 (3d Cir. 2019) (citing *Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245, 259 (3d Cir. 2014)), and "the ultimate decision to grant or deny opportunity to amend is within the discretion of the court." *Cresci v. City of Bayonne*, No. 23-1342, 2024 WL 94099, *2 (3d Cir. Jan. 9, 2024)

---

[1] The Department of State website provides links to the certifications for the voting systems used in each and every county. *See* Ex 1, Pa. Dep't of State, Voting Systems in Pennsylvania, https://www.pa.gov/agencies/dos/resources/voting-and-elections-resources/voting-systems (last visited Mar. 30, 2026).

[2] Ex. 2, Press Release, Pa. Dep't of State, Post-Election Audits Confirm Accuracy of 2024 General Election (Dec. 2, 2024), *available at* https://www.pa.gov/agencies/dos/newsroom/post-election-audits-confirm-accuracy-of-2024-general-election.

[3] Ex. 3, Press Release, Pa. Dep't of State, Governor Shapiro Certifies 2024 Presidential Election Results (Dec. 10, 2024), *available at* https://www.pa.gov/agencies/dos/newsroom/governor-shapiro-certifies-2024-presidential-election-results.

(citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). In denying leave to amend, however, a court must provide a reason for the denial. *Foman*, 371 U.S. at 182.

Courts have provided non-exhaustive lists and examples of reasons that courts may give for denying leave. *See, e.g.*, *Foman*, 371 U.S. at 182; *Mullin v. Balicki*, 875 F. 3d 140, 149-50 (3d Cir. 2017). Among these factors are futility. *Foman*, 371 U.S. at 182. To determine whether amendment would be futile, a court examines whether the proposed amended complaint will cure the deficiency in the original or whether it can withstand a motion to dismiss. *See, e.g.*, *Citizens Bank of Pa. v. Reimbursement Tech., Inc.*, 609 Fed. Appx. 88, 95 (3d Cir. 2015) ("Amendment of the complaint is futile if the amendment will not cure the deficiency in the original [pleading] or if the amended [pleading] cannot withstand a renewed motion to dismiss.") (quoting *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 292 (3d Cir. 1988)).

Accordingly, courts have examined futility based on various factors, including (as relevant here) standing, mootness, immunity, and failure to state a claim upon which relief can be granted. A number of courts have examined whether a proposed amended complaint established standing. *See, e.g.*, *Cole v. Encapera*, No. 15-104, 2016 WL 1461909, *3 (W.D. Pa. Apr. 14, 2016) (finding that amendment to add a claim would be futile where plaintiff did not have standing to bring it); *Hvizdak v. Citizens Bank of Pa.*, No. 14-406, 2015 WL 4878639, *10 (W.D. Pa. Aug. 6, 2015) (finding that granting leave to amend would be futile where, among other things, "no subsequent amendments could . . . overcome the loose proximity between injury complained of and activity alleged without becoming a substantively new claim"). Courts have also granted motions to dismiss for lack of standing, and held in the same order that amendment would be futile because plaintiffs could not adequately plead standing or had not done so in their proposed amended complaint. *See, e.g.*, *Walsh v. Luzerne Cnty.*, No. 4:24-cv-01878, 2025 WL 1222745, *8 (M.D. Pa.

Apr. 28, 2025); *Forman v. Schmidt*, No. 2:24-cv-266, 2025 WL 1207739, *3 (W.D. Pa. Apr. 25, 2025), *aff'd per curiam* No. 25-2013, 2026 WL 810648 (3d Cir. Mar. 25, 2025); *Hollis v. Commw. of Pa.*, No. 3:08-CV-1452, 2009 WL 3633724, *5 (M.D. Pa. Oct. 30, 2009).

Although it appears to arise less often, courts have also denied amendment as futile where the Defendant had immunity. *See, e.g.*, *B.P. by and through L.P. v. N. Allegheny Sch. Dist.*, 579 F. Supp. 3d 713, 731-732 (W.D. Pa. 2022); *Shippensburg Urban Dev. v. United States*, 510 F. Supp. 3d 284, 288-92 (E.D. Pa. 2020). Similarly, some courts have denied leave to amend as futile due to mootness. *See, e.g.*, *Roman v. Harry*, No. 3:25-786, 2025 WL 2918973, *6, *8 (M.D. Pa. Oct. 14, 2025); *B.P. by and through L.P.*, 579 F. Supp. 3d at 724, 732 (dismissing Count I as moot, and subsequently granting leave to file an amended complaint only as to a different Count).

Finally, "[a]mendment would be futile if the amended complaint would not survive a motion to dismiss for failure to state a claim." *Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245, 259 (3d Cir. 2014) (citing *Travelers Indem. Co. v. Dammann & Co.*, 594 F.3d 238, 243 (3d Cir. 2010). "A complaint fails to state a claim upon which relief can be granted where the plaintiff is unable to plead 'enough facts to state a claim to relief that is plausible on its face.'" *Budhun*, 765 F.3d at 259 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Although the Court must accept the amended complaint's factual allegations as true and draw all reasonable inferences in Plaintiffs' favor, *Odd v. Malone*, 538 F.3d 202, 207 (3d Cir. 2008), it "need not accept bald assertions or inferences drawn by the plaintiff if they are unsupported by the facts set forth in the complaint," nor "accept legal conclusions set forth as factual allegations." *Peltz v. State Farm Mut. Auto. Ins. Co.*, 538 F. Supp. 3d 498, 503 (W.D. Pa. 2021) (citing *Cal. Pub. Emps.' Ret. Sys. v. The Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Thus, . . . a complaint is properly dismissed

under Fed. R. Civ. P. 12(b)(6) where the factual content does not allow the court 'to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Peltz*, 538 F. Supp. 3d at 503 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## IV.   ARGUMENT

### A.  Plaintiffs lack standing.

The Proposed Second Amended Complaint is futile because Plaintiffs again fail to adequately allege standing. Inquiry into standing "is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Standing is a threshold jurisdictional question which a court must address prior to and independent of the merits of a party's claims. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998). Thus, a court only has jurisdiction over a case if the plaintiff has standing to sue. *See Kerchner v. Obama*, 612 F.3d 204, 207 (3d Cir. 2010).

To establish standing, the plaintiff must show he has suffered or will suffer an injury in fact that is caused by the conduct of the defendant and that can be redressed by the court. *Berg v. Obama*, 586 F.3d 234, 239 (3d Cir. 2009) (citing *Taliaferro v. Darby Tp. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2006)). An "injury in fact" is "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal citations and quotations omitted).

> 1. Individual Plaintiffs' allegations do not support a reasonable inference that they suffered an injury-in-fact.

Each individual Plaintiff alleges as their injury-in-fact that his or her "vote was not counted fairly and accurately . . . to the unfair advantage of candidates [he or she] opposed" in the 2024 General Election. Prop. SAC, Dkt. No. 45-1, ¶¶ 2-9. *See also* Pls. Br. Opp. Mot. to Dismiss Am. Compl., Dkt. No. 44 at 3 (clarifying that, under both the Amended Complaint and proposed SAC,

7

"Plaintiffs allege as their injury in fact that their votes were not accurately counted").

Plaintiffs allege a number of facts in support of their alleged injury, but even taken as true, their allegations do not lead to a reasonable inference that their votes were not counted fairly and accurately to the unfair advantage of candidates they oppose. Plaintiffs start with allegations about ES&S and Dominion voting systems and software. They allege that ES&S' EVS 6.3.0.0 software has "430 source code vulnerabilities which a knowledgeable vendor insider could exploit," Prop. SAC, Dkt. No. 45-1 ¶ 26, but they do not make any allegations that this actually happened, nor could they. They allege that, as of February 2020, ES&S admitted that there were 14,000 DS200s with active modems in use nationally (the implication being that the machines could have connected to the internet and been thus exploited), *id.* ¶ 31, but they do not allege that they were used by any of the Defendant County Boards of Elections ("BOEs") in the 2024 General Election. They allege that Dominion systems were compromised in Georgia and Colorado, *id.* ¶¶ 38-39, but they do not allege that anyone used the information learned in those incidents to access and manipulate systems in the 2024 General Election in any of the relevant counties. None of these missing allegations can be reasonably inferred from the allegations that are made.

Plaintiffs then summarize their point as: "These breaches and vulnerabilities make it plausible that the reported vote results of the 2024 election were manipulated." *Id.* ¶ 40. It is far more accurate to say that Plaintiffs have alleged that some conditions existed that may have helped make it possible for such a breach to have occurred. But to say that a situation may possibly have been able to occur does not lead to a reasonable inference that it *did* occur. *See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009)* ("[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'— 'that the pleader is entitled to relief.'") (quoting Fed. R. Civ. Proc. 8(a)(2)).

In an attempt to build plausibility, Plaintiffs include statistical analysis allegedly showing vote manipulation in high-turnout precincts in the Defendant Counties, implying that the Republican Presidential candidate received additional, fraudulent votes in his favor in those high-turnout precincts. Prop. SAC, Dkt. No. 45-1 ¶¶ 41 ("The pattern of votes recorded and reported proves that the systems were exploited and that the counting and reporting functions of the election systems in all three Defendant Counties were manipulated to the advantage of Republican candidates opposed by Plaintiffs); *Id.* ¶¶ 68, 74, 80 (describing analysis). This statistical analysis, taken as true, does not lead to a reasonable inference that Plaintiffs have suffered an injury-in-fact.

First, Plaintiffs allege injury in the form of advantage to Republican "candidates," plural, but they include analysis that pertains only to the contest for President. Even if it were true that some unknown actor had taken advantage of security vulnerabilities and manipulated the vote count in the Presidential contest, it is not reasonable to infer, absent some other relevant allegation, that they also manipulated the vote count in other contests.

Second, as to the Presidential contest specifically, Plaintiffs have not alleged sufficient facts to infer that the alleged manipulation "altered the outcome of the election" to the detriment of their candidate of choice (or candidates of choice, if they did not all vote for the same candidate). They have alleged no facts showing that their candidate(s) of choice would have won Pennsylvania absent any vote manipulation, or that the unknown actor "created" enough votes in these three counties' high-turnout precincts to cause the Republican candidate to win Pennsylvania's electoral college votes. If the Republican candidate would have won regardless, and Plaintiffs' preferred candidate(s) of choice would have lost regardless, then there is no injury-in-fact to the Plaintiffs. *Cf.* *Bognet v. Sec'y Commw. of Pa.*, 980 F.3d 336, 351-52 (3d Cir. 2020) (holding that for a candidate "to have standing to enjoin the counting of ballots arriving after Election Day, such votes

would have to be sufficient in number to change of the outcome of the election to [the candidate's] detriment"), *vacated as moot by Bognet v. Degraffenreid*, 141 S. Ct. 2508 (2021); *Walsh v. Luzerne Cnty.*, No. 4:24-cv-01878, 2025 WL 1222745, *6 (M.D. Pa. Apr. 28, 2025).

Third, Plaintiffs allege the same relationship between voter turnout and vote share "across all Pennsylvania counties that contain a large number of precincts above and below 60% turnout." Prop. SAC, Dkt. No. 45-1, ¶ 94. This severely undercuts Plaintiffs' argument. If the statistical results on which Plaintiffs rely do demonstrate vote manipulation, then the same or an additional unknown actor would necessarily have had to manipulate the vote across those additional Pennsylvania precincts and counties, with as many as five different election vendors and eighteen voting systems, to create those results.[4] This is not a reasonable inference. And if Plaintiffs' statistical analysis is not reasonable or plausible when applied statewide, then there is no reason that it should be reasonable or plausible when applied only to the three Defendant Counties. Either the analysis is reliable and indicative of vote manipulation, or it is not. Determining plausibility does not require setting aside common sense. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.").

2.  Individual Plaintiffs do not adequately allege causation as to Count I.

To establish standing, "there must be a causal connection between the injury and the

---

[4] Plaintiffs do not state how many Pennsylvania counties contain "a large number of precincts" above and below 60% turnout, so Secretary Schmidt cannot pinpoint exactly how many vendors and voting systems would allegedly be involved. A map of voting system vendors by county and a table of approved voting systems are available on the Pennsylvania Department of State's website. *See* Ex. 4, Pa. Dep't of State, "PA Voting System Vendor Map," https://pennmap.maps.arcgis.com/apps/mapviewer/index.html?webmap=95b001bd78ed46d2b76 ad480da82e83d (also accessible through the link in Exhibit 1, click the option for "View a map of the voting systems used by each county") (last visited March 30, 3026); Ex. 1 (approved voting systems listed in table labeled "Certified Voting Systems – Certified after January 1, 2018").

conduct complained of—the injury has to be 'fairly . . . traceable to the challenged action of the defendant, and not . . . the result of the independent action of some third party not before the court.'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (cleaned up). Plaintiffs allege that the election systems in the Defendant Counties were "exploited" and that their "counting and reporting functions . . . were manipulated to the advantage of Republican candidates opposed by Plaintiffs." Prop. SAC, Dkt. No. 45-1 ¶ 41. Plaintiffs do not, however, allege that the Defendants manipulated the election systems. Instead, Plaintiffs refer to the alleged manipulation in the passive tense. *See id.*; *id.* ¶ 40 ("the reported vote results of the 2024 election were manipulated"). When contrasting this with the allegations relevant to Counts II through IV, in which Plaintiffs directly accuse the Defendants of specific action or inaction, *see, e.g.*, *id.* ¶¶ 42-67, 76-78, the obvious inference is that Plaintiffs do not know who allegedly manipulated the election systems.

The paragraphs in Count I further reinforce that Plaintiffs do not know who is responsible for the alleged manipulation, or how they did it. *Id.* ¶ 101 ("Unless the cause of the discrepancies in counting is identified and corrected . . . ."); *id.* ¶ 104 ("If the cause of the miscounting is not identified and corrected . . . ."). Indeed, the requested relief in Count I makes clear that Plaintiffs do not know what allegedly happened, and they are using this litigation as a fishing expedition to try to find out. *See id.* Count I at (c) (requesting that Secretary Schmidt be required "to determine the cause of the discrepancies between votes cast and votes reported"); *id.* Count I at (d) (requesting a hand count of ballots to "demonstrate the accuracy of the equipment used when compared to the tabulation created by the voting apparatus"); *id.* Count I at (e) (requesting that Defendant BOEs be required to "determine the cause of the discrepancies between votes actually cast and votes reported"); *id.* Count I at (f) (requesting that Defendant BOEs be required to "explain the mismatches and disappearances of ballots in the 2024 presidential election").

Secretary Schmidt and the other Defendants are not accused of the alleged voting system manipulation relevant to Count I. Plaintiffs therefore have not sufficiently alleged causation as to that Count. And because Plaintiffs apparently do not know who is allegedly responsible or what allegedly happened, amendment would be futile. *See, e.g.*, *Reader v. Blair Cnty., Pa.*, No. 3:22-cv-140, 2025 WL 4354749, *25 (W.D. Pa. Dec. 19, 2025)* (amendment was futile, in part because "it appears to be a lack of supporting facts, rather than merely a lack of supporting factual allegations, that is Plaintiff's primary issue"), *adopted as Op. of the Court by* *Reader v. Blair Cnty., Pa.*, No. 3:22-cv-140, 2026 WL 512243 (W.D. Pa. Feb. 24, 2026).

> 3. Individual Plaintiffs' alleged injury-in-fact cannot be redressed by the Court.

"Redressability examines whether the relief sought, if granted by the court, will likely alleviate the particularized injury alleged by the plaintiff." *Warnock v. Nat'l Football League*, 356 F. Supp. 2d 535, 539 (W.D. Pa. 2005) (citing *Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.*, 454 U.S. 464, 472 (1982)*. Even if Plaintiffs' 2024 votes were "not counted fairly and accurately . . . to the unfair advantage of the candidates [they] opposed," the Court cannot redress that injury. The election was nearly a year-and-a-half ago, the results have been certified, and the candidates have been in office for well over a year.

Moreover, Plaintiffs do not allege they are suffering ongoing, cognizable harm from the 2024 election that could be remedied by a court order today. Instead, they seek declaratory judgment as to the 2024 election—which will do nothing to address the harm actually alleged—and then ask the Court to implement a variety of injunctive relief to prevent the same alleged harm from occurring again in 2026. Prop. SAC., Dkt. No. 45-1, at 29-34. But "with no injury-in-fact to begin with . . . any fear of future injury in the 2026 election [becomes] both conjectural and not ripe." *Walsh v. Luzerne County*, No. 4:24-CV-01878, 2025 WL 1222745, *6 (M.D. Pa. Apr. 28,

2025). Plaintiffs assume that the same or other unknown actor will take advantage of the same or other alleged security vulnerabilities on the same or other election systems then in use, and that the Secretary of the Commonwealth and the relevant County BOEs will take the same or other actions that will again lead to allegedly inaccurate vote totals. The idea that the alleged harm will occur again in 2026 is purely speculative, and, so too is the idea that the injury could be redressed by a favorable decision. *See, e.g.*, *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

4.   Election Truth Alliance lacks standing.

ETA lacks associational standing, which requires that "(1) the organization's members must have standing on their own; [sic] (2) the interests the organization seeks to protect are germane to its purpose, and (3) neither the claim asserted nor the relief requested requires individual participation by its members." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 279 (3d Cir. 2014). ETA fails at both the first and third steps.

As to the first step, ETA alleges that "[a]s voters," its members "share an interest in making sure their votes are accurately tabulated." Prop. SAC, Dkt. No. 45-1 ¶ 1. This is no more than a generalized grievance incapable of creating standing. When an "asserted harm is a 'generalized grievance' shared in substantially equal measure by all or a large class of citizens, that harm alone normally does not warrant exercise of jurisdiction." *Warth v. Seldin*, 422 U.S. 490, 499 (1975). Accordingly, courts routinely dismiss cases with allegations similar to ETA's. *See, e.g.*, *Bognet v. Sec'y Commw. of Pa.*, 980 F.3d 336, 352 (3d Cir. 2020) (dismissing claim that votes were "diluted" by certain mailed ballots), *vacated as moot by Bognet v. Degraffenreid*, 141 S. Ct. 2508 (2021); *Wood v. Raffensperger*, 981 F.3d 1307, 1314-15 (11th Cir. 2020) (dismissing claim based on interest that only lawful ballots should be counted); *Forman v. Schmidt*, No. 2:24-CV-266, 2025 WL 1207739, *2 (W.D. Pa. Apr. 25, 2025) (dismissing claim that plaintiff had to vote on "illegal"

voting machines), *aff'd per curiam* No. 25-2013, 2026 WL 810648 (3d Cir. Mar. 24, 2026); *Samuel v. V.I. Joint Bd. of Elections*, Civ. No. 2012-0094, 2013 WL 842946, *4-5 (D.V.I. Mar. 7, 2013) (dismissing claims regarding alleged failure to use non-certified voting machine).

ETA also alleges that its members "will suffer a deprivation of Equal Protection to the unfair advantage of candidates they oppose if elections were not properly administered." Prop. Sec. Am. Compl., Dkt. No. 45-1 ¶ 1. But this is not an allegation that its members have in fact suffered such a deprivation, only that they will so suffer at some point in the future. Thus the allegation is not actual or imminent, but rather is conjectural or hypothethical. *See, e.g.*, *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

As to the third step, ETA has not alleged that it has any members it can represent in this litigation. All eight named Plaintiffs aver that they are members of ETA; ETA therefore cannot represent them, because as named Plaintiffs their participation in the case is required. ETA generally avers that it has members who are registered voters in Pennsylvania, but it does not state whether it has any members (other than the named plaintiffs) who are registered voters in Pennsylvania, let alone who voted in the Defendant Counties during the 2024 General Election for candidates who were defeated.

ETA also lacks organizational standing in its own right. ETA alleges that its mission "is to protect and enhance the integrity of elections" and that it and its members have "expended substantial resources in Pennsylvania to investigate, respond to, and publicize election irregularities." Prop. SAC, Dkt. No. 45-1 ¶ 1. This vague statement is insufficient to allege that ETA has sustained an injury in fact, as opposed to having tried to "spend its way into standing." *See* *All. for Hippocratic Med.*, 602 U.S. at 394; *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 280 (3d Cir. 2014) ("[W]e have also held that a plaintiff by making expenditures to advance

14

litigation does not suffer sufficient damage to support standing.”). Without an injury in fact, a "mere interest in a problem, no matter how longstanding the interest and no matter how qualified the organization is in evaluating the problem, is not sufficient by itself to render the organization adversely affected or aggrieved." *Blunt, 767 F.3d at 279* (internal quotations omitted).

Finally, to the extent that ETA alleges the same injury, causation, and redressability as the individual Plaintiffs, either on its own behalf or on behalf of its members, its claims also fail for the reasons discussed in the previous subsections.

### B. Plaintiffs' Challenge to 2024 Election is Moot.

Even if Plaintiffs had standing to contest injuries based on the 2024 General Election, their attempt to do so now is moot, because "'the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.'" *United Steel Paper & Forestry Rubber Mfg. Allied Indus. & Serv. Workers Int'l Union AFL-CIO-CLC v. Gov't of V.I.,* 842 F.3d 201, 208 (3d Cir. 2016) (quoting *Cnty. of Los Angeles v. Davis,* 440 U.S. 625, 631 (1979)).

Plaintiffs allege throughout their proposed SAC that their 2024 ballots were miscounted, their votes were not counted for the candidate they supported, the counting and reporting functions of the election systems were manipulated, etc. Plaintiffs also request relief that is squarely aimed at the 2024 General Election results, including determining the cause of discrepances, demonstrating the accuracy of the voting systems, conducting hand counts, and determining the accuracy of precinct vote counts and reports. If Plaintiffs believed that ballots were miscounted or that there were discrepancies, and if they wanted a proper examination of the ballots, they could have filed a petition for recount under the Election Code, 25 P.S. §§ 3154(e), 3261-3263, or an election contest pursuant to 25 P.S. §§ 3291, 3351. The time for doing so has long passed.[5]

---

[5] A petition for recount must be made to the County BOE prior to the completion of the

Relatedly with respect to justiciability concerns, the relief Plaintiffs seek as to the 2024 General Election is no more than a request for an advisory opinion and therefore "not properly suited for resolution by" the courts. *Rucho v. Common Cause*, 588 U.S.684, 691 (2019); *see also Bognet v. Degraffenreid*, 141 S.Ct. 2508 (2021) (directing appellate court to dismiss challenge to 2020 Presidential Election as moot); *Ioannidis v. Wolf*, No. 635 M.D. 2020, 260 A.3d 1091, 2021 WL 2834611, at *6 (Pa. Commw. Ct. July 8, 2021), *aff'd per curiam* No. 56 MAP 2021, 270 A.3d 1110 (Pa. Feb. 23, 2022) (dismissing petition challenging results of certified election as moot where petitioner "utterly failed to avail himself" of Election Code's statutory remedies).

### C.  The Eleventh Amendment Bars Any Claims Against Secretary Schmidt.

It has been long established that the Eleventh Amendment of the United States Constitution bars all private lawsuits against non-consenting states in federal court. *Karns v. Shanahan*, 879 F.3d 504, 512 (3d Cir. 2018) (citing *Hans v. Louisiana*, 134 U.S. 1 (1890)). Eleventh Amendment immunity "is designed to preserve the delicate and 'proper balance between the supremacy of federal law and the separate sovereignty of the States.'" Id. (quoting *Alden v. Maine*, 527 U.S. 706, 757 (1999)). This immunity bars suits against the states and state agencies "regardless of the relief sought." *P.R. Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993). A claim against a state government official, in his or her official capacity, is "no different from a suit against the State itself" because it "is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

A plaintiff can overcome Eleventh Amendment immunity in three ways. First, a state may

---

computation of all returns. 25 P.S. § 3154(e). A petition to open a ballot box or to recanvass must be made no later than five days after completion of the computational canvassing of all returns by the County BOE. 25 P.S. § 3263. An election contest for all offices but Governor and Lieutenant Governor must be filed within twenty days of election day. 25 P.S.§ 3456.

consent to be sued. *Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 310 (3d Cir. 2020). Pennsylvania, however, has generally withheld its consent to be sued. *Lavia v. Pa. Dep't of Corr.*, 224 F.3d 190, 195 (3d Cir. 2000) (citing 42 Pa. C.S. § 8521(b)). There is no colorable argument here that Pennsylvania has consented to suit.

Second, Congress can, as part of the statute enabling a particular cause of action in certain circumstances, abrogate the states' immunity pursuant to Section 5 of the Fourteenth Amendment. *Downey*, 968 F.3d at 310. Any such abrogation must be done via a clear legislative statement from Congress and pursuant to a valid exercise of Congress's power over the states. *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 55, 58 (1996). However, Section 1983—the vehicle through which all of Plaintiffs' claims here are brought—does not abrogate state officials' Eleventh Amendment immunity, because "states and state officials sued in official capacities are not 'persons' capable of being sued for civil rights violations under § 1983." *Robinson v. Pennsylvania Dep't of Corr.*, 851 Fed. Appx. 289, 291 (3d Cir. 2021) (citing *Will*, 491 U.S. at 71).

Third, under the *Ex parte Young* doctrine, a plaintiff can pursue certain kinds of forward-looking injunctive relief against state officials, notwithstanding Eleventh Amendment immunity, to stop a current violation of federal law. *Will*, 491 U.S. at 71 n.10. This judicially-created doctrine provides a "narrow exception" to Eleventh Amendment immunity. *Seminole Tribe*, 517 U.S. at 76. A claim under the *Ex parte Young* exception allows only prospective declaratory or injunctive relief addressing an ongoing violation of federal law. *MCI Telecomm. Corp. v. Bell Atl. Pa.*, 271 F.3d 491, 506 (3d Cir. 2001). It does not apply to suits for retroactive relief, *Edelman v. Jordan*, 415 U.S. 651, 678 (1974), suits based in state law, *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984), or "where Congress has prescribed a detailed remedial scheme for the enforcement against a State" of the claimed federal right, *Seminole Tribe*, 517 U.S. at 74.

17

Here, Plaintiffs' claims against Secretary Schmidt cannot fit into the *Ex parte Young* exception because the Complaint does not seek forward-looking relief to address a current and ongoing violation of any Plaintiff's constitutional rights. The Complaint is, at its core, backward-looking—it raises concerns about what Plaintiffs (falsely) believed happened in the 2024 election. But no Plaintiff is suffering ongoing, cognizable harm from the 2024 election that could be remedied by a court order today. In addition to failing to allege any ongoing harms, the Complaint's requests for relief are fundamentally backward-looking. Specifically, Plaintiffs seek a recount of 2024 votes and injunctive relief related to the results of that recount. *See* Prop. Sec. Am. Compl., Dkt. No. 45-1 at 29-34. Needless to say, vote counting for the 2024 Election is over. Neither the facts alleged nor relief sought concern ongoing conduct.[6]

Plaintiffs attempt to plead around immunity by speculating that a hand recount of 2024 ballots *might* reveal an issue, and that issue *might* reoccur in future elections. For example, they aver that they "requested [Secretary Schmidt] to direct a hand count of ballots," which they believe "would have demonstrated that the anomalies . . . resulted from improper programming or manipulation of the voting and counting machines." *Id.* ¶ 99. And they further contend that "when the cause of the discrepancies is identified, [Secretary] Schmidt can (and should be required to) . . . ensure that the voting machines . . . comply with the requirements of [federal law]." *Id.* ¶ 101. But speculation about possible ongoing harm is not sufficient for purposes of the *Ex parte Young* exception to immunity. *See Rothermel v. Dauphin Cnty.*, No. 1:16-cv-1669, 2017 WL 4347522, at

---

[6] Plaintiffs seek an order "to ensure compliance with the statutes and laws regarding vote counting in all counties in future elections," *see* Proposed SAC at 30, and for orders to "ensure all vote counts and reports [in the relevant counties] will be accurate in the future." *Id.* at 31, 33, 34. Aside from being untethered to any alleged ongoing conduct, this vague request for injunctive relief is inappropriate and should be denied. *Louis W. Epstein Family P'ship v. Kmart Corp.*, 13 F.3d 762, 771 (3d Cir. 1994) (noting that "[b]road, non-specific language that merely enjoins a party to obey the law" does not comply with Rule 65).

*6 (M.D. Pa. Sept. 29, 2017) (allegation "postulating that 'some type of breakdown must have occurred'" to allow prior harm did not "articulate an ongoing constitutional harm").

Plaintiffs have attempted to end-run around Eleventh Amendment immunity before by alleging that past harm will be repeated in the future, but courts have consistently rejected it. For example, in *Haagensen v. Pennsylvania State Police*, a plaintiff sought an injunction against a harassment statute that had been used to prosecute her previously and, she alleged, would be used against her again in violation of her First Amendment rights. No. 08-cv-727, 2009 WL 3834007 (W.D. Pa. Oct. 22, 2009), *report and recommendation adopted as modified*, 2009 WL 3834004 (W.D. Pa. Nov. 16, 2009), *aff'd*, 490 Fed. Appx. 447 (3d Cir. 2012). Dismissing on Eleventh Amendment immunity grounds, the Court held that the plaintiff failed to sufficiently aver that she faced an ongoing threat of prosecution of First Amendment protected conduct and thus there was no "ongoing practice for the Court to enjoin." *Haagensen*, 2009 WL 3834007, at *14-15. More recently, in *Diamond v. Pennsylvania State Education Association*, the Court dismissed a constitutional challenge to a statute requiring teachers to pay union dues in light of new Supreme Court case law, holding that the challengers had "not alleged that Commonwealth Defendants have enforced or continue to enforce [the challenged statute] in an unconstitutional manner." 399 F. Supp. 3d 361, 379 (W.D. Pa. 2019), *aff'd* 972 F.3d 262 (3d Cir. 2020). The consistent thread in these cases is that the requirement that harm is ongoing should be read strictly; it requires more than allegations of past harm combined with a belief of future similar harm.[7] So too here, although Plaintiffs allege past problems in the 2024 election and request relief to "avoid a repetition" in the

---

[7] Further, stopping another end-run around this end-run, a plaintiff cannot revive a challenge to state conduct that is no longer ongoing by using the "capable of repetition yet evading review" exception to mootness. *See Surina v. S. River Bd. of Educ.*, No. 20-2804, 2022 WL 264464, at *3 (3d Cir. Jan. 27, 2022).

2026 election, they have not sufficiently averred that they face an ongoing threat that the same alleged problems will repeat themselves absent relief.

Because of longstanding constitutional limits, federal courts can only enjoin ongoing state conduct that is actively interfering with a plaintiff's rights. Plaintiffs have presented no such ongoing conduct here, so this Court lacks jurisdiction over their complaint against state actors.

### D.  Plaintiffs fail to state a claim for which relief can be granted.

Secretary Schmidt's brief of February 23, 2026, Dkt. No. 28, in support of his pending motion to dismiss the (first) Amended Complaint, Dkt. No. 27, argues that Plaintiffs have failed to state a claim under the Civil Rights Act of 1964, the Fifth and Fourteenth Amendments to the United States Constitution, the Help America Vote Act, the Pennsylvania Election Code, and 42 U.S.C. § 1983 ("Section 1983"). Plaintiffs have since clarified that they bring only a claim under the Fifth and Fourteenth Amendments, via Section 1983. Pl. Br. Opp. Mot. to Dismiss Am. Compl., Dkt. No. 44 at 2 ("Plaintiffs seek protection from future violations of their right to have their vote counted; they do not seek relief under any particular Act other than the Civil Rights Act of 1871, 42 U.S.C. § 1983 [sic] based on the violation of their Constitutional Right to the Equal Protection of the Laws guaranteed by the Fifth and Fourteenth Amendments."). *See also* Prop. SAC, Dkt. No. 45-1, Counts I – IV (including only 42 U.S.C. § 1983 and the Fifth and Fourteenth Amendments in the complaint's count headings).  Accordingly, Secretary Schmidt now addresses only Equal Protection and Section 1983 for purposes of his opposition to amendment.

1. Plaintiffs fail to state an Equal Protection claim under the Fifth and Fourteenth Amendments to the United States Constitution.

The Fifth and Fourteenth Amendments' equal protection obligations are treated as indistinguishable. *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 217 (1995). "[I]n any equal protection case," plaintiffs must "prove the existence of purposeful discrimination" and

"demonstrate that they received different treatment from that received by other individuals similarly situated." *Batson v. Kentucky*, 476 U.S. 79, 93 (1986); *Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 196 (3d Cir. 2009). "To meet the *prima facie* elements, [a p]laintiff must allege that he was: (1) a member of a protected class; (2) similarly situated to members of an unprotected class; and (3) treated differently from members of the unprotected class." *Green v. Chester Upland Sch. Dist.*, 89 F. Supp. 3d 682, 693 (E.D. Pa. 2015) (citing *Oliveira v. Twp. Of Irvington*, 41 Fed. Appx. 555, 559 (3d Cir. 2002); *Keenan v. City of Phila.*, 983 F.2d 459, 465 (3d Cir. 1992)), *aff'd sub nom. A.G. v. Chester Upland Sch. Dist.*, 655 F. App'x 125 (3d Cir. 2016).

Alternatively, a "class of one" theory is available where a plaintiff does not allege membership in a class or group. *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). The plaintiff must at least allege that "(1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006). *See also Tatel v. Mt. Lebanon Sch. Dist.*, 637 F. Supp. 3d 295, 330-31 (2022) (applying the same elements in a "class of one" case involving a fundamental right).

Plaintiffs' proposed SAC fails to allege a claim under either theory. As to a *prima facie* claim, none of the Plaintiffs allege that they are members of a protected class, that they are similarly situated to members of an unprotected class, and that they are treated differently from members of the unprotected class. Nor does the proposed SAC contain allegations that would allow this Court to infer any of the same, as even if all allegations in it were true, residency in a particular state or county does not create membership in a protected class. Neither does voting for a particular candidate create membership in a protected class.

Plaintiffs also fail to adequately plead the "class of one" theory, because they do not allege that the Defendants treated them differently from others similarly situated, let alone intentionally and without rational basis. Taking Count I first, *id.* ¶¶ 97-107, it appears that Plaintiffs intend for the "others similarly situated" to be voters who live in lower turnout precincts, and that this Court is thus to infer that all Plaintiffs live in higher turnout precincts. *See, e.g.*, *id.* ¶ 104 ("Voters in precincts with lower voter turnout will be treated more favorably than Plaintiffs in that their votes will accurately be counted and reported."). But Plaintiffs do not allege that the Allegheny, Cambria, and Erie County BOEs treated them differently than voters in lower turnout precincts, let alone that they did so intentionally and without rational basis. They do not allege, for example, that each of the three County BOEs intentionally used voting systems that added false votes for certain candidates and only in certain precincts, or that they intentionally placed specific compromised machines only in certain precincts. Nor do Plaintiffs allege any action or inaction by Secretary Schmidt that treated voters in different precincts differently.

At best, Plaintiffs' voting systems allegations boil down to the idea that some unnamed, shadowy actor took advantage of alleged software vulnerabilities to corrupt the ballot count in a way that affected only certain precincts and to the benefit of specific candidates, and that the various Defendants failed to stop that from happening or to identify after the fact that it had happened. Again, even taking Plaintiffs' theory as true, Plaintiffs allege that an unnamed actor treated them differently, but they do not allege that any of the Defendants treated them differently than voters in other precincts, that they did so intentionally, or that there was no rational basis for such treatment. The closest Plaintiffs get is their complaint that Secretary Schmidt did not, "under the authority vested in him by PA Election Code § 201(e.1)," direct a hand count in their precincts. Prop. SAC, Dkt. No. 45-1 ¶ 99. But this does not constitute an allegation of unequal treatment, as

22

there is no allegation that Secretary Schmidt directed a hand count of ballots in any other precincts. Moreover, as previously explained in Secretary Schmidt's brief in support of his motion to dismiss the (first) amended complaint, Dkt. No. 28 at 22, Section 201 of the PA Election Code neither mentions nor requires hand counts. Accordingly, Secretary Schmidt had a rational basis for declining to exercise an authority not granted to him by statute.

Similarly, Plaintiffs complain that Secretary Schmidt "refus[ed] to examine any ballots boxes, to order the County [BOEs] to submit additional reports, or to order from the County [BOEs] their reports of system errors and difficulties." Prop. SAC, Dkt. No. 45-1 ¶ 102. As explained in Secretary Schmidt's brief in support of his motion to dismiss the (first) amended complaint, Dkt. No. 28 at 22-23, the Election Code does not mention or require hand counts, so a failure to conduct one cannot be said to lack a rational basis. As for the reports, the duty that Section 201(e) confers on the Secretary to receive information from counties on voting system errors or difficulties is not the same as a duty to demand such reports. And Section 201(e.1)'s duty to receive additional reports "as [the Secretary] may deem necessary" is permissive, not mandatory. *See, e.g.*, *U.S. v. Geiser*, 527 F.3d 288, 294 (3d Cir. 2008) ("[O]ur starting point is 'the ordinary meaning of the words used.'"); *A. Scott Enters., Inc. v. City of Allentown*, 142 A.3d 779, 787-88 (Pa. 2016) (holding that use of the word "may" is generally permissive, except where the "ends of justice' or "constitutional requirements" demand otherwise). Neither the "ends of justice" nor "constitutional requirements" justifying finding that the Fifth and Fourteenth Amendments impose a duty on the Secretary to require special reports upon receiving vague, unsubstantiated, and untimely allegations of "statistical anomalies" caused by unspecified actors.

As to Counts II through IV, Plaintiffs make a variety of allegations throughout their proposed Complaint pertaining to voting system checks and security and to ballot counts, but at

no point therein do they plausibly allege that any of the Defendants treated them differently from other voters whenever undertaking the alleged actions, that Defendants intended to treat them differently, or that there was no rational basis for an alleged difference in treatment. For example, the section titled "Cambria County Certification and Machine Issues" makes a number of allegations about failure to test scanners, unscannable ballots, voters being turned away at the polls, lack of chain of custody, and a failure to record certain information. Prop. SAC, Dkt. No. 45-1 ¶¶ 42-51. The section then ends by alleging that this "resulted in the miscounting of the votes of the Plaintiffs by inaccurately reporting their votes and by permitting the introduction and counting of nonexistent votes offsetting Plaintiffs' votes to the unfair advantage of candidates Plaintiffs opposed." *Id.* ¶ 52. But at no point do Plaintiffs allege any facts that would support an inference that the Cambria County BOE or its poll workers took any action that affected only Plaintiffs and not other voters, or that affected only high-turnout precincts but not low-turnout precincts. Instead, the only inference to be drawn here (however implausibly) is that the Cambria County BOE took actions that affected voters throughout the county, which in turn enabled the unnamed nefarious actor to introduce false counts into the system without notice. So too for the allegations relevant to Counts II through IV. *See id.* ¶¶ 53-67 (alleging discrepancies in Cambria County's ballot count); *id.* ¶¶ 76-78 (alleging discrepancies in Allegheny County's mail-in ballot totals); *id.* ¶¶ 108-117 (Count II, summarizing allegations against Cambria County Board of Elections); *id.* ¶¶ 118-125 (Count III, summarizing allegations against Erie County Board of Elections); *id.* ¶¶ 126-130 (Count IV, summarizing allegations against Allegheny County BOE).

 2. Plaintiffs fail to state a claim under Section 1983.

Section 1983 does not provide any substantive rights to individuals. Rather, it authorizes a person to file a private cause of action against those acting under color of state law for deprivation

of rights protected by a federal statute or the U.S. Constitution. *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

"Garden variety election irregularities" are not actionable under Section 1983. *See Acosta v. Democratic City Comm.*, 288 F.Supp.3d 597, 643-44 (E.D. Pa. 2018) (collecting cases). Only intentional acts or "willful conduct [that] 'undermines the organic process by which candidates are elected'" can be held to violate Section 1983. *Id.* at 644. Plaintiffs claim that Secretary Schmidt's refusal to do certain acts, such as examining ballot boxes and ordering additional reports, deprived them of their right to Equal Protection guaranteed by the Fifth and the Fourteenth Amendments of the U.S. Constitution. Prop. SAC, Dkt. No. 45-1 ¶¶ 102-103. But as explained *supra* at 23, Secretary Schmidt only stands accused of failing to take actions that either the Pennsylvania Election Code does not empower him to take or that it leaves to his discretion. This does not rise to the level of deprivation of rights. And none of the Defendants, including Secretary Schmidt, are plausibly alleged to have treated Plaintiffs differently than anyone else, let alone to have done so intentionally or willfully.

## V.    CONCLUSION

Plaintiffs' proposed second amended complaint does not fix any of the problems raised in Secretary Schmidt's pending motion to dismiss the amended complaint. Plaintiffs fail to adequately allege standing or to state a viable Equal Protection claim, their claims as to the 2024 election are moot, and Secretary Schmidt has immunity. Accordingly, amendment is futile, and this court should deny the motion for leave.

Respectfully submitted,

Date:  March 30, 2026

*/s/ Michelle Rupp*
Kathleen A. Mullen (Pa. 84604)
Executive Deputy Chief Counsel
Michelle Rupp (Pa. 337463)
Assistant Counsel
Pennsylvania Department of State
306 North Office Building
Harrisburg, PA 17120
Tel: 717-783-0736
Fax: 717-214-9899
Email: kamullen@pa.gov
        mirupp@pa.gov

26

## CERTIFICATE OF SERVICE

I hereby certify that on March 30, 2026, I caused the foregoing document to be filed with the United States District Court for the Western District of Pennsylvania via the Court's CM/ECF system, which will provide electronic notice to all counsel and parties of record.

/s/ Michelle Rupp
Michelle Rupp
