IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ELECTION TRUTH ALLIANCE,** *et al.,* | : | **ELECTRONICALLY FILED** |
| **Plaintiffs,** | : | **CIVIL NO. 1:25-cv-00329** |
| | : | |
| **v.** | : | **HONORABLE SUSAN PARADISE** |
| | : | **BAXTER** |
| **AL SCHMIDT, in his official capacity as** | : | |
| **Secretary of Commonwealth of Pennsylvania, et** | : | |
| **al.,** | : | |
| **Defendants.** | : | |

**RESPONSE IN OPPOSITION TO MOTION FOR LEAVE TO FILE SECOND
AMENDED COMPLAINT**

AND NOW comes Defendant, Allegheny County Board of Elections which files this

Response in Opposition to Plaintiffs' Motion for Leave to File a Second Amended Complaint.

Because the Proposed Second Amended Complaint fails to remedy the fatal flaws in Plaintiffs

prior complaints and would be unable to survive a motion to dismiss, amendment would be futile

and the motion should be denied. Moreover, allowing plaintiffs to repeatedly refile new amended

complaints that do not address the deficiencies present in their prior complaints would not be in

the interest of judicial economy and would divert the county's resources away from important

tasks such as preparing to administer this years' elections.

I.      **BACKGROUND**

    **A.  Case History**

In their original Complaint, Plaintiffs implied that the Allegheny County Board of

Elections (hereafter "Allegheny County" or the "County") used ES&S software versions 6.4.0.0

and 6.5.0.0 on its election equipment for the 2024 general election and that the County election

1

results were anomalous based on various unexplained metrics. At the Court mandated conference, the undersigned advised Plaintiffs' counsel that Allegheny County did not use this software in the 2024 Presidential Election. Allegheny County in its brief in support of its prior motion to dismiss, Dkt. No. 15, argued that the original Complaint failed to establish Plaintiffs' Article III standing to pursue claims against Allegheny County, failed to plausibly allege claims sufficient to show that Plaintiffs were entitled to relief, as required by Rule 8, and failed to allege sufficient facts to state a claim under 42 U.S.C § 1983 or 52 U.S.C § 10101(a).

In lieu of defending the original complaint, Plaintiffs filed an Amended Complaint, pursuant to Federal Rule of Civil Procedure 15(a)(1)(B). The Amended Complaint doubled down on the assertion that Allegheny County installed the ES&S software updates 6.4.0.0 and 6.5.0.0 and added additional conclusory allegations. Plaintiffs also reframed the requested relief as redressing a future risk but did not remedy the fundamental flaws in the original Complaint.

Counsel for the parties met to confer regarding the amended complaint and the undersigned again advised Plaintiffs' counsel that in addition to the deficiencies in the legal claims, Plaintiffs' factual averments regarding the software versions continued to be factually erroneous, and that the ES&S 6.4.0.0. and 6.5.0.0 software versions were not certified by the Department of State. The meeting did not result in Plaintiffs requesting further amendment as to any factual averments or claims.

Allegheny County and Secretary Schmidt then filed their respective Motions to Dismiss the Amended Complaint, again asserting that Plaintiffs failed to demonstrate Article III standing, to plausibly allege claims sufficient to show that they are entitled to relief, and to allege sufficient facts to state a claim under 42 U.S.C § 1983 or 52 U.S.C § 10101(a).

Plaintiffs filed a short Response to the Motions to Dismiss in which they referenced a

Second Amended Complaint, Dkt. 44. Plaintiffs then filed a Motion requesting leave to file a Second Amended Complaint. Dkt. 45.

### B.  The Proposed Second Amended Complaint

Plaintiffs' Proposed Second Amended Complaint includes all the same flaws as their prior complaints, but it does include a few changes. To start, Plaintiffs change their allegations as to each individual Plaintiff to add the conclusory averment, "Plaintiff[]'s vote was not counted fairly and accurately as more fully set forth in this Complaint, to the unfair advantage of candidates she opposed." Dkt. 45-1, ¶¶2-9. The facts subsequently alleged do not support this audacious assertion.

Next, having been presented with myriad facts of public record readily available from the Pennsylvania Department of State's website, Plaintiffs have finally abandoned their assertion that Allegheny County installed ES&S software updates 6.4.0.0 and 6.5.0.0. Instead, they now plead that Allegheny County used ES&S software version 6.3.0.0. Dkt. 45-1, ¶26. Plaintiffs continue to plead that they believe that the voting machines operated by defendant counties contained cellular modems. Dkt. 26, ¶ 23; Dkt. 45-1, ¶ 22. But Plaintiffs have added new allegations that ES&S version 6.3.0.0 is vulnerable to manipulation, making an oblique reference to an investigation in New York. Dkt. 45-1, ¶26.

Plaintiffs allege that Pennsylvania's Use Directive has a binding condition requiring removal or disabling of wireless modems in election equipment before delivery to the counties, seemingly referencing a directive attached to Secretary Schmidt's and Allegheny County's motions to dismiss. Dkt. 45-1, ¶29. They further allege that a modem-less version of ES&S equipment is certified by EAC but that a modem-equipped version is not certified and has never undergone security testing in an EAC approved lab. Dkt. 45-1, ¶¶30–33. Plaintiffs contend that the Department of State has not examined the County's machines to confirm there are no modems.

3

Dkt. 45-1, ¶34. They allege a report that thousands of machines are "in the wild" with functioning modems, but do not provide any basis to believe these machines are in Pennsylvania, let alone in Allegheny County. *Id.* Plaintiffs then aver that, in two separate Michigan counties, bad actors removed tabulators and tampered with them in a hotel and breached equipment and copied it. Dkt. 45-1, ¶¶35, 36. They allege in a legal conclusion that such breaches and vulnerabilities lend plausibility to their contention that "reported vote results of the 2024 election were manipulated, causing Plaintiffs' votes to be miscounted." Dkt. 45-1, ¶40. And they assert the pattern of reported votes proves manipulation. Dkt. 45-1, ¶41.

Plaintiffs' allegations specifically addressing vote counting and reporting in Allegheny County, Paragraphs 76–83 of the Proposed Second Amended Complaint, are nearly identical to paragraphs 72–79 of the First Amended Complaint. *Compare* Dkt 45-1 *with* Dkt. 26.[1] The only changes are: (1) a clarification in paragraph 78 that Plaintiffs believe the difference between the number of "other party and unaffiliated" voters and the number of "other party and unaffiliated" votes somehow demonstrates an unfair advantage for candidates Plaintiffs opposed, and (2) a clarification in paragraph 81 that Plaintiffs believe the alleged manipulation affected Plaintiffs votes in specific way, i.e., by "failing to count them or by counting them for a candidate for whom [Plaintiffs] did not intend to vote."

Plaintiffs state in their Response in Opposition to the Motions to Dismiss that they now pursue relief only under Section 1983 on an equal protection theory. Dkt. 44 at 2. Plaintiffs have updated the headings for their counts accordingly, but the counts still appear to allege violations

---

[1] Despite the Defendants' stating in briefs in support of their respective and successive motions to dismiss that the polls close at **8PM** and results not being posted until after that time, Plaintiffs persist in pleading 7PM. Dkt. 45-1, ¶76.

of other statutes including the Help America Vote Act, Dkt 45-1, ¶101–103, and 52 U.S.C. §10101, Dkt 45-1, ¶130.[2]

## II.    STANDARD OF REVIEW

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely grant leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Under Rule 15(a), the decision to grant or deny leave to amend lies within the discretion of the court. *Foman v. Davis,* 371 U.S. 178, 182 (1962); *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 272 (3d Cir. 2001); *In re Burlington Coat Factory Secs. Litig.,* 114 F.3d 1410, 1434 (3d Cir.1997). Courts in the Third Circuit should freely grant leave to amend unless the request for leave involves factors including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *See Foman,* 371 U.S. at 182; *Oran v. Stafford*, 226 F.3d 275, 291 (3d Cir. 2000).

In denying leave to amend, "[f]utility is governed by the same standard of legal sufficiency that applies under rule 12(b)(6)." *Oran v. Stafford*, 226 F.3d at 291 (citing *In re Burlington Court Factory Sec. Litig.,* 1114 F.3d at 1434). Futility of amendment occurs when the amended complaint does not state a claim upon which relief can be granted. *See In re Burlington Coat Factory Sec. Litig.,* 114 F.3d at 1434. Under this standard, the question is whether the complaint sets forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v.*

---

[2] Plaintiffs' Response in Opposition to the Motions to Dismiss also explicitly states that the Proposed Second Amended Complaint "eliminates the claims under the Civil Rights Act of 1964, 52 U.S.C. §10101" Dkt. 44 at 7.

*Twombly*, 550 U.S. 544, 570 (2007). A court ought not grant leave to amend when it would be an exercise in futility. *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 879 (3d Cir. 2018) ("Leave to amend is properly denied if amendment would be futile, i.e., if the proposed complaint could not 'withstand a renewed motion to dismiss.'") (quoting *Jablonski v. Pan. Am. World Airways, Inc.*, 863 F.2d 289, 292 (3d Cir. 1988).

## III.    ARGUMENT

The Proposed Second Amended Complaint fails to establish Plaintiffs' standing, fails to plausibly allege claims sufficient to show that Plaintiffs were entitled to relief, as required by Rule 8, and fails to allege sufficient facts to state a claim under 42 U.S.C § 1983 for much the same reasons as Plaintiffs' prior complaints. As described below, Plaintiff's new allegations relating to modems in ES&S voting equipment do nothing to rescue their claims. As such, amendment would be futile and Plaintiffs' motion for leave should be denied.

### A.    Plaintiffs fail to plausibly allege claims sufficient to show that they are entitled to relief, as required by Rule 8.

As explained in the County's motions to dismiss, Plaintiffs have failed to allege that the County took any action or adopted any policy that caused harm to Plaintiffs or that violated any law. Thus, the alleged facts do not allow the Court to draw the reasonable inference that the County is liable for any misconduct and Plaintiffs claims are facially insufficient. Nothing in the Proposed Second Amended Complaint addresses this fundamental flaw.

Additionally, as explained in the County's motions to dismiss, the facts Plaintiffs allege are entirely consistent with, and indeed likely explained by, lawful conduct, and thus do not render Plaintiffs claims plausible as required under Rule 8. *See Ashcroft v. Iqbal*, 556 U.S. 662, 680

6

(2009). Neither Plaintiffs' new conclusory allegations nor their new allegations relating to modems in ES&S equipment change that analysis.

In assessing the futility of amendment, the Court analyzes the proposed complaint under the standard of Federal Rule of Civil Procedure 12(b)(6). As such, the Court must accept as true all well-pled facts in the Complaint but may disregard legal conclusions. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The Court need not assume the truth of "mere conclusory statements." *Iqbal*, 556 U.S. at 678. Nor shall it make "unwarranted factual inferences," *Children's Health Def., Inc. v. Rutgers, the State Univ. of New Jersey*, 93 F.4th 66, 74 (3d Cir. 2024). Plaintiffs assertion that "[a]s the result of improper manipulation of the counting and reporting of votes" Plaintiffs' votes were not "counted fairly and accurately" "to the unfair advantage of candidates [they] opposed" is entirely conclusory and does is not "enough to raise a right to relief above [a] speculative level." *Children's Health Def., Inc.* 93 F.4th at 82, (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Xi v. Haugen*, 68 F.4th 824, 841 (3d Cir. 2023) ("We may not fill this gap in [their] pleading with speculation."). Similarly, Plaintiffs assertion that breaches of voting systems in other states "make it plausible that the reported vote results of the 2024 election were manipulated" and their assertion that "[t]he pattern of votes recorded and reported proves that the systems were exploited and . . . manipulated to the advantage of Republican candidates opposed by Plaintiffs" are legal conclusions that this Court may disregard.

Plaintiffs' apparent new theory is that their votes were somehow manipulated by use of the internet, but they allege no facts even suggesting that this occurred. Plaintiffs allege, on "information and belief" that "voting machines operated by Allegheny, Cambria, and Erie Counties contain cellular modems permitting communication with the machines over cellular networks,"

but this is not supported by their other allegations. In particular, Plaintiffs plead that Pennsylvania prohibits modems on all equipment, and that modems must be removed or disabled before delivery of the equipment. Dkt. 45-1, ¶29. In fact, the Department of State explicitly prohibited modems in its 2018 directive requiring equipment that included paper ballots, in lieu of touch screens with no paper backup, and mandating counties acquire new compliant equipment.[3]

The only basis Plaintiffs provide for believing that Allegheny County's election equipment includes modems is their allegation that ES&S told NBC News that some machines across the nation have modems. Dkt. 45-1, ¶31. But Plaintiffs do not allege, nor could they, that all ES&S machines include modems. Each state has its own certification and standard, and some states allow the use of election equipment with modems.[4] Thus, it is unsurprising that some ES&S machines across the county have modems, while others do not. The allegation that some ES&S machines, somewhere in the country, include modems does not provide any indication, let alone render it plausible, that Allegheny County or any other Pennsylvania jurisdiction used such equipment. Plaintiffs' averments relating to illegal conduct in Michigan are similarly unrelated to conduct by Allegheny County.

Moreover, even if the machines deployed by Allegheny County in its 1,327 voting precincts housed in over 850 discrete physical locations across the County in schools, churches, community centers and municipal facilities had modems, Plaintiffs' apparent claim requires this Court to

---

[3] Exhibit 1 https://www.pa.gov/agencies/dos/resources/voting-and-elections-resources/voting-systems "Pennsylvania Department of State Attachment E for the Directive For Electronic Voting Systems PA Voting System Security Standard, June 12, 2018, p.2 accessed March 26, 2026.

[4] *See, e.g.*, Iowa Admin. Code r. 721-22.241(52) ("If the equipment includes a modem for the electronic transmission of election results, the precinct officials may transmit the results after a printed copy has been made.").

speculate that some malicious actor was able connect to the equipment's private networks across the county to conduct his or her misdeeds. Plaintiffs have provided no explanation of how this could have occurred, let alone any indication that it occurred. As such, Plaintiffs' proposed amendments relating to modems and ES&S version 6.3.0.0 do not cure the defects of the prior complaint. The Proposed Second Amended Complaint would not survive a motion to dismiss and amendment is therefore futile. *See City of Cambridge Ret. Sys.* 908 F.3d at 879.

### B. Plaintiffs lack standing and nothing in the proposed amendment cures this threshold defect.

Allegheny County briefed Plaintiffs' lack of standing at length in its Brief in Support of its Motion to Dismiss. Dkt. 30 at 10–12. As argued previously, Plaintiffs have failed to allege facts sufficient to establish any of the three irreducible elements of Article III standing: Plaintiffs allegations of an injury in fact are entirely conclusory, Plaintiffs have never alleged or argued that any action or inaction by Allegheny County caused their alleged injury, and it is at best highly speculative that this Court could grant relief that would redress Plaintiffs' alleged injuries.

First, Plaintiffs persist in the Proposed Second Amended Complaint in pleading a generalized grievance that falls short of a particularized harm sufficient to establish an injury in fact. *See Forman v. Schmidt*, No. 2:24-CV-266, 2025 WL 1207739, at *2 (W.D. Pa. Apr. 25, 2025) *aff'd sub nom. Forman v. Schmidt*, No. 25-2013, 2026 WL 810648 (3d Cir. Mar. 24, 2026) (concluding that allegations about vulnerable voting machines and the possibility of disenfranchisement were generalized grievances where plaintiff failed to allege that she was prevented from voting or that her vote was not counted). As in their prior complaints, Plaintiffs include only conclusory allegations in their Proposed Second Amended Complaint that Plaintiffs' votes were "improperly manipulated." The only changes to the instant amended complaint are the additional conclusory contentions that the "manipulation" gave an "unfair advantage [to]

candidates [Plaintiffs] opposed" and that the Plaintiffs' votes were either not counted or counted

for a candidate for whom they did not intend to vote. Dkt. 45-1, ¶81.[5] Plaintiffs thus still provide

no more than conclusory allegations that their votes were not counted. "Threadbare recitals of the

elements of [standing], supported by mere conclusory statements, do not suffice." *In re Horizon*

*Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 633 (3d Cir. 2017) (quoting *Santiago v.*

*Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010)) (alterations in original). Even if Plaintiffs'

alleged facts could be read to support the suggestion that some votes were manipulated or that

fraudulent ballots were included (which they could not), that would still be insufficient to establish

a particularized injury where there is a theoretical "mathematical impact on the final tally and thus

on the proportional effect of every vote, but no single voter is specifically disadvantaged." *Bognet*

*v. Sec'y of Commonwealth of Pa*, 980 F.3d 336, 356 (3d Cir. 2020) (vacated as moot[6]) (collecting

cases); *see also*, *Bowyer v. Ducey*, 506 F. Supp. 3d 699, 712 (D. Ariz. 2020).

Second, Plaintiffs continue to fail to allege any facts suggesting that Allegheny County

"caused" the alleged harm. None of their new allegations relate to the conduct of the County. This

alone is sufficient to doom their Proposed Second Amended Complaint. Moreover, Plaintiffs have

already waived the opportunity to respond to this argument by failing to do so in their Response

---

[5] In their responsive brief in opposition to the Defendants' Motions to Dismiss, Plaintiffs attached an Exhibit by which it appears that they believe Elon Musk conducted or directed the illegal manipulation of votes. They do not however name him or any other specific malicious actors in the proposed amendment.

[6] A decision vacated as moot does not bind this court, but its analysis may still provide persuasive authority. *See Polychrome Int'l Corp. v. Krigger*, 5 F.3d 1522, 1534 & n.30 (3d Cir. 1993) (noting that a prior decision vacated as moot was not binding, but finding it persuasive); *In re W.R. Grace & Co.*, 475 B.R. 34, 156 (D. Del. 2012) ("Vacation of a decision only affects its binding authority on subsequent courts—the internal discussion remains useful for persuasive authority purposes.").

to the County's Motion to Dismiss. *See* Allegheny County's Reply in support of its Motion to Dismiss, Dkt. 54 at 4.

Finally, in the proposed Second Amended Complaint, as in the First Amended Complaint, Plaintiffs allege a prospective future harm of having their votes "offset" or "render[ed] null" or a "theft" of the votes in 2026. Dkt. 45-1, ¶106. Although future harm can sometimes rise to the level of an injury in fact, it must be "imminent" and "certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). Plaintiffs have not alleged that Allegheny County failed to adequately test its equipment prior to the 2024 election and have provided no reason to believe it will fail to do so prior to the 2026 election. Rather, they imply that such harm arose in 2024 through someone manipulating the system via a modem—an equipment configuration they acknowledge is not permitted by the State of Pennsylvania. Such unproven future harm is too speculative to rise to the level of "certainly impending" or even to demonstrate that a "substantial risk that the harm will occur," *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014). *See also Lake v. Fontes*, 83 F.4th 1199, 1203 (9th Cir. 2023).

Plaintiffs' Proposed Second Amended Complaint fails to cure the standing deficiencies of the prior iteration and would not withstand a motion to dismiss. This is a proper basis to deny the request for leave to amend.

### C. Plaintiffs do not allege facts sufficient to state a claim under the Section 1983 standard.

As Allegheny County explained more fully in its Brief in Support of its Motion to Dismiss, Dkt. 30 at 22, in the election context, only intentional acts or "willful conduct [that] undermines the organic process by which candidates are elected" can be held to violate Section 1983. *Acosta v. Democratic City Comm.*, 288 F.Supp.3d 597, 643 (E.D. Pa. 2018) (internal quotation marks omitted). In addition, to state such a Section 1983 claim against a local government, a plaintiff

11

must show that "through its deliberate conduct, the municipality was the moving force behind the injury alleged," i.e., that "the municipal action was taken with the requisite degree of culpability" and that there is "a direct causal link between the municipal action and the deprivation of federal rights." *Bd. of Cnty. Comm'rs. v. Brown*, 520 U.S. 397, 404 (1997).

Other than the averments relating to the modems and ES&S software version 6.3.0.0, the claims and the averments related to Allegheny County in the Proposed Second Amended Complaint are substantively identical to those in the First Amended Complaint. Plaintiffs have pled no intentional conduct by Allegheny County, let alone alleged facts that establish that Allegheny County engaged in "willful" or "deliberate" conduct that was the moving force behind the alleged injury. Plaintiffs have already waived the opportunity to respond to this argument by failing to do so in their Response to the County's Motion to Dismiss. *See* Allegheny County's Reply in support of its Motion to Dismiss, Dkt. 54 at 2–3. Because Plaintiffs have now clarified that they pursue relief only under Section 1983, Dkt. 44 at 2, this failure is fatal to their case, and this Court must deny the request for leave to amend as futile.

### D.  Plaintiffs Have Failed to State a Claim Under the Help America Vote Act

Although Plaintiffs appear to have abandoned their claims under HAVA, *see* Dkt. 44 at 2, they continue to caption Count I as against all defendants and to assert in that Count that Secretary Schmidt violated HAVA. Dkt 45-1, ¶ 97–103. To the extent Plaintiffs are attempting to state a claim under HAVA against Allegheny County, they have failed to make any allegations in support of such claim. Additionally, as Defendant Secretary Schmidt argued in his brief in Support of his motion to Dismiss the amended complaint, the Third Circuit has held HAVA does not provide a private right of action for aggrieved parties. *American Civil Rights Union v. Philadelphia City Commissioners*, 872 F.3d 175, 181 (3d Cir. 2017) ("HAVA does not include a private right of action

12

that allows aggrieved parties to sue nonconforming states."); *id.* at 185 ("[T]he fact that the NVRA provides for a private right of action while the HAVA does not clearly indicates Congress's intent to limit HAVA's enforcement mechanism to preclude a private suit."). *See* Brief of Secretary Schmidt in Support of Motion to Dismiss, Dkt. 22 at 20–22. Plaintiffs have failed to state a claim under HAVA, as HAVA contains no private right of action.

## CONCLUSION

Plaintiffs have twice filed complaints that fail to state a cognizable claim. This third proposed iteration fails to cure the defects. This Court must deny the request for leave to amend because the proposed "amendment will not cure the deficiency in the original complaint" and because the Proposed Second Amended Complaint "cannot withstand a renewed motion to dismiss." *Jablonski v. Pan Am. World Airways, Inc.,* 863 F.2d 289, 292 (3d Cir. 1988).

WHEREFORE, Allegheny County respectfully requests Plaintiffs' Motion for Leave to File Second Amended Complaint be denied as futile.

Dated: March 30, 2026

Respectfully submitted,
*/s/ Lisa G. Michel*

Lisa G. Michel
Assistant County Solicitor
Pa. I.D. #59997

Allegheny County Law Department
445 Fort Pitt Boulevard, #300
Pittsburgh, PA 15219
(412) 350-1167
Lisa.Michel@alleghenycounty.us

13