IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ELECTION TRUTH ALLIANCE, et al.,        )
    Plaintiffs,                     )
                                    )
        v.                          )        Civil Action No. 1:25-CV-329
                                    )
AL SCHMIDT,                             )
Secretary of the Commonwealth, et al.,  )
    Defendants.                     )

## MEMORANDUM OPINION

## I.  BACKGROUND AND PROCEDURAL HISTORY

The operative complaint in this matter is the First Amended Complaint which was filed by Plaintiffs as of right. Presently before the Court are two related matters: (1) Plaintiffs' Motion for Leave to File a Second Amended Complaint [ECF No. 45], together with the proposed Second Amended Complaint attached thereto; and (2) the pending Motion to Dismiss the First Amended Complaint filed by Defendant Secretary of the Commonwealth [ECF No. 27] and by Defendant County Boards of Elections for Allegheny, Erie, and Cambria Counties[1] [ECF No. 29]. For the reasons that follow, the Motion for Leave to file a Second Amended Complaint will be denied as futile and the Motions to Dismiss the First Amended Complaint will be granted.[2]

---

[1] The Allegheny County Board of Elections filed a motion to dismiss, along with a brief in support of the motion. ECF No. 29. The Erie County Board of Elections joins in the motions to dismiss of the Allegheny County Board of Elections, as well as the Secretary of the Commonwealth. *See* ECF Nos. 38, 39. The Cambria County Board of Elections joins in the motion to dismiss filed by the Secretary of the Commonwealth. *See* ECF No. 32. Neither the Erie County Board of Elections, nor the Cambria County Board of Elections have filed a separate motion to dismiss.

[2] Due to the disposition of those motions, the motions for leave to file a brief amicus curiae and for leave to file a reply brief [ECF No. 34, 41] will be denied as moot.

### A. The Parties

Plaintiff Election Truth Alliance ("ETA") is a Pennsylvania non-profit organization whose stated mission is to investigate and publicly disclose alleged election irregularities. Plaintiffs Nicholas Bruno, Jennifer Reese, Kimberly Minardi, Emily Craig-McCurdy, Lauren Hoffman, Christopher Mack, John Pecze, and Grace Hohman are adult citizens registered to vote in, and who attempted to cast ballots during the November 5, 2024, General Election in the counties of Allegheny, Cambria, and Erie in Pennsylvania.

Defendants are Al Schmidt, the Secretary of the Commonwealth of Pennsylvania, sued in his official capacity and the Boards of Elections of Allegheny, Cambria, and Erie Counties (collectively, "the County Boards"), each an administrative body established pursuant to 25 Pa. C.S. § 2621 and charged with the conduct of primary and general elections within the respective county in accordance with the provisions of the Pennsylvania Election Code.

### B. Core Allegations

The First Amended Complaint and the proposed Second Amended Complaint advance substantively identical theories of liability. Both pleadings allege that electronic voting machines and tabulation systems deployed in Allegheny, Cambria, and Erie counties during the 2024 General Election were improperly programmed or manipulated, such that the reported vote totals do not accurately reflect the votes actually cast. In both pleadings, the asserted consequence of this alleged manipulation is that each named individual Plaintiff's vote was not counted fairly or accurately, thereby depriving them of the equal protection of the law guaranteed by the Fourteenth Amendment to the United States Constitution, in violation of the Help America Vote Act of 2002 ("HAVA"), 52 U.S.C. § 20901 et seq., and in violation of various provisions of the Pennsylvania Election Code.

The factual allegations across both pleadings fall into several general categories. First, they present data reflecting discrepancies between mail-in ballot tallies reported by various counties as of 7:00 PM on Election Day and the final certified total, including a reconciliation table for several counties showing net changes in reported party vote totals after that hour. Second, the pleadings allege that Cambria County ordered 159,912 more ballots than the total number of registered voters in the county, a figure characterized as inexplicable absent deliberate overproduction. Third, the First Amended Complaint alleges that between 13,000 and 17,000 mail-in ballots requested by in-state Erie County voters were not delivered prior to Election Day, and that a finding by a judicial officer, Erie County Court of Common Pleas Judge David Ridge, established that approximately 1200 out-of-state voters registered in Erie County similarly did not receive requested mail-in ballots.[3] Fourth, both pleadings invoke two bodies of statistical methodology to indicate improper vote counting: (a) the analytical framework developed by Klimek, Yegorov, Hanel, and Thurner (herein, "the Klimek methodology"), a peer-reviewed model for identifying electoral irregularities based on anomalous vote-turnout fingerprint patterns, and (b) the eforensics model of Dr. Walter Mebane, Professor of Political Science at the University of Michigan, who conducted a forensic analysis of certified Pennsylvania results and reportedly identified a "manufactured votes" parameter of 0.238 in Allegheny County, with a positive credible interval.

The relief sought between the two pleadings is the same. At Count I, Plaintiffs seek declaratory and injunctive relief concerning the administration of the 2024 general election. Specifically, Plaintiffs ask the Court to declare that the voting systems used by Defendants were incapable of accurately counting and reporting votes and that Defendants failed to follow proper

---

[3] The specific factual allegations arising out of this scenario have been omitted from the proposed Second Amended Complaint.

election procedures in a manner that affected the weight of Plaintiffs' votes. Plaintiffs further request orders requiring Defendants to investigate and explain alleged discrepancies between votes cast and votes reported, including alleged ballot mismatches and disappearances, and to take corrective measures to prevent similar inaccuracies in further elections, including the 2026 general election. Plaintiffs also seek orders directing additional examination of voting equipment and ballots, including hand counts where necessary, and requiring future compliance with applicable election laws and vote-counting procedures.

In addition, at the other three counts, Plaintiffs seek more specific injunctive relief directed at the three county boards of elections and the Secretary with respect to the precincts in which each of the individual named Plaintiffs voted during the 2024 general election. Plaintiffs request orders requiring Defendants to investigate the alleged incorrect reporting of votes, including by examining voting software and equipment and, if necessary, conducting hand counts of ballots to assess the accuracy of reported vote totals and prevent future errors. Plaintiffs further seek mandatory recounts of all ballots cast in their precincts and, if evidence of manipulation or inaccuracies is discovered, expanded recounts and examinations covering additional precincts or the remainder of the county. Plaintiffs also request injunctive relief requiring Defendants to implement future vote-counting and reporting procedures that would ensure accurate election results. Finally, Plaintiffs request attorney's fees, expert witness fees, costs, and such other relief as the Court deems appropriate.

### C. The Proposed Second Amended Complaint

The proposed Second Amended Complaint introduces several modifications to the First Amended Complaint. First, Secretary Schmidt is sued in both his official and individual capacities.

While the First Amended Complaint is relatively neutral about which party benefitted from the alleged manipulation, the proposed Second Amended Complaint is explicit alleging manipulation "to the advantage of Republican candidates opposed by Plaintiffs" and adds that the relief sought is to prevent votes from being "overridden by manufactured or switched votes" that favored candidates the Plaintiffs opposed. This new language recurs throughout the proposed Second Amended Complaint making the partisan direction of the alleged fraud a central allegation rather than an incidental one.

The most significant factual addition involves the software vulnerabilities of the voting equipment. The First Amended Complaint described *de minimis* updates approved without adequate testing, but the proposed Second Amended Complaint replaces that description with a much more detailed and different set of allegations. The proposed Second Amended Complaint alleges that voting machines in all three counties contained serious, documented security flaws. ES&S equipment (used in Cambria and Allegheny) ran software with 430 known vulnerabilities enabling vote count manipulation, while Dominion's ImageCast X (used in Erie) had nine CISA-confirmed vulnerabilities including the ability to install unsigned code and spread malware. Both vendors' machines also allegedly contained active cellular modems that were never security-tested and that Pennsylvania law requires be disabled – yet no county verified compliance. Plaintiffs tie these vulnerabilities to real-world breaches in Michigan, Georgia, and Colorado. The proposed Second Amended Complaint concludes that it is plausible – and that the statistical voting patterns confirm – that the 2024 results in Allegheny, Cambria, and Erie Counties were manipulated through exploitation of these vulnerabilities, to the unfair advantage of Republican candidates the Plaintiffs opposed.

The proposed Second Amended Complaint represents a strategic revision: it drops the "*de minimis* software update" theory in favor of a broader systemic vulnerability and physical breach theory, adds individual-capacity claims against Schmidt, makes the partisan direction of the alleged fraud explicit throughout, and consolidates the legal claims around Equal Protection and § 1983 rather than the Civil Rights Act's voting rights provision.

The Erie County section is significantly scaled back. The First Amended Complaint provided a detailed section on Erie County mail-in ballot failures describing the 13,000-17,000 undelivered ballots, the court order extending office hours, the 365 incorrect ballots, and the specific vote totals reported at 7 PM vs. final results. The proposed Second Amended Complaint condenses these factual details significantly, retaining only summary allegations within the Erie County counts rather than a standalone factual narrative.

## II. LEGAL STANDARDS

### A. Motion for Leave to Amend

Federal Rule of Civil Procedure 15(a)(2) provides that a court should "freely give leave [to amend] when justice so requires." Despite the liberality of this standard, leave to amend may be denied on grounds of futility. *Foman v. Davis*, 371 U.S. 178, 182 (1962). An amendment is futile when the proposed pleading, even if filed, would not survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000); *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1434 (3d Cir. 1997). Futility is assessed under the same standard as a motion to dismiss; the court must determine whether the proposed complaint, accepted as true and viewed in a light most favorable to the plaintiff, states a plausible claim for relief. *Shane*, 213 F.3d at 115. Beyond futility, the Court considers the

additional factors identified in *Foman*: undue delay, bad faith or dilatory motive on the part of the movant, and repeated failure to cure deficiencies by prior amendments. *Foman*, 371 U.S. at 182.

### B. Motion to dismiss 12(b)(1)

Under Rule 12(b)(1), a defendant may move to dismiss a complaint based on a court's "lack of subject matter jurisdiction." Fed.R.Civ.P. 12(b)(1). Article III standing is an issue of subject matter jurisdiction and, therefore, a defendant may properly move to dismiss for lack of standing under that rule. *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014). When a defendant files a Rule 12(b)(1) motion before filing an answer, the motion is "considered a facial challenge to jurisdiction," and the district court must "apply the same standard of review that would apply on a motion to dismiss under Rule 12(b)(6)." *Hendrick v. Aramark Corp.*, 263 F. Supp. 3d 514, 517 (E.D. Pa. 2017) *citing Aichele*, 757 F.3d at 357-58. Ultimately, a "complaint will be dismissed for lack of standing only if it appears that the plaintiff will not be able to assert a colorable claim of subject matter jurisdiction." *Id.*

### C. Motion to dismiss 12(b)(6)

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *See Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a Rule 12(b)(6) motion to dismiss, the court must accept as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. *See U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002). The "court[] generally consider[s] only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim" when considering the motion to

7

dismiss. *Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004) *citing In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

In making its determination under Rule 12(b)(6), the court is not opining on whether the plaintiff is likely to prevail on the merits; rather, the plaintiff must only present factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) *citing* 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004). *See also Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Furthermore, a complaint should only be dismissed pursuant to Rule 12(b)(6) if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

## III. THE MOTIONS TO DISMISS – ANALYSIS AND DISCUSSION

This Court begins, and ultimately ends, its legal analysis with standing as alleged in the proposed Second Amended Complaint, which as the most recent and developed version of Plaintiffs' theory represents their best and most detailed pleading relative to the injury, causation, and redressability required for standing. If the Second Amended Complaint cannot survive a motion to dismiss, the First Amended Complaint, which is deficient in the same ways but to potentially an even greater degree, must necessarily be dismissed as well. Accordingly, both the First Amended Complaint and the proposed Second Amended Complaint will be assessed under the applicable standing requirements.

To invoke the jurisdiction of a federal court, an individual plaintiff must demonstrate the three irreducible constitutional requirements of Article III standing: (1) a concrete, particularized injury-in-fact that is actual or imminent; (2) a causal connection between the asserted injury and the challenged conduct, such that the injury is fairly traceable to the defendant's acts or

8

omissions; and (3) a likelihood that the injury will be redressed by a favorable judicial decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). To be cognizable under Article III, an injury must be both concrete and particularized, not generalized and shared equally among all members of the public. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). An injury is particularized when it affects the plaintiff "in a personal and individual way." *Lujan*, 504 U.S. at 560 n.1. An injury that amounts to a generalized grievance shared by all citizens in common does not suffice to confer standing, regardless of its subjective importance to any individual plaintiff. *Warth v. Seldin*, 422 U.S. 490, 499 (1975).

Meanwhile, organizational plaintiffs may establish standing in one of two separate ways. An organization may assert a direct organizational injury, provided the challenged conduct has concretely frustrated the organization's specific programmatic activities and caused it to divert resources in a demonstrable and non-speculative way. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982). Alternatively, an organization may assert associational standing on behalf of its members if: (a) at least one member would independently have standing to sue in his or her own right; (b) the interests the organization seeks to vindicate are germane to its organizational purpose; and (c) neither the nature of the claim nor the relief requested requires the participation of individual members in the lawsuit. *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977).

### A. Standing of the Individual Plaintiffs

1. Injury in fact

The eight individual Plaintiffs allege, in nearly identical terms across both pleadings, that

9

each is a registered voter who "attempted to cast a vote" on a voting machine in their respective counties during the 2024 General Election, is a member of ETA, and that his or her vote "was not counted fairly and accurately" as a result of the Defendants' conduct in permitting the deployment of defective or manipulated voting equipment. ECF No. 45-1 (proposed Second Amended Complaint), ¶¶ 2-9. [4]

It is black letter law that the right to have one's vote counted is an interest of constitutional dimension. *Reynolds v. Sims*, 377 U.S. 533, 555 (1964). Where a voter can demonstrate that his or her specific ballot was, as a concrete and non-speculative matter, miscounted or not tabulated at all as a result of identifiable government action, a particularized injury exists to support standing. However, the allegation of such a personal injury must rest on factual content sufficient to permit the inference to be drawn; a conclusory statement of the legal conclusion that a plaintiff's vote "was not counted fairly" is not sufficient to establish a fact. *Iqbal*, 556 U.S. at 678.

Neither the First Amended Complaint nor the proposed Second Amended Complaint contain the factual allegations sufficient to support a plausible claim of personal injury. No individual plaintiff identifies his or her specific ballot as among those suspected to have been miscounted. No individual alleges that the specific precinct in which he or she voted was identified as one in which tabulation errors occurred. No individual plaintiff who cast or attempted to cast a mail-in ballot alleges that his or her specific mail-in ballot was among the undelivered, uncounted, or improperly tabulated ballots. The statistical analyses presented in the

---

[4] In the First Amended Complaint, the individual Plaintiffs' allegations vary in this regard. There, they each allege that "as the result of improper manipulation of the counting and reporting of votes," their individual votes were "not given [their] proper weight." ECF No. 26, ¶¶ 2-9. The First Amended Complaint's framing is less precise than that of the proposed Second Amended Complaint which tracks the legal theory and connects the injury to the specific partisan harm.

10

pleadings concern aggregate voting patterns at the county or precinct level. Without additional factual allegations, they do not establish that any specific voter was harmed or that any particular ballot was affected.

Without such specific factual allegations, both pleadings ultimately amount to a vote-dilution claim: that improperly counted ballots cast for opposing candidates reduced the relative weight of the individual Plaintiffs' votes. Put another way, without any particularized factual allegations, the pleadings boil down to a claim that improperly counted ballots diluted the weight of the individual Plaintiffs' lawfully cast votes. The Third Circuit has directly addressed and rejected this theory as a basis for Article III standing. In *Bognet v. Sec'y Commonwealth of Pennsylvania*, 980 F.3d 336, 354-56 (3d Cir. 2020), the Circuit held that vote dilution of this nature is a "paradigmatic generalized grievance that cannot support standing" because the alleged harm is shared in equal measure by all voters in the relevant jurisdiction. *Id.* at 356. While "a vote … counted illegally" may have "a mathematical impact on the final tally and thus on the proportional effect of every vote, no single voter is specifically disadvantaged." *Id.* quoting *Martel v. Condos*, 487 F.Supp. 3d 247 (D. Vt. 2020). In other words, "dilution is suffered equally by all voters and is not particularized for standing purposes." *Id.* The Third Circuit's reasoning in rejecting this theory to support standing in the context of the 2020 Pennsylvania General Election applies here.[5]

In the proposed Second Amended Complaint, Plaintiffs attempt to distinguish their theory from *Bognet* by reframing each individual Plaintiff's injury as the failure to count his or her own

---

[5] Although the Third Circuit's decision in *Bognet* was later vacated as moot by the Supreme Court in *Bognet v. Degraffenreid*, ___ U.S. ___, 141 S.Ct. 2508 (April 19, 2021) and therefore carries no binding precedential effect, its reasoning is persuasive and applies with equal force here.

ballot accurately, rather than the dilution of a valid vote by others' improper ballots. This recharacterization does not survive scrutiny on the current pleadings. The factual allegations in the proposed Second Amended Complaint do not support the inference that any individual Plaintiff's specific ballot was miscounted or miscategorized. A legal reframing of the theory of injury cannot substitute for the factual content necessary to render that theory plausible. *See Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). *See generally Donald J. Trump for President, Inc. v. Secretary of Commonwealth*, 830 F. App'x 377, 389 (3d Cir. 2020) (rejecting, in the context of post-election federal litigation arising from the 2020 Pennsylvania General Election, broad systemic election integrity claims that lacked factual support for particularized injury to identified plaintiffs).

That there are multiple individual Plaintiffs reciting the same alleged harm does not help to establish the particularized injury necessary to support standing. The relevant inquiry is not the number of plaintiffs asserting an injury, but whether any plaintiff has adequately alleged a concrete and individual one. The mere invocation of a constitutional harm, repeated by multiple plaintiffs in identical language, does not make the alleged injury more particularized. *See Lujan*, 504 U.S. at 573-74 (holding that "a generally available grievance about government" remains nonjusticiable even when pled collectively).

2. Causation

Even assuming arguendo that the individual Plaintiffs had adequately pleaded injury-in-fact, their theory of causation, as alleged, raises other concerns. Both pleadings allege that each Defendant Board's failure to properly test, certify, or approve voting equipment, and Secretary Schmidt's failure to disapprove non-compliant systems caused the asserted vote-counting

inaccuracies. The alleged causal chain instead depends on the actions of third-party voting machine vendors and software developers who programmed the systems at issue, yet the complaints do not describe with any specificity how any named Defendant was involved in the alleged manipulation. Where the causal chain between a defendant's conduct and a plaintiff's injury depends significantly on the independent acts of third parties not before the Court, the traceability requirement imposes a pleading burden that both complaints here fail to meet. *Lujan*, 504 U.S. at 560-61. *See also City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). Neither pleading contains factual allegations permitting a reasonable inference that any of the named Defendants, as distinguished from unnamed third-party vendors, took an affirmative action that directly and plausibly caused Plaintiffs' injuries.

3. Redressability

The relief requested in both the First Amended Complaint and the proposed Second Amended Complaint falls into two separate categories: (a) retrospective relief, including orders requiring hand recounts, forensic audits of voting equipment, and judicial determination of the accuracy of reported vote totals in the 2024 General Election; and (b) prospective relief, including orders requiring Defendants to identify and correct the causes of alleged discrepancies and to ensure accurate counting in future elections.

The retrospective relief is not redressable for multiple reasons. Most fundamentally, the results of the 2024 General Election have been certified by the Commonwealth of Pennsylvania, and the winning candidates have assumed office. An order directing a recount or forensic audit could not, as a practical matter, alter the certified results or the composition of the government formed based on those results. The retrospective claims are therefore moot. *See Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc.,* 528 U.S. 167, 190 (2000); *Arizonans for*

13

*Official English v. Arizona*, 520 U.S. 43, 67 (1997). Additionally, the strong presumption that certified elections results should remain final – rooted in the federal system of election administration and separation-of-powers principles – counsels courts to exercise significant restraint before intervening after certification. *See Donald J. Trump for President, Inc. v. Boockvar*, 502 F.Supp.3d 899, 922 (M.D. Pa. 2020), *aff'd* 830 F. App'x 377 (3d Cir. 2020).

Conversely, the request for prospective relief is not moot. In principle, a registered voter who intends to vote in a future election using the same equipment may have a cognizable interest in ensuring that the equipment accurately records and tabulates votes. The availability of prospective standing requires a plausible, non-speculative threat of future injury traceable to the Defendants' conduct, and a showing that injunctive relief would meaningfully prevent that injury from recurring. Neither of the current pleadings contains sufficient factual allegations to support that showing, although it is possible that Plaintiffs could allege facts adequate to do so.

### B. ETA's Organizational and Associational Standing

As a threshold matter, ETA's associational standing turns on whether at least one of its individual members would independently have standing to sue in his or her own right. *Hunt*, 432 U.S. at 343. Because the individual Plaintiff-members' standing is deficient for the reasons described above, ETA's associational standing fails as a matter of law.

As to direct organizational standing, for an organization to assert a cognizable institutional injury, the challenged conduct must have "perceptibly impaired" the organization's ability to perform its specific programmatic activities, beyond the expenditure of resources in pursuit of the litigation itself. *Havens Realty*, 455 U.S. at 379. The proposed Second Amended Complaint does not plead facts establishing that ETA's concrete programmatic activities have

been frustrated by any specific act of any named Defendant, as distinguished from ETA's own decision to investigate and litigate the claims at issue. The diversion of resources to pursue litigation is not, standing alone, a cognizable organizational injury under Article III. *See FDA v. Alliance for Hippocratic Med.*, 602 U.S. 367, 395 (2024) ("An organization that has not suffered a concrete injury caused by a defendant's action cannot spend its way into standing simply by expending money to gather information and advocate against the defendant's action."); *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 285-86 (3d Cir. 2014) (explaining that an organization does not suffer cognizable injury merely because it "expended resources to advocate" against challenged conduct absent impairment of its core activities). As pled, Plaintiffs have failed to adequately allege facts sufficient to support standing of ETA.

### C.  State Law Claims

Claims arising solely under the Pennsylvania Election Code are state-law claims that this Court would ordinarily address, if at all, through the exercise of supplemental jurisdiction pursuant to 28 U.S.C. § 1367. Where, as here, all federal claims are subject to dismissal, the Court declines to exercise supplemental jurisdiction over any remaining state-law claims. 28 U.S.C. § 1367(c)(3); *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966). The state-law claims are therefore dismissed without prejudice to their assertion in the appropriate state forum.

### IV.    CONCLUSION

For the foregoing reasons, the Court will enter the following by a separate Order to follow:

First, Plaintiffs' Motion for Leave to File the Second Amended Complaint [ECF No. 45] will be denied as futile. The proposed Second Amended Complaint fails, as described herein, to cure the standing deficiencies that require dismissal of the First Amended Complaint and would not survive a motion to dismiss if permitted.

Second, Defendants' Motions to Dismiss the First Amended Complaint [ECF No. 27, 29] will be granted.

Third, all retrospective requests for relief in the First Amended Complaint, including any claim seeking to disturb, recount, or audit the certified results of the November 5, 2024 General Election, or to obtain a judicial determination of the accuracy of reported vote totals in that election, will be dismissed with prejudice.

Fourth, all prospective injunctive claims in the First Amended Complaint will be dismissed without prejudice. Any amended pleading asserting prospective claims shall be filed within thirty (30) days of the entry of this Memorandum Opinion and the accompanying Order and must: (a) plead with factual specificity the concrete, particularized injury-in-fact that each named Plaintiff faces in connection with future elections, including non-conclusory factual allegations establishing that each Plaintiff intends to vote in an identified further election in the same county using the same or comparable equipment and that a credible, non-speculative threat of recurrence of the alleged (historical) inaccuracies exists; and (b) plead with specificity the causal connection between each named Defendant's particular conduct and the alleged threat of further injury, without reliance on the independent acts of unnamed third-party vendors as the primary link in the causal chain.

Fifth, all state-law claims arising under the Pennsylvania Election Code will be dismissed without prejudice to their assertion in the appropriate state forum.