**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ELECTION TRUTH ALLIANCE, JENNIFER REESE, CHRISTOPHER MACK, and GRACE HOHMAN,<br>Plaintiffs,<br>v.<br>AL SCHMIDT, in his official capacity as Secretary of the Commonwealth of Pennsylvania; BOARD OF ELECTIONS OF CAMBRIA COUNTY; ELECTION SYSTEMS & SOFTWARE, LLC; AND JOHN DOE,<br>Defendants. | ELECTRONICALLY FILED<br>CIVIL NO.: 1:25-cv-00329<br><br>**HONORABLE SUSAN PARADISE BAXTER** |

**DEFENDANT ELECTION SYSTEMS & SOFTWARE, LLC'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS**

Defendant Election Systems & Software, LLC ("ES&S") respectfully submits this Memorandum in Support of its Motion to Dismiss with Prejudice Plaintiffs' Third Amended Complaint (the "Complaint").

## I. INTRODUCTION

Plaintiffs Election Truth Alliance ("ETA"), Jennifer Reese ("Reese"), Christopher Mack ("Mack"), and Grace Hohman ("Hohman," collectively, Plaintiffs) have asserted a single cause of action against ES&S—namely, a claim under 42 U.S.C. § 1983 alleging that ES&S acts under color of state law because it provides election software and equipment to Cambria County. In the alternative, Plaintiffs assert that ES&S is a necessary party under Federal Rule of Civil Procedure 19(a)(1)(A) on the theory that ES&S possesses source code needed for the

examinations Plaintiffs request. Neither theory states a viable claim. Plaintiffs have not alleged that ES&S took any affirmative action that deprived them of a constitutional right; rather, the Complaint's allegations against ES&S amount to nothing more than a request that this Court conscript a private vendor into producing proprietary materials through a cause of action that Plaintiffs cannot sustain.

ES&S has moved to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), and submits this brief in support of its motion. As a threshold matter, Plaintiffs lack Article III standing to pursue their claims against ES&S. Each individual Plaintiff's alleged injury—that his or her vote was "diluted" by purported irregularities in the November 2024 general election—is a generalized grievance shared equally by every voter in Cambria County, not a concrete, particularized injury. *See Election Truth All. v. Schmidt*, No. 1:25-CV-329, 2026 WL 1707266, at *4-5 (W.D. Pa. June 12, 2026). Moreover, no Plaintiff has alleged that any specific act or omission by ES&S caused a particularized harm to his or her individual ballot. The alleged injuries are traceable, if at all, to the decisions and conduct of the Secretary of the Commonwealth and the Cambria County Board of Elections—not to ES&S, which is a private vendor engaged in arm's-length commercial transactions with counties. And, because Plaintiffs have not requested any relief from ES&S (other than the production of certain records which ES&S asserts are protected by the trade secret doctrine), there is no injury to be redressed vis-à-vis ES&S. Furthermore, because ETA's associational standing depends on its individual members having standing, ETA's claims likewise fail. *See id*. at *4, 7.

Even if this Court were to find standing existed, Plaintiffs' claims present non-justiciable political questions. The Elections Clause of the United States Constitution textually commits the regulation of elections to state legislatures and Congress, and this Court has no judicially manageable standards by which to determine which method of ballot counting is "most accurate," a determination the Pennsylvania General Assembly has already made through the PA Election Code. *See Baker v. Carr*, 369 U.S. 186, 217 (1962).

Finally, on the merits, Plaintiffs' § 1983 claim fails as a matter of law because ES&S is not a state actor. ES&S is a private limited liability company that manufactures and licenses election software and equipment; it does not organize, regulate, or supervise elections. The Complaint's own allegations confirm ES&S's limited, commercial role: it "programs election definitions," "supplies [] software" and "instructs county officials on required testing." Compl. ¶ 167. These activities are not powers "traditionally the *exclusive* prerogative of the state." *M.B. v. Schuylkill County*, 375 F.Supp.3d 574, 596 (E.D. Pa. 2019) (emphasis in original). Nor is ES&S a necessary party, because the Court can accord complete relief among the existing government defendants without ES&S's participation, and any source code or records can be requested through subpoena procedure. For at least these reasons, Plaintiffs' Complaint should be dismissed as to ES&S with prejudice.

## II. LEGAL STANDARD

### A. Fed. R. Civ. P. 12(b)(1)

"A motion to dismiss for want of standing is [] properly brought pursuant to

Rule 12(b)(1), because standing is a jurisdictional matter." *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007). "A district court has to first determine, however, whether a Rule 12(b)(1) motion presents a 'facial' attack or a 'factual' attack on the claim at issue, because that distinction determines how the pleading must be reviewed." *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014). "[A] facial attack contests the sufficiency of the pleadings, whereas a factual attack concerns the actual failure of a plaintiff's claims to comport factually with the jurisdictional prerequisites." *Id.* at 358 (citation modified); *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 892 n.17 (3d Cir. 1977) ("A factual jurisdictional proceeding cannot occur until plaintiff's allegations have been controverted."). "In reviewing a facial attack, the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Const. Party of Pa.*, 757 F.3d at 358 (citation modified).

"When a motion under Rule 12 is based on more than one ground, the court should consider the 12(b)(1) challenge first because if it must dismiss the complaint for lack of subject matter jurisdiction, all other defenses and objections become moot." *In re Corestates Tr. Fee Litig.*, 837 F.Supp. 104, 105 (E.D. Pa. 1993), *aff'd*, 39 F.3d 61 (3d Cir. 1994); *Mortensen*, 549 F.2d at 889 n.12 ("Because a motion to dismiss for lack of subject matter jurisdiction attacks the power of a court to enter any ruling on the merits, the jurisdictional issue is generally decided prior to the entry of judgment on the merits."). Thus, the Court should consider the Rule 12(b)(6) grounds only if it determines that it has subject matter jurisdiction. *See id.*

### B. Fed. R. Civ. P. 12(b)(6)

"Under the plausibility pleading standard, this Circuit uses a three-step process to evaluate a motion to dismiss a complaint for failure to state a claim for relief." *Lutz v. Portfolio Recovery Assocs., LLC*, 49 F.4th 323, 327 (3d Cir. 2022). "The first step in that process requires an articulation of the elements of the claim." *Id.* "The second step involves reviewing the complaint and disregarding any formulaic recitation of the elements of a ... claim or other legal conclusion as well as allegations that are so threadbare or speculative that they fail to cross the line between the conclusory and the factual." *Id.* at 327-28 (citation modified). "The third step evaluates the plausibility of the remaining allegations." *Id.* at 328. "That involves assuming their veracity, construing them in the light most favorable to the plaintiff, and drawing all reasonable inferences in the plaintiff's favor. *Id.* If "'a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citation modified)).

## III. ARGUMENT

Plaintiffs' Complaint should be dismissed for the following reasons: (1) Plaintiffs have failed to allege facts sufficient to demonstrate that they have standing to bring this action; (2) Plaintiffs' Complaint poses non-justiciable political questions; and (3) Plaintiffs have failed to state a claim for relief upon which relief can be granted.

## A. Plaintiffs' Claims are Non-Justiciable

The Court cannot render judgment in this case because Plaintiffs' claims are not justiciable. Thus, this Court cannot exercise subject-matter jurisdiction.

### *i. Standing.*

Plaintiffs' Complaint is not justiciable because they lack standing. To establish Article III standing, a plaintiff must have:

> (1) a concrete, particularized injury-in-fact that is actual or imminent; (2) a causal connection between the asserted injury and the challenged conduct, such that the injury is fairly traceable to the defendant's acts or omissions; and (3) a likelihood that the injury will be redressed by a favorable judicial decision.

*Election Truth All.*, 2026 WL 1707266, at *4; *see Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992); *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). As "[t]he party invoking federal jurisdiction," a plaintiff "bears the burden of establishing these elements." *Lujan*, 504 U.S. at 561.

"To be cognizable under Article III, an injury must be both concrete and particularized, not generalized and shared equally among all members of the public." *Election Truth All.*, 2026 WL 1707266, at *4. "An injury is particularized when it affects the plaintiff 'in a personal and individual way.'" *Id.* (quoting *Lujan*, 504 U.S. at 560 n.1). "An injury that amounts to a generalized grievance shared by all citizens in common does not suffice to confer standing, regardless of its subjective importance to any individual plaintiff." *Election Truth All.*, 2026 WL 1707266, at *4.

Claims that a registered voter's votes *may* not have been counted "fairly or accurately" or that a voting machine was not properly certified under state or federal law are routinely dismissed in the Third Circuit for lack of standing because such

claims are speculative and not particularized. *Forman v. Schmidt*, No. 25-2013, 2026 WL 810648, at *1 (3d Cir. Mar. 24, 2026) (affirming that such claims are generalized grievances and denying leave to amend under circumstances where the plaintiff claimed that ES&S election equipment contained "security vulnerabilities" and provided "no mechanism for voters to verify their ballots are tabulated correctly" and where plaintiff asserted there was a failure to comply with state and federal law certifying the voting system); *Election Truth All.*, 2026 WL 1707266, at *5 (noting allegations relating to whether or not a ballot was cast "must rest on factual content sufficient to permit the inference to be drawn; a conclusory statement of the legal conclusion that a plaintiff's vote 'was not counted fairly' is not sufficient to establish a fact"); *Pub. Int. Legal Found. v. Sec'y Commonwealth of Pa.*, 136 F.4th 456, 468 (3d Cir. 2025) (holding the Plaintiff lacked standing on claims that voting records should have been provided by the Defendant, but were not); *1789 Found., Inc. v. Schmidt*, 781 F.Supp.3d 282, 310-11 (M.D. Pa. 2025) (collecting cases); *see also Md. Election Integrity, LLC v. Md. State Bd. of Elections*, 127 F.4th 534, 540 (4th Cir. 2025) ("The vote dilution caused by the counting of an unknown number of invalid third-party votes affects all voters in a State in the same way. That generalized injury cannot support Article III standing.").

Furthermore, claims of vote dilution "cannot support standing because the alleged harm is shared in equal measure by all voters in the relevant jurisdiction." *Election Truth All.*, 2026 WL 1707266, at *5 (citation modified). "While 'a vote ... counted illegally' may have 'a mathematical impact on the final tally and thus on the

proportional effect of every vote, no single voter is specifically disadvantaged.'" *Id.* (quoting *Martel v. Condos*, 487 F.Supp.3d 247 (D. Vt. 2020)). "In other words, 'dilution is suffered equally by all voters and is not particularized for standing purposes.'" *Id.*

*a. Injury-in-Fact: Plaintiffs Allege Only Generalized Grievances*

Plaintiffs' alleged injuries fail to satisfy Article III's concrete-and-particularized requirement. Each individual Plaintiff claims that his or her vote in the November 2024 general election "was not counted" or "was offset by manufactured votes." Compl. ¶¶ 6, 7, 8. Yet no Plaintiff alleges that his or her specific ballot was miscounted, lost, or altered. To the contrary, the Complaint expressly concedes that "Plaintiffs do not allege that they know their own 2024 ballots were altered." Compl. ¶ 29. This is precisely the type of generalized grievance—shared equally by every voter in Cambria County—that this Court has already held insufficient to confer standing in this very case. *See Election Truth All.*, 2026 WL 1707266, at *5 (citation modified) ("[D]ilution is suffered equally by all voters and is not particularized for standing purposes.") (citation modified).

Plaintiffs attempt to particularize their injuries through statistical analysis, alleging deviations between predicted and actual vote shares in their respective precincts. *See* Compl. ¶¶ 35, 42, 49. But the Third Circuit has squarely held that a voter's claim that his or her votes may not have been counted "fairly or accurately" does not state a particularized injury. *See Forman*, 2026 WL 810648, at *1–2 (affirming dismissal where plaintiff alleged ES&S equipment contained "security vulnerabilities" and provided "no mechanism for voters to verify their ballots are

tabulated correctly"). Statistical correlations between turnout and vote share do not demonstrate that any individual Plaintiff's ballot was affected—they demonstrate, at most, countywide patterns that affect the electorate as a whole. This is the very definition of a generalized grievance.

*b. Causation: Plaintiffs' Injuries Are Not Fairly Traceable to ES&S*

Even assuming arguendo that Plaintiffs had alleged a cognizable injury, they have not established that any such injury is "fairly traceable" to ES&S. *See Lujan*, 504 U.S. at 560. The Complaint does not allege that ES&S miscounted a single ballot, *operated* a single voting machine on Election Day, made any decision about how to handle any ballot-scanning failure on November 5, 2024, or participated in the ballot-duplication process. The Complaint's narrative of Election Day harm (e.g., the missing TIS marks, the county-wide scanning failure, the storage of ballots in emergency bins, the decision to duplicate ballots without chain-of-custody documentation) all concern the conduct of Cambria County officials, not ES&S. *See* Compl. ¶¶ 102–108.

ES&S is a private vendor that provides software and equipment under contract with counties. *See* Compl. ¶ 12. It is the Secretary of the Commonwealth who certifies voting systems for use in Pennsylvania (*see* 25 P.S. § 3031.5) and it is the County Board of Elections that acquires, programs, tests, deploys, and operates those systems on Election Day. Compl. ¶¶ 134–139. The Complaint itself demonstrates that the chain of causation runs through government actors: Secretary Schmidt certified the EVS 6.3.0.0 software family (Compl. ¶ 129); Cambria BOE certified completion of

L&A testing (Compl. ¶ 135); Cambria BOE decided to duplicate ballots without records (Compl. ¶ 136). ES&S's role in providing the equipment is too remote to satisfy the causation requirement, particularly where, as here, the Complaint identifies independent chains of government conduct that fully account for the alleged harm.

The Complaint's "Causation" section directed at ES&S (Compl. ¶¶ 122–127) alleges that ES&S had knowledge of hash-validation deficiencies and failed to disclose them. But knowledge of a software condition, even assuming the truth of the allegations, does not constitute the type of "affirmative action" that "directly and plausibly" causes a voter's injury. *Election Truth All.*, 2026 WL 1707266, at *6. The Complaint does not allege that the hash-validation deficiencies were actually exploited in Cambria County, that any unauthorized modification of the software occurred, or that the Election Day scanning failure was caused by a software vulnerability rather than by the absence of TIS marks on printed ballots (a printing defect having nothing to do with ES&S software).

*c. Redressability: Relief Against ES&S Cannot Remedy the Alleged Injuries*

Plaintiffs' requested relief against ES&S specifically, the production of "source code, build records, engineering change records, hardware documentation, and access and audit logs" (Compl. ¶ 170), is not the type of relief that redresses the alleged injury of vote dilution. Producing source code does not "un-count" any allegedly invalid ballot, restore the weight of Plaintiffs' votes, or prevent future vote dilution. The relief Plaintiffs actually seek, specifically, examination of election systems, hand-

counting of ballots, orders to ensure future accuracy, lies exclusively within the authority of the government defendants, Secretary Schmidt and Cambria BOE. *See* Compl., Prayer for Relief ¶¶ A–F (requesting relief directed at government conduct).

Moreover, ordering ES&S to produce proprietary source code and engineering records would run afoul of the trade secret doctrine. Plaintiffs cannot manufacture standing against a private party by requesting discovery-like relief in the guise of injunctive relief.

*d. ETA Lacks Associational Standing*

"[O]rganizational plaintiffs may establish standing in one of two separate ways." *Election Truth All.*, 2026 WL 1707266, at *4. "An organization may assert a direct organizational injury, provided the challenged conduct has concretely frustrated the organization's specific programmatic activities and caused it to divert resources in a demonstrable and non-speculative way." *Id.*

> [A]n organization may assert associational standing on behalf of its members if: (a) at least one member would independently have standing to sue in his or her own right; (b) the interests the organization seeks to vindicate are germane to its organizational purpose; and (c) neither the nature of the claim nor the relief requested requires the participation of individual members in the lawsuit.

*Id.*

Because ETA's associational standing turns on whether at least one of its individual members would independently have standing to sue in his or her own right, and because the individual Plaintiffs lack standing to sue as set forth above, ETA also lacks standing to bring suit against ES&S. *See id.* at *7; *1789 Found.*, 781 F.Supp.3d at 311-12; *see also FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 395

(2024) ("An organization that has not suffered a concrete injury caused by a defendant's action cannot spend its way into standing simply by expending money to gather information and advocate against the defendant's action.").

In sum, because Plaintiffs alleged merely a general interest common to all members of the public and have not alleged causation or any redressable harm, Plaintiffs do not have standing to bring this action and amendment would be futile. As a result, this Court cannot exercise subject-matter jurisdiction over the claims[1] asserted against ES&S.

***ii. Political Question Doctrine***

Additionally, this Court should find that Plaintiffs' claims are non-justiciable political questions. In the seminal case *Baker v. Carr*, the U.S. Supreme Court explained that "[i]t is the relationship between the judiciary and the coordinate branches of the Federal Government, and not the federal judiciary's relationship to the States, which gives rise to the 'political question.'" *Baker*, 369 U.S. at 210.

The High Court in *Baker* created a list of factors that, if any one factor is present, results in an issue being a non-justiciable political question. *Id.* at 217. The *Baker* factors are:

> [1] A textually demonstrable constitutional commitment of the issue to a coordinate political department; [2] or a lack of judicially discoverable and manageable standards for resolving it; [3] or the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; [4] or the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; [5] or an unusual need for

[1] This includes all cognizable claims asserted against ES&S in the Complaint.

> unquestioning adherence to a political decision already made; [6] or the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

*Id.*; *Gross v. German Found. Indus. Initiative*, 456 F.3d 363, 377 (3d Cir. 2006) ("A finding of any one of the six factors indicates the presence of a political question.").

The *Agre* court noted:

> [T]the Framers decided that the States would have broad discretion in choosing the manner in which elections would be held. Yet, fearful of abuse, the Framers installed a check on that power. As the text of the Elections Clause makes clear, that check is action by Congress. 'Prominent on the surface of any case held to involve a political question is found a textually demonstrable constitutional commitment of the issue to a coordinate political department . . .'

*Agre v. Wolf*, 284 F.Supp.3d 591, 620 (E.D. Pa. 2018)(quoting *Baker*, 369 U.S. at 217).

Plaintiffs' claims present non-justiciable political questions. Every *Baker* factor is present in Plaintiffs' claims. Under the first factor, how ballots are to be cast and the method of conducting elections has been constitutionally committed to the legislature. *See* U.S. CONST. art. I, § 4, cl. 1. Under the second, third, and fourth factors, there is no way for the Court to determine which method of counting ballots would be most accurate and desirable without making a policy determination, which subject matter, as noted, has been committed to the legislature. Any determination from this Court on the issues that have been presented by Plaintiffs would result in a ruling from the Court that the legislature is not capable of conducting elections with integrity. As to the fifth factor, the legislature has already determined the most accurate way to tally votes cast. *See* Pa. Const. Art. VII. It is not a court's role to second guess a reasonable policy determination made by the legislature. Finally, as to the sixth factor, it would be quite confusing to "the People" if the judiciary and

legislature had different pronouncements as to the "proper" way to conduct an election. The power was given to the legislature to decide how to conduct elections.

Plaintiffs seek to usurp the powers delegated to the Pennsylvania General Assembly through the Pennsylvania Constitution and United States Constitution by requesting this Court legislate from the bench. *See* Pa. Const. Art. II, § 1. Thus, regardless of Plaintiffs' complaints about the method of conducting elections, the manner in which elections are conducted is an issue for the General Assembly and not within the purview of this Court. Therefore, Plaintiffs' claims should be dismissed as non-justiciable political questions.

### B. Courts Nationwide Uniformly Reject Lawsuits Challenging Elections Similar to the Present Action

After the 2020 Presidential election, courts all across the United States were flooded with allegations of vote dilution and election fraud. The following cases are prime examples of courts dismissing analogous claims for lack of standing:

#### *i. Montana*

In *Grey v. Jacobsen*, No. CV-22-82-M-BMM, 2022 WL 9991648 (D. Mont. Oct. 17, 2022), Grey alleged that the defendants (including ES&S) "conspired to tamper with Montana voter ballots, as well as cover up the conspiracy, by using ES&S software during the 2020 Election." *Id.* at *1. The court concluded that Grey lacked standing to bring his action because he failed to allege he was a registered voter in Montana or that he voted in the 2020 Presidential election in Montana. *Id.* at *4. The court also reasoned that Grey lacked standing when he failed to allege that the purported wrongdoing was the proximate cause of some specific injury he suffered.

*Id.* at *3 (*e.g.*, Grey failed to allege that the purported tampering affected his ballot).

The *Grey* court held that Grey's complaint was non-justiciable when his "Amended Complaint, viewed as a whole, present[ed] a 'generalized grievance about the operation of government, or about the actions of the Defendants on the operation of government, resulting in abstract harm to all registered voting [Montanans].'" *Id.* (quoting *O'Rourke v. Dominion Voting Sys. Inc.*, No. 20-cv-03747-NRN, 2021 WL 1662742, at *5 (D. Colo. Apr. 28, 2021).

The court further noted that "Grey's allegations against Defendants mirror recycled claims that courts across the country have repeatedly rejected following the 2020 Election." *Grey*, 2022 WL 9991648 at *3.

***ii. Colorado***

In *O'Rourke v. Dominion Voting Sys. Inc.*, the District of Colorado dismissed a complaint brought by Colorado residents and voters alleging "a vast conspiracy between . . . various election officials . . . along with Dominion Voting Systems, Inc.— a private supplier of election and voting technology [among others]." *Id.* at *1. The plaintiffs claimed that "Defendants engaged in concerted action to interfere with the 2020 presidential election through a coordinated effort to, among other things, . . . use unreliable voting machines, [and] alter votes through an illegitimate adjudication process, . . . all prohibited by the Constitution." *See id.* The court determined that the plaintiffs had merely alleged a "generalized grievance" that failed to satisfy the standing requirements. *See id* at *5-6 ("It should be no surprise to Plaintiffs or their counsel that their generalized grievances about their votes being diluted or other

votes being improperly counted would be insufficient to grant them [] standing”).

***iii. Pennsylvania***

In *Donald J. Trump for President, Inc. v. Boockvar*, 493 F.Supp.3d 331 (W.D. Pa. 2020), the plaintiffs alleged that the implementation of a mail-in voting plan for the 2020 presidential election violated the federal and Pennsylvania constitutions. *See id.* at 341. The Pennsylvania court held that the plaintiffs lacked the “concrete” and “particularized” injury necessary for Article III standing, determining that the “claimed injury of vote dilution caused by possible voter fraud [was] too speculative to be concrete.” *Id.* at 377.

***iv. Nevada***

In *Donald J. Trump for President, Inc. v. Cegavske*, 488 F.Supp.3d 993 (D. Nev. 2020), the plaintiffs alleged that the Nevada statute expanding mail-in voting was unconstitutional. *See id*. at 997. To support its allegations, the plaintiffs cited studies and news articles on the subject. *Id.* at 1000. The court determined that “plaintiffs' claims of a substantial risk of vote dilution ‘amount to general grievances that cannot support a finding of particularized injury as to [p]laintiffs’” because the plaintiffs failed to describe how they would be harmed by vote dilution while other voters would not. *Id.* (quoting *Paher v. Cegavske*, No. 3:20-cv-00243-MMD-WGC, 2020 WL 2748301, at *4 (D. Nev. May 27, 2020)). The court dismissed the action for lack of standing, finding that the claimed injury was “impermissibly generalized” and “speculative.” *Cegavske*, 488 F.Supp.3d at 1000.

***v. Arizona***

In *Bowyer v. Ducey*, No. 506 F.Supp.3d 699 (D. Ariz. 2020), the plaintiffs brought claims under both the Elections Clause and the Equal Protection Clause based on vote dilution. *See id.* at 707. The court held that these allegations were inadequate to establish Article III standing, reasoning "that these allegations are nothing more than generalized grievances that any one of the 3.4 million Arizonans who voted could make if they were so allowed." *Id.* at 711. The court noted that the Plaintiffs only raised "a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large." *Id.* at 712 (citation modified).

***vi. Wisconsin***

In *Feehan v. Wisconsin Elections Commission*, 506 F.Supp.3d 596 (E.D. Wis. 2020), the plaintiff alleged that he was a registered voter but failed to allege he voted in the election he asked the court to decertify. *See id.* at 607 (alleging he voted for Trump, for the first time, in response to defendants' motion to dismiss). Feehan alleged that his vote had been diluted by "the possibility of unlawful or invalid ballots being counted." *Id.* at 608. The court dismissed the suit for lack of standing because the claimed injury was not particularized. The court reasoned that "the notion that a single person's vote will be less valuable as a result of unlawful or invalid ballots being cast is not a concrete and particularized injury necessary for Article III standing." *Id.* (quoting *Moore v. Circosta*, 494 F.Supp.3d 289, 312 (M.D.N.C. 2020)).

***vii. Iowa***

In *Iowa Voter Alliance v. Black Hawk County*, 515 F.Supp.3d 980 (N.D. Iowa Jan. 27, 2021), the plaintiffs challenged Iowa counties' acceptance of CTCL grants which were intended to assist with the unforeseen costs of conducting an election during the COVID-19 pandemic. *See id*. at 986. The court dismissed the complaint, finding no concrete and particularized injury to their right to vote or to their rights under the Fourteenth and Ninth Amendments. *See id.* at 990-92.

**C. Plaintiffs Failed to State Any Plausible Claim for Relief.**

If the Court agrees with ES&S that Plaintiffs' claims are non-justiciable, then, ES&S respectfully submits, the Court should end its analysis at that determination rather than conducting any further analysis under Rule 12(b)(6). Only if the Court determines that Plaintiffs' claims are justiciable should the Court then analyze ES&S's Rule 12(b)(6) arguments below.

***i. Section 1983***

42 U.S.C. § 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

*Id.*; *Berg v. County of Allegheny*, 219 F.3d 261, 268 (3d Cir. 2000) (per curiam) (noting that because "Section 1983 is not a source of substantive rights," a "plaintiff must allege a violation of a federal right" to state a claim). The Third Circuit has found that

claims under Section 1983 relating to one's inability to verify that one's votes were tabulated accurately "does not amount to a violation of any right protected by those constitutional provisions." *Forman*, 2026 WL 810648, at *2.

"There are limited circumstances, however, in which private parties can be liable under § 1983 for acts committed under color of law." *M.B.*, 375 F.Supp.3d at 595. The "public function" test is used to determine whether a private actor is effectively a state actor. *See id.* "The gravamen of the 'public function' test is whether the government is effectively using the private entity in question to avoid a constitutional obligation or to engage in activities reserved to the government." *Id.* at 596 (citation modified). "The test therefore asks whether the private entity has exercised powers that are traditionally the *exclusive* prerogative of the state, and courts emphasize the 'exclusivity' aspect of the test." *Id.* (citation modified).

The State's exclusive public function with respect to elections is organizing, regulating, and supervising them—not manufacturing or providing the equipment used in them. ES&S does not organize Pennsylvania's elections, does not regulate them, and does not supervise the casting or counting of ballots on Election Day. It is a commercial vendor that designs, manufactures, licenses, and services election software and hardware, and that provides technical support to the counties that actually run elections.

The Complaint's own allegations confirm ES&S's limited, commercial role. Plaintiffs allege that ES&S "programs election definitions" (Compl. ¶ 167), but the definitions themselves are provided by the State; ES&S merely inputs them into its

software. Plaintiffs allege that ES&S "instructs county officials on required testing and on treatment of software-integrity warnings" (*Id.*), but advising customers on how to use a commercial product is not exercising a governmental function. Plaintiffs allege that ES&S "supplies and validates the software that counts ballots" (*Id.*), but providing a tool that government officials use to perform a government function is categorically different from performing the function itself. Plaintiffs allege that ES&S "directed Cambria County officials in the handling of ballots during the election" (*Id.*) but directing a customer how to use equipment is different from directing the method of how votes are tabulated. As the court explained in *M.B.*, the question is whether the private entity is "effectively" being used "to avoid a constitutional obligation or to engage in activities reserved to the government." 375 F.Supp.3d at 596. ES&S does neither.

Moreover, the Third Circuit has specifically held that a voter's claim about the inability to verify that votes were tabulated accurately "does not amount to a violation of any right protected by" the constitutional provisions invoked. *Forman*, 2026 WL 810648, at *2. If there is no constitutional violation, there can be no § 1983 liability—regardless of whether the defendant is a state actor.

Plaintiffs alternatively allege that ES&S is "a willful participant in joint action with the county boards." Compl. ¶ 167. But the Complaint's factual allegations demonstrate the opposite: ES&S's relationship with Pennsylvania counties is a standard, arm's-length commercial transaction. ES&S "contracts directly with Pennsylvania counties" to provide software and equipment (Compl. ¶ 12), "submits

its systems to the Pennsylvania Department of State for certification" (Compl. ¶ 12), and "provides operational guidance and technical support to county election officials" (Compl. ¶ 12). These are the ordinary activities of any commercial vendor providing goods and services to government customers. A contractual relationship between a vendor and a government entity does not, standing alone, convert the vendor into a state actor.

The joint-action test requires a showing that the state and the private party are "joint participants" in the challenged activity. The Complaint does not allege that ES&S jointly decided with Cambria County how to conduct the election, how to handle the ballot-scanning failure, or how to duplicate ballots. To the contrary, the Complaint's narrative of Election Day events makes clear that all of those decisions were made by county officials. Compl. ¶¶ 102–108, 134–139. ES&S was not a participant in those decisions, and its provision of software and equipment under a prior contract does not make it a joint actor in the county's subsequent election-day decision-making.

Finally, there is no actual relief requested of ES&S apart from the production of documents, which could be requested through a subpoena process. Compl. ¶ 170. This is not a request for injunctive relief to prevent a constitutional violation; it is a demand for discovery disguised as a cause of action. Plaintiffs seek to use § 1983 as a vehicle for obtaining ES&S's proprietary and trade-secret materials without establishing any underlying right to such materials.

Such materials, if needed for any legitimate litigation purpose, can be

requested through the ordinary discovery process—including subpoena of a non-party under Federal Rule of Civil Procedure 45. The § 1983 claim against ES&S is therefore not merely legally deficient—it is unnecessary to any relief Plaintiffs could legitimately seek.

For these reasons, ES&S respectfully submits that Plaintiffs have failed to state a claim for relief.

***ii. Necessary Party***

As to Plaintiffs' alternative argument, ES&S is not a necessary party to this action. A necessary party under Federal Rule of Civil Procedure 19(a)(1)(A) is one that "in that person's absence, the court cannot accord complete relief among existing parties." There are no allegations against the remaining Defendants that would require ES&S to be a party to this lawsuit. The Complaint's primary prayer for relief seeks relief directed at government conduct: that the government defendants determine the cause of discrepancies, conduct examinations and recounts, and implement procedures to ensure future accuracy. Compl., Prayer for Relief ¶¶ A–F. If the Court were to order Secretary Schmidt to re-examine the EVS software, or to order Cambria BOE to use different equipment or conduct additional testing, those orders would bind the government defendants directly. ES&S need not be a party for the Court to issue such relief. Accordingly, ES&S submits that it is not a necessary party to this action.

## IV. Conclusion

For the foregoing reasons, Defendant Election Systems & Software, LLC respectfully requests that the Court dismiss Plaintiffs' Third Amended Complaint as against ES&S with prejudice, and grant ES&S such other and different relief as the Court deems appropriate.

Dated this 4th day of September 2026.

Respectfully submitted,

By: */s/ John Matson*

John V. Matson. (Neb. Bar #25278)
Kendra M. Vosler (Neb. Bar #27686)
KOLEY JESSEN P.C., L.L.O.
One Pacific Place, Suite 800
1125 South 103rd Street
Omaha, NE 68124-1079
(402) 390-9500
(402) 390-9005 (facsimile)
John.Matson@koleyjessen.com
Kendra.Vosler@koleyjessen.com

*Attorneys for Defendant Election Systems & Software, LLC.*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 4th day of September, 2026, the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system, which sent notification to all CM/ECF participants.

*/s/ John Matson*
John V. Matson