**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ELECTION TRUTH ALLIANCE, JENNIFER REESE, CHRISTOPHER MACK, and GRACE HOHMAN,<br><br>Plaintiffs,<br><br>v.<br><br>AL SCHMIDT, in his official capacity as Secretary of the Commonwealth of Pennsylvania; BOARD OF ELECTIONS OF CAMBRIA COUNTY; ELECTION SYSTEMS & SOFTWARE, LLC; and JOHN DOE,<br><br>Defendants. | : ELECTRONICALLY FILED<br>: CIVIL NO. 1:25-cv-00329-SPB<br>:<br>: HONORABLE SUSAN PARADISE<br>: BAXTER |

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE FOURTH AMENDED COMPLAINT, AND IN RESPONSE TO SECRETARY SCHMIDT'S OPPOSITION**

## I. INTRODUCTION

Plaintiffs Election Truth Alliance, Jennifer Reese, Christopher Mack, and Grace Hohman submit this reply in response to the Opposition filed by Defendant Al Schmidt, Secretary of the Commonwealth of Pennsylvania ("Secretary Schmidt" or "the Secretary") [ECF No. 91], to Plaintiffs' Motion for Leave to File a Fourth Amended Complaint [ECF No. 77]. Defendant Board of Elections of Cambria County joins these arguments, with the exception of the Eleventh Amendment argument. ECF No. 92 at 1 & n.1. Plaintiffs' reply to Cambria's separate factual arguments is filed concurrently and incorporated here by reference.

The Secretary's Opposition argues that the proposed Fourth Amended Complaint (i) still fails to plead a concrete, particularized injury-in-fact; (ii) still fails to plead causation traceable to the Secretary rather than to Defendant John Doe's intervening conduct; (iii) seeks relief this Court has already held non-redressable, or that in any event is barred by Eleventh Amendment

immunity because no ongoing violation is alleged; and (iv) fails to state an Equal Protection claim, a standalone Section 1983 claim, or a Declaratory Judgment Act claim. ECF No. 91 at 5–24.

The Secretary's arguments are better resolved on a later, fully briefed motion directed at the operative pleading, but for the purposes of this response, Plaintiffs take each argument in turn, in the order the Secretary raises it. Some of the Secretary's points may be well taken and are candidly acknowledged: the retrospective relief Plaintiffs originally sought is, as this Court has already held, not redressable; Plaintiffs do not repeat that request here. Op., Dkt. No. 67 at 13. But as to the injury-in-fact, causation, and *Ex parte Young* arguments that go to the heart of this motion, the proposed Fourth Amended Complaint pleads specific, non-conclusory facts that respond directly to the deficiencies this Court identified in its June 12, 2026 Opinion, and that the Secretary's Opposition does not fully meet.

## II. THE SECRETARY'S STANDING, IMMUNITY, AND MERITS ARGUMENTS ARE PROPERLY RESERVED FOR A FULLY BRIEFED RULE 12 MOTION DIRECTED AT THE OPERATIVE PLEADING

Before reaching the merits of the Secretary's arguments, it must be noted what those arguments actually are. The bulk of the Secretary's Opposition — its injury-in-fact, causation, Eleventh Amendment, and Equal Protection arguments, ECF No. 91 at 5–24 — is an extended Rule 12(b)(1) and 12(b)(6) argument addressed to a pleading that is not yet operative. Defendant Board of Elections of Cambria County raises no independent standing or merits argument of its own; it simply joins the Secretary's. ECF No. 92 at 1, 3.

Futility is a proper ground for denying leave to amend only where the deficiency is apparent from the face of the proposed pleading — the same standard of legal sufficiency that

governs a motion under Rule 12(b)(6). *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1434 (3d Cir. 1997) ("'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted."); *Great W. Mining & Mineral Co. v. Fox Rothschild LLP,* 615 F.3d 159, 174–75 (3d Cir. 2010) (futility is assessed under "the same standard of legal sufficiency as applies under Rule 12(b)(6)"). Courts deny leave on futility grounds only in the rare case where futility is certain from the face of the complaint, not merely arguable; such denials are reviewed rigorously on appeal. *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.,* 786 F.3d 510, 519–20 (7th Cir. 2015). And in this Circuit, a district court must permit a curative amendment unless doing so would be inequitable or futile. *Phillips v. County of Allegheny,* 515 F.3d 224, 236 (3d Cir. 2008); *Alston v. Parker,* 363 F.3d 229, 235 (3d Cir. 2004).

The Secretary's arguments here do not identify a deficiency apparent from the face of the proposed pleading. They are eighteen pages of contested legal argument on questions this Circuit has not squarely resolved: whether the ballot-specific allegations addressed in Section III below state a particularized injury distinct from the county-wide statistics this Court has already found insufficient; whether the Secretary's own continuing certification authority, addressed in Section IV, supplies causation independent of any third party's conduct; whether that same continuing authority is the kind of "ongoing violation" *Ex parte Young* requires, addressed in Section V; and whether the fraud-based dilution theory addressed in Section VI falls within the "uncharted territory" *Bognet v. Secretary Commonwealth of Pa.,* 980 F.3d 336, 356 (3d Cir. 2020), left open. These are precisely the kind of questions properly resolved with the benefit of full briefing on a motion directed at the operative pleading, not compressed into a reply on a motion for leave.

That full briefing is coming regardless of how this motion is resolved. The Secretary's own Opposition states: "For the same reasons herein, this Court should also dismiss Plaintiffs'

third amended complaint. Defendants' response to that complaint is due on September 14, 2026. Order, Dkt. No. 70." ECF No. 91 at 1 n.1. Whether or not leave is granted, the Secretary intends to press these same standing, immunity, and merits arguments against whichever complaint is operative, in a formal response due within days. Nothing is lost, and considerably more is gained — for both sides, and for the Court — by resolving genuinely contested questions of this kind on that fuller record rather than on the abbreviated briefing a reply in support of a motion for leave allows.

Plaintiffs address each of the Secretary's remaining arguments below, in the order raised, in the alternative: not because the Court need resolve them on this motion, but because the proposed pleading independently satisfies each requirement the Secretary contests.

## III. THE INDIVIDUAL PLAINTIFFS NOW ALLEGE A CONCRETE, PARTICULARIZED INJURY TO THEIR OWN SPECIFIC BALLOTS

### A. The proposed pleading meets the standard set out in the Curt's prior opinion

This Court has already told Plaintiffs what a sufficient injury-in-fact allegation looks like: "[w]here a voter can demonstrate that his or her specific ballot was, as a concrete and non-speculative matter, miscounted or not tabulated at all as a result of identifiable government action, a particularized injury exists to support standing. However, the allegation of such a personal injury must rest on factual content sufficient to permit the inference to be drawn[.]" Op., ECF No. 67 at 10. The Secretary is correct that the second amended complaint did not meet that standard, and correct that a bare statistical-deviation theory, standing alone, does not either — this Court so held, and the Third Circuit's decisions in *Bognet v. Secretary Commonwealth of Pa.,* 980 F.3d 336 (3d Cir. 2020), and *Forman v. Schmidt,* No. 2:24-cv-266, 2025 WL 1207739

(W.D. Pa. Apr. 25, 2025), aff'd per curiam, No. 25-2013, 2026 WL 810648 (3d Cir. Mar. 24, 2026), confirm it.

The proposed Fourth Amended Complaint does not rest on that theory alone. Each individual Plaintiff now pleads three distinct injuries, only one of which is the county-wide statistical dilution theory the Secretary's Opposition addresses. Prop. Fourth Am. Compl. ¶ 25. The second — and the one the Secretary's Opposition does not squarely engage — is that each Plaintiff's own, individual, physical ballot could not be scanned at her polling place due to equipment failure that each Plaintiff personally experienced, was therefore necessarily among the ballots Cambria County duplicated in order to tabulate them, and was replaced on the county's records by a copy "prepared by a person whose identity Cambria County did not record," with "no record permitting comparison to the ballot [the Plaintiff] marked." Id. ¶¶ 30–31 (Reese); ¶ 38 (Mack); ¶ 46 (Hohman).

This is not a generalized grievance about the county-wide vote count. It is an allegation, personal to each named Plaintiff, that identifiable government action — Cambria County's practice of duplicating unscannable ballots without creating any record capable of verifying that the duplicate matches the original — makes it impossible for that specific Plaintiff to know whether her own vote was counted as she cast it. Id. ¶ 28 ("[t]he deprivation of the ability to verify that one's own vote was counted as cast is itself a concrete and particularized injury, and it is an injury Defendants' own conduct created").

**B. The Secretary's response goes to the merits of ballot duplication, not to the adequacy of the pleading**

The Secretary's Opposition responds that Pennsylvania law requires duplication of ballots that cannot be read by tabulating equipment, 25 P.S. § 3031.13(3), that most states have similar

procedures, and that "[t]here is nothing inherently nefarious" in that process. ECF No. 91 at 8–9. Plaintiffs do not dispute that duplication is lawful, and do not allege that duplication itself is wrongful. Plaintiffs plead a narrower and different injury: not that Cambria County duplicated their ballots, but that it did so while creating no record by which anyone — Plaintiffs, the County, or this Court — could verify that the duplicate accurately reproduces what each Plaintiff marked. Prop. Fourth Am. Compl. ¶¶ 31, 38, 46, 136. Whether that record-keeping failure is itself unlawful, and whether it in fact resulted in any specific Plaintiff's vote being miscounted, are merits questions for discovery and proof. At the pleading stage, on a motion asking only whether amendment would be futile, the question is whether Plaintiffs have pled specific, non-conclusory facts supporting the inference that their own ballots passed through an unverifiable process as a result of identifiable government conduct. They have.

The county-wide statistical analysis, Prop. Fourth Am. Compl. ¶¶ 108–115, may not by itself support an inference that any particular Plaintiff's specific ballot was miscounted. Op., Dkt. No. 67 at 10–11. Plaintiffs plead that analysis because it corroborates, rather than substitutes for, the ballot-specific allegations addressed above, and because it independently supports ETA's associational standing on a probabilistic theory that does not depend on any individual Plaintiff identifying her own affected ballot. Prop. Fourth Am. Compl. ¶ 50. The individual Plaintiffs' standing does not rise or fall on the statistical theory; it is independently supported by the ballot-specific allegations in Section III.A above.

## IV. THE PROPOSED PLEADING ALLEGES CAUSATION INDEPENDENT OF ANY THIRD PARTY'S CONDUCT

The Secretary argues that even if Plaintiffs have alleged an injury, any such injury is attributable to Defendant John Doe's intervening manipulation of the election system, which

operates as a superseding cause breaking the chain of causation as to the Secretary, Cambria County, and ES&S. ECF No. 91 at 9–10 (citing *Barr v. County of Clarion,* 417 F. App'x 178, 181 (3d Cir. 2011), and *Egervary v. Young,* 366 F.3d 238, 246 (3d Cir. 2004)).

That argument ignores that the proposed Fourth Amended Complaint adds a new section, "Causation: The Conduct of Each Named Defendant," Prop. Fourth Am. Compl. ¶¶ 121–138, drafted specifically to plead a causal chain to each Defendant that does not depend on John Doe's conduct at all. As to the Secretary specifically: he holds the exclusive statutory authority under 25 P.S. § 3031.5 to determine whether an electronic voting system may lawfully be used in Pennsylvania, and the continuing authority to re-examine a certified system and to rescind or condition his approval. Id. ¶ 127. He has not exercised that authority notwithstanding his knowledge of the documented software deficiencies. Id. ¶¶ 129–131. As Plaintiffs plead: "Secretary Schmidt's own exercise of, and failure to exercise, his certification authority is an independent and sufficient link between his conduct and the threatened injury: it is his certification that authorizes the use of these systems in November 2026, and his continuing authority that could condition that use on examination. Prospective relief directed to him would redress the injury regardless of the conduct of any other party." Id. ¶ 132 (emphasis added).

That allegation responds directly to this Court's June 12, 2026 observation that prior pleadings did "not describe with any specificity how any named Defendant was involved in the alleged manipulation." Op., Dkt. No. 67 at 13. The proposed pleading now describes, defendant by defendant, conduct that stands on its own: the Secretary's own certification decision, not any act by John Doe, is what Plaintiffs allege places their November 2026 votes on an unexamined system. Whatever role John Doe's alleged conduct plays in explaining what happened to the 2024 results — relief as to which Plaintiffs no longer press, see Section V below — the

prospective claim against the Secretary rests on the Secretary's own ongoing exercise of a statutory duty that is his alone.

## V. PLAINTIFFS SEEK ONLY PROSPECTIVE RELIEF DIRECTED AT AN ONGOING EXERCISE OF THE SECRETARY'S AUTHORITY

The Secretary is correct that this Court has already held that retrospective relief — hand recounts, forensic audits of the 2024 election, and judicial determination of the accuracy of reported 2024 vote totals — not redressable. Op., Dkt. No. 67 at 13; ECF No. 91 at 11. Plaintiffs do not press that relief here, and to the extent the proposed pleading's prayer can be read to request it, Plaintiffs do not oppose narrowing the requested relief to the prospective, injunctive relief described below.

What remains is prospective relief: examination of the ES&S EVS Version 6 software family, the hardware deployed in Cambria County, and the election management systems used there, before the November 3, 2026 general election. Prop. Fourth Am. Compl. at 4 (prayer), ¶¶ 116–120. The Secretary argues that even this relief falls outside the *Ex parte Young* exception to Eleventh Amendment immunity because it is not tied to "a current and ongoing violation" of federal law — the 2024 election is over, and the 2026 election has not yet occurred. ECF No. 91 at 14 (citing *MCI Telecomm. Corp. v. Bell Atl. Pa.,* 271 F.3d 491, 506 (3d Cir. 2001)); id. at 14–16 (citing *Rothermel v. Dauphin Cnty.,* No. 1:16-cv-1669, 2017 WL 4347522 (M.D. Pa. Sept. 29, 2017), and other cases rejecting speculative-recurrence theories).

The violation Plaintiffs identify, however, is not the 2024 election and is not a prediction that county officials will repeat a past mistake — it is the Secretary's own present, continuing certification of the EVS Version 6 software family for use in Pennsylvania, a decision he has not revisited notwithstanding documented deficiencies, and that remains in effect today. Prop. Fourth

Am. Compl. ¶¶ 128, 130–131. That ongoing certification is what Plaintiffs allege authorizes the system's continued use in the November 3, 2026 general election, an identified and scheduled election now less than two months away. Id. ¶¶ 24, 119. Unlike Rothermel, where the plaintiff could only "postulat[e] that 'some type of breakdown must have occurred'" to support a prediction of future harm, 2017 WL 4347522, at *6, Plaintiffs here identify four specific, currently-existing facts, none of which depends on any prediction about future human conduct: the software family remains certified; the same systems remain deployed in Cambria County; the documented deficiencies have not been remediated; and no examination of any kind has ever been performed on the systems Cambria County will use in November. Prop. Fourth Am. Compl. ¶ 141(a)–(d). Each of those four facts is true today, independent of what may or may not happen on Election Day.

Whether a present certification decision, as opposed to a discrete ongoing act of enforcement, constitutes the kind of "ongoing violation" *Ex parte Young* requires is a genuinely contested question that should not be decided on a Motion for Leave to Amend. This is an issue as to which reasonable minds may disagree; Plaintiffs raise it because it is fairly presented by the proposed pleading, not because the outcome is free from doubt.

## VI. THE PROPOSED PLEADING PRESERVES AN EQUAL PROTECTION CLAIM UNDER THE FRAUD-BASED DILUTION THEORY THAT *BOGNET* LEAVES OPEN

The Secretary argues that Plaintiffs' Equal Protection claim fails under both the traditional prima facie framework and the "class of one" theory recognized in *Village of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000), because Plaintiffs do not allege membership in a protected class or that any Defendant intentionally treated them differently from similarly situated voters without rational basis. ECF No. 91 at 17–20. The Secretary also argues, citing *Donald J. Trump*

*for President, Inc. v. Boockvar,* 493 F. Supp. 3d 331, 390–91 (W.D. Pa. 2020), and *Bognet v. Secretary Commonwealth of Pa.,* 980 F.3d 336, 355 (3d Cir. 2020), that a vote-dilution theory premised on the counting of unlawfully cast ballots does not state a cognizable Equal Protection claim at all, because it would otherwise convert every violation of state election law into a federal constitutional claim. ECF No. 91 at 16–17.

### A. *Boockvar* and *Bognet* address a different theory than the one Plaintiffs plead

*Boockvar* and *Bognet* arose from a dispute over whether ballots that were lawfully cast and lawfully intended to be counted — mail ballots received within an extended deadline — should be counted under a disputed interpretation of state election law. The Third Circuit held that the resulting dilution theory was a generalized grievance because the challenged practices, "assuming they operate to allow the illegal counting of unlawful votes, 'dilute' the influence of all voters in Pennsylvania equally and in an 'undifferentiated' manner and do not dilute a certain group of voters particularly," and because such a vote, "counted illegally, 'has a mathematical impact on the final tally and thus on the proportional effect of every vote, but no single voter is specifically disadvantaged.'" *Bognet,* 980 F.3d at 355.

*Bognet,* however, expressly declined to extend that holding to a claim that specific tallied votes were fabricated and never cast by any actual elector at all. The panel distinguished "casting a vote in accordance with a procedure approved by a state's highest court" — which it held "is not equivalent to 'ballot-box stuffing'" — from "this 'false'-tally type of dilution where the tally was false as a result of a scheme to cast falsified or fraudulent votes," and said the panel was "in uncharted territory when [] asked to declare that a tally that includes false or fraudulent votes is equivalent to a tally that includes votes that are or may be unlawful for non-fraudulent reasons." *Bognet,* 980 F.3d 336 (3d Cir. 2020). In reaching that distinction, *Bognet* itself quoted *Reynolds*

*v. Sims* for the proposition that the right to vote may be neither denied outright "nor diluted by ballot-box stuffing," *Reynolds v. Sims,* 377 U.S. 533, 555 (1964) (citing *Ex parte Siebold,* 100 U.S. 371 (1879), and *United States v. Saylor,* 322 U.S. 385 (1944)), and separately noted that the cases recognizing ballot-box stuffing as an injury to the right to vote have arisen from criminal prosecutions, citing *Anderson v. United States,* 417 U.S. 211, 226 (1974). *Bognet,* 980 F.3d 336. *Bognet* did not decide whether a private civil equal-protection claim premised on that kind of fraud is a generalized grievance; it left the question open.

### B. The proposed pleading falls within the fraud-based line of authority *Bognet* did not foreclose

Plaintiffs do not allege that Cambria County counted ballots that were lawfully cast under a disputed reading of state law, as in *Boockvar* and *Bognet.* They allege that their votes "were not counted for the candidates they voted for and were overridden and offset by manufactured votes not cast by legitimate electors." Prop. Fourth Am. Compl. ¶ 3; see also id. ¶¶ 6–8. That is an allegation of fabricated votes, not a dispute over which lawfully-cast ballots should be tallied — the category of claim *Bognet* expressly left open.

The Third Circuit has granted relief on that theory before. In *Marks v. Stinson,* 19 F.3d 873 (3d Cir. 1994), the court affirmed a finding that fabricated absentee ballots submitted in a Philadelphia state senate election diluted the votes of legitimate electors in violation of the Equal Protection Clause, reasoning that "when a representative exercises that authority under circumstances where the electors have no assurance that he or she was the choice of the plurality of the electors, the legitimacy of the governmental actions taken is suspect." A similar theory has been recognized outside this Circuit: in *Griffin v. Burns,* 570 F.2d 1065 (1st Cir. 1978), voters — not merely the losing candidate — obtained relief after the state retroactively invalidated

absentee and shut-in ballots it had itself issued, on the ground that the process failed to "afford fundamental fairness" to the electors whose votes were affected.

While neither the *Marks* nor *Griffin* cases engaged in an Article III standing analysis of the kind *Bognet* and *Forman v. Schmidt* require both were decided on fully developed evidentiary records after fraud or an invalidating irregularity had been proven, not at the pleading stage against a facial standing challenge. Both involved harm tied to specific, identified ballots or a discrete, identified group of ballots, rather than a county-wide statistical inference alone. While they do not resolve the standing question here, they demonstrate that the Third Circuit and its sister circuits have long treated proven ballot fraud as legally distinct from a dispute over which lawfully-cast ballots should count, which is precisely the distinction drawn in *Bognet* itself.

### C. The individualized, ballot-specific allegations, not the county-wide statistics alone, bring this claim within the *Bognet* line

The distinction *Bognet* draws is not merely doctrinal labeling; it turns on whether the harm alleged is, in *Bognet's* terms, "undifferentiated" and "suffered equally by all voters," or instead tied to identifiable government conduct affecting a specific plaintiff's specific ballot. *Bognet,* 980 F.3d at 355. Plaintiffs' claims do not rest solely on the county-wide statistical showing that 111 of 125 Cambria County precincts exhibit anomalous vote-share deviations, Prop. Fourth Am. Compl. ¶ 113; the individual Plaintiffs' injury-in-fact does not rest on the statistics alone. See Section III.A–B, supra. The ballot-specific allegations addressed in Section III, that each named Plaintiff's own physical ballot was displaced into an unverifiable duplication process as a result of identifiable government action, Prop. Fourth Am. Compl. ¶¶ 30–31, 38, 46 supplies the individualized character *Marks* and *Griffin* share and that *Bognet* found lacking in the claim before it. Plaintiffs present the statistical analysis as corroborating evidence, not as the sole basis for the claim.

### D. Plaintiffs present a narrower class-of-one theory as an independent alternative

Count I also pleads a narrower, precinct-specific differential-treatment theory: that the 111 of 125 Cambria County precincts flagged by Plaintiffs' statistical analysis — including the precincts in which each named Plaintiff voted in 2024 and will vote in 2026 — were subject to the irregularities described in the proposed pleading, while voters in the remaining, unflagged precincts were not. Prop. Fourth Am. Compl. ¶¶ 113–115, 152. While the proposed pleading does not allege that any Defendant intentionally selected the flagged precincts for different treatment, or intentionally caused the statistical pattern Plaintiffs observed — an element *Olech* and its progeny require, see *Hill v. Borough of Kutztown,* 455 F.3d 225, 239 (3d Cir. 2006) , Plaintiffs raise it for completeness and to preserve it. It is not the basis on which this motion should turn since the fraud-based theory addressed in Sections VI.A–C above is Plaintiffs' principal ground for leave to amend Count I.

## VII. COUNT III STATES A CLAIM WHEN READ TO INCORPORATE THE EQUAL PROTECTION ALLEGATIONS ABOVE

The Secretary is correct that Section 1983 does not itself create substantive rights and cannot support a claim standing alone; it is a vehicle for vindicating a right independently secured by the Constitution or a federal statute. ECF No. 91 at 22–23 (citing *Forman v. Schmidt,* No. 25-2013, 2026 WL 810648, at *2 (3d Cir. Mar. 24, 2026); *Malleus v. George,* 641 F.3d 560, 563 (3d Cir. 2011)). The Secretary's own brief recognizes the resolution of this point: Count III should be stricken only "to the extent that this Court interprets Count III as not also encompassing an Equal Protection claim." ECF No. 91 at 23. Count III is properly read to incorporate the Equal Protection allegations pled in Counts I and II against the state-actor Defendants, including the Secretary, and the joint-action and public-function allegations against

ES&S, Prop. Fourth Am. Compl. ¶ 21, that together identify the underlying constitutional right Section 1983 is invoked to vindicate. So read, Count III rises or falls with the Equal Protection claim addressed in Section VI above, and does not present an independent basis to deny leave.

## VIII. COUNT IV IS PROPERLY READ AS A REQUEST FOR DECLARATORY RELIEF ANCILLARY TO THE UNDERLYING CLAIMS, NOT AS A STANDALONE CAUSE OF ACTION

The Secretary correctly notes that the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, creates a remedy rather than an independent cause of action. ECF No. 91 at 23. Plaintiffs do not contend otherwise. Count IV is properly understood as a request for declaratory relief ancillary to, and dependent on, the constitutional claims pled in Counts I through III, consistent with Plaintiffs' invocation of this Court's declaratory-judgment jurisdiction under 28 U.S.C. § 2201(a) in the jurisdictional allegations of the proposed pleading. Prop. Fourth Am. Compl. ¶ 16. To the extent the Court agrees that Count IV should not stand as a separately captioned count, Plaintiffs do not oppose that relief being treated as part of the prayer for relief under Counts I through III rather than as a freestanding claim. That clarification does not bear on whether leave to amend should be granted as to the claims that remain.

## IX. CONCLUSION

For the foregoing reasons, and for the reasons set forth in Plaintiffs' opening brief [ECF No. 78] and reply to Cambria County's Opposition, filed concurrently, Plaintiffs respectfully request that the Court grant their Motion for Leave to File a Fourth Amended Complaint, with

the retrospective relief and standalone Count IV characterization narrowed as described above.

Respectfully submitted,

s/ Timothy D. McNair
Timothy D. McNair, Esquire
PA ID No. 34304
McNair Law Offices, PLLC
821 State Street
Erie, PA 16501
Phone: (814) 452-0700
Attorney for Plaintiffs

**CERTIFICATE OF SERVICE**

I hereby certify that on this 11th day of September, 2026, I caused the foregoing document to be filed with the United States District Court for the Western District of Pennsylvania via the Court's CM/ECF system, which will provide electronic notice to all counsel and parties of record.

s/ Timothy D. McNair
Timothy D. McNair, Esquire