**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ELECTION TRUTH ALLIANCE, JENNIFER REESE, CHRISTOPHER MACK, and GRACE HOHMAN,<br><br>Plaintiffs,<br><br>v.<br><br>AL SCHMIDT, in his official capacity as Secretary of the Commonwealth of Pennsylvania; BOARD OF ELECTIONS OF CAMBRIA COUNTY; ELECTION SYSTEMS & SOFTWARE, LLC; and JOHN DOE,<br><br>Defendants. | : ELECTRONICALLY FILED<br>: CIVIL NO. 1:25-cv-00329-SPB<br>:<br>: HONORABLE SUSAN PARADISE<br>: BAXTER |

**<u>PLAINTIFFS' OPPOSITION TO SECRETARY SCHMIDT'S MOTION TO DISMISS THE THIRD AMENDED COMPLAINT</u>**

## I. INTRODUCTION

Plaintiffs Election Truth Alliance, Jennifer Reese, Christopher Mack, and Grace Hohman submit this opposition to the Motion to Dismiss the Third Amended Complaint filed by Defendant Al Schmidt, Secretary of the Commonwealth of Pennsylvania ("the Secretary") [ECF No. 96]. The Secretary's motion is four pages long and raises no argument of its own; it incorporates by reference in full his prior Opposition to Plaintiffs' Motion for Leave to File a Fourth Amended Complaint [ECF No. 91], adds a single argument concerning the Third Amended Complaint's identification of the software version at issue, and joins the standing arguments raised in Defendant Election Systems & Software, LLC's ("ES&S") motion to dismiss [ECF No. 82, 83]. This opposition responds to each in turn.

Defendant Board of Elections of Cambria County has filed a separate Joinder [ECF No. 99] that likewise incorporates the Secretary's motion and ES&S's motion, and separately incorporates Cambria County's own prior Opposition [ECF No. 92]. Plaintiffs address Cambria County's joinder, and the arguments unique to it, in a separate opposition filed concurrently. Plaintiffs address ES&S's motion, including the standing, political-question, and state-actor arguments the Secretary joins, in a further separate opposition filed concurrently. This brief is confined to the arguments the Secretary raises or incorporates in his own motion.

As explained below, the Third Amended Complaint pleads a concrete and particularized injury to each named Plaintiff's own ballot, independent of the county-wide statistical showing this Court has already held insufficient standing alone; pleads a causal chain to the Secretary that does not depend on the conduct of Defendant John Doe or any other third party; seeks only prospective relief falling within Ex parte Young; and states an Equal Protection claim under the fraud-based ballot-dilution theory the Third Circuit has recognized in binding, undisturbed precedent. Plaintiffs address one matter candidly at the outset: in briefing the motion for leave to amend, both the Secretary and Plaintiffs cited *Bognet v. Secretary Commonwealth of Pa.*, 980 F.3d 336 (3d Cir. 2020), without noting that the Supreme Court vacated that judgment as moot in 2021. Section IV.C below corrects that record. The correction does not change the outcome: the authority *Bognet* was quoting, and the authority Plaintiffs' fraud-based theory independently rests on, are both undisturbed.

## II. STANDARD OF REVIEW

A motion under Rule 12(b)(1) presenting a facial attack on standing requires the Court to consider only the allegations of the complaint, and documents referenced therein, in the light most favorable to the plaintiff. *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014). A motion under Rule 12(b)(6) requires the Court to accept the complaint's well-pled factual allegations as true, construe them in the light most favorable to Plaintiffs, and draw all reasonable inferences in Plaintiffs' favor; dismissal is warranted only if the complaint fails to state a plausible claim to relief. *Lutz v. Portfolio Recovery Assocs., LLC*, 49 F.4th 323, 327–28 (3d Cir. 2022) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## III. THE THIRD AMENDED COMPLAINT ALLEGES A PLAUSIBLE, NON-SPECULATIVE THREAT OF FUTURE INJURY THAT THE REQUESTED RELIEF WOULD PREVENT

### A. The governing standard is this Court's own two-part test for prospective standing

This Court has already told Plaintiffs what is required. Addressing the First Amended Complaint and the proposed Second Amended Complaint, the Court held that a voter's request for prospective relief is not moot where the voter "intends to vote in a future election using the same equipment," but that "[t]he availability of prospective standing requires a plausible, non-speculative threat of future injury traceable to the Defendants' conduct, and a showing that injunctive relief would meaningfully prevent that injury from recurring." *Election Truth All. v. Schmidt*, No. 1:25-CV-329, 2026 WL 1707266, at *14 (W.D. Pa. June 12, 2026). The Court found neither of those pleadings adequate, while expressly noting "it is possible that Plaintiffs could allege facts adequate to do so." Id. The Third Amended Complaint is Plaintiffs' attempt to do exactly that, and

this section addresses that standard directly rather than the backward-looking particularity standard alone.

The Court's standard has two distinct components, and Plaintiffs address each: (1) a plausible, non-speculative threat that the injury will recur in the future, and (2) a showing that the prospective relief actually sought would meaningfully prevent that recurrence. A pleading that only describes what happened in 2024, however concretely, does not by itself satisfy either component; something more forward-looking is required, and the Third Amended Complaint supplies it.

### B. The forward-looking injury is a presently-existing, unremediated defect — not a prediction that a scanning malfunction will recur

The threat of future injury Plaintiffs plead does not depend on predicting that any particular contingent event — a scanner jamming, a ballot misprinting — will happen again at any particular polling place. It rests on a condition that exists right now and will still exist on Election Day 2026: the software-integrity verification mechanism in the EVS software family Plaintiffs will vote on again is documented as containing an unremediated defect, and no examination of it has been performed. Third Am. Compl. ¶ 28. Each named Plaintiff will vote in person in the November 3, 2026 general election, Third Am. Compl. ¶¶ 33, 40, 48, on the same or comparable equipment running the same software family used in 2024. Id. ¶¶ 34, 41. And that condition is not merely alleged in the abstract; it is tied to four presently-existing facts, each independent of any prediction about future human conduct: the software family remains certified; the same systems remain deployed in Cambria County; the documented deficiencies have not been remediated; and no examination has been performed on the systems Cambria County will use in November. Id. ¶ 142(a)–(d). Because that defect is a current condition

rather than a predicted future event, the threat that it will affect each Plaintiff's 2026 vote is not speculative in the sense this Court's standard uses that word — it is close to a certainty, conditioned only on Plaintiffs in fact voting as they have pled they intend to.

### C. The 2024 ballot-duplication event shows the defect's consequences are concrete; Plaintiffs do not need, and do not attempt, to show that the identical malfunction will recur

Plaintiffs address directly what the Third Amended Complaint does not allege: it does not allege that the specific scanning malfunction each named Plaintiff personally experienced in 2024 is certain, or even likely, to recur at that Plaintiff's own polling place in 2026. That would be exactly the kind of prediction about a discrete future event this Court's standard is skeptical of. Plaintiffs do not rest on that prediction. The function the 2024 ballot-duplication allegations serve is different: they show that the software-integrity defect pled in Section III.B is not an abstract or theoretical risk, but one that has already produced a concrete, personal harm to each named Plaintiff once, under conditions that remain unchanged today. Each Plaintiff's own ballot could not be scanned, was necessarily among the ballots Cambria County thereafter duplicated, and was replaced by a copy prepared by a person whose identity Cambria County did not record, with no record permitting comparison to the ballot as marked. Id. ¶¶ 30–32 (Reese), 37–39 (Mack), 44–47 (Hohman).

To the extent the Court's standard also asks whether the duplication practice itself, as opposed to the underlying software defect, is likely to recur, Plaintiffs note — candidly, and without overstating it — that the 2024 duplication was pled as a "county-wide ballot-duplication process," id. ¶ 136, not an isolated event limited to three polling places, and that Cambria BOE "has taken no step to have the systems in its custody

examined before the November 3, 2026 general election, and intends to deploy the same systems in that election." Id. ¶ 138. Given the scale of the 2024 failure and the absence of any pled remediation of either the equipment or the recordkeeping practice that accompanied it, it is a plausible and non-speculative inference — not a certainty, but plausible — that some number of ballots in the 2026 election will again require duplication under a process Cambria County has taken no step to correct. Plaintiffs rely on this as a secondary, corroborating point; the primary basis for the future-injury showing is the persisting software defect addressed in Section III.B, which does not depend on this inference.

### D. The relief Plaintiffs seek would meaningfully prevent the injury from recurring

The second component of this Court's standard — a showing that injunctive relief would meaningfully prevent the injury from recurring — is satisfied by the specific relief requested. Plaintiffs do not seek a recount or an audit of the 2024 results; they seek an independent forensic examination of the software, a physical inspection of the hardware, and a forensic audit of the election management systems, to be completed before the November 3, 2026 general election, with correction of any documented deficiency as a predicate to the systems' continued use. Third Am. Compl., Prayer for Relief ¶¶ B–E. Relief of that kind operates on the injury before it recurs, not after: it is directed at determining whether the documented defect is present in the deployed code and correcting it in advance of the election, which is precisely the kind of relief capable of "meaningfully prevent[ing] that injury from recurring" that this Court's standard requires. Election Truth All., 2026 WL 1707266, at *14. A bare declaration or a post-

election audit would not meet that standard; pre-election examination and correction does.

### E. The Secretary's response goes to the merits of ballot duplication, not to the adequacy of the pleading

The Secretary's Opposition, incorporated here, does not dispute that Pennsylvania law requires duplication of ballots that cannot be read by tabulating equipment, 25 P.S. § 3031.13(3), and contends there is "nothing inherently nefarious" in that process. ECF No. 91 at 8–9. Plaintiffs do not allege that duplication itself is unlawful. The injury pled is narrower: not that Cambria County duplicated these ballots, but that it did so while creating no record by which anyone — Plaintiffs, the County, or this Court — could verify that the duplicate accurately reproduces what each Plaintiff marked. Third Am. Compl. ¶¶ 32, 39, 47, 136. Whether that record-keeping failure is itself unlawful is a merits question for discovery and proof.

The county-wide statistical analysis, id. ¶¶ 109–116, corroborates rather than substitutes for the allegations above, and independently supports ETA's associational standing. Id. ¶ 51. But the individual Plaintiffs' standing does not depend on the statistical theory; it independently rests on the persisting-defect and ballot-specific allegations addressed above.

## IV. THE THIRD AMENDED COMPLAINT ALLEGES CAUSATION INDEPENDENT OF ANY THIRD PARTY'S CONDUCT

The Secretary's incorporated Opposition argues that any injury is attributable to Defendant John Doe's intervening conduct, which operates as a superseding cause as to the remaining Defendants. ECF No. 91 at 9–10 (citing *Barr v. County of Clarion*, 417 F. App'x 178, 181 (3d Cir. 2011); *Egervary v. Young*, 366 F.3d 238, 246 (3d Cir. 2004)).

That argument does not address the section of the Third Amended Complaint that pleads causation defendant by defendant, without reliance on Doe's conduct. Third Am. Compl. ¶¶ 122–142.

As to the Secretary specifically: he holds the exclusive statutory authority under 25 P.S. § 3031.5 to determine whether an electronic voting system may lawfully be used in Pennsylvania, and the continuing authority to re-examine a certified system and to rescind or condition his approval. Id. ¶ 128. He certified, and maintains the certification of, the software family at issue, id. ¶ 129; the underlying deficiencies were and are discoverable in public certification records from Texas and New York, id. ¶ 130; he has knowledge of them and has declined to act, id. ¶ 131; and he has not re-examined the certification, rescinded it, or required remediation, verification, or independent examination as a condition of continued use. Id. ¶ 132. As pled: "Secretary Schmidt's own exercise of, and failure to exercise, his certification authority is an independent and sufficient link between his conduct and the threatened injury: it is his certification that authorizes the use of these systems in November 2026, and his continuing authority that could condition that use on examination." Id. ¶ 133.

That allegation responds directly to this Court's June 12, 2026 observation that prior pleadings did not describe with specificity how any named Defendant was involved in the alleged manipulation. Election Truth All., 2026 WL 1707266, at *6. The Secretary's own certification decision, not any act of Defendant Doe, is what places Plaintiffs' November 2026 votes on an unexamined system.

## V. PLAINTIFFS SEEK ONLY PROSPECTIVE RELIEF, AND EX PARTE YOUNG APPLIES

The persisting-defect showing made in Section III above in support of Article III standing supports the analysis in this Section as well: the same presently-existing facts that make the threat of future injury non-speculative for standing purposes are what make the violation “ongoing” for Ex parte Young purposes. The two doctrines ask closely related questions, and Plaintiffs rely on the same showing to answer both.

The Secretary's incorporated Opposition argues that retrospective relief — recounts, forensic audits of the 2024 results, or judicial determination of the accuracy of reported 2024 totals — is not redressable, and that Eleventh Amendment immunity bars this action because no “ongoing violation” supports the Ex parte Young exception. ECF No. 91 at 11, 14–16 (citing *MCI Telecomm. Corp. v. Bell Atl. Pa.*, 271 F.3d 491, 506 (3d Cir. 2001); *Rothermel v. Dauphin County*, No. 1:16-cv-1669, 2017 WL 4347522 (M.D. Pa. Sept. 29, 2017)).

The first argument does not describe the currrent pleading. The Third Amended Complaint's prayer for relief seeks only a declaration and prospective injunctive relief — independent forensic examination of the software, hardware, and election management systems before the November 3, 2026 election, preservation orders, and expedited discovery directed at identifying Defendant Doe. Third Am. Compl., Prayer for Relief ¶¶ A–K. The Complaint expressly states: “Plaintiffs expressly do not seek, and this Court is not asked to grant, any relief that would set aside, alter, recount, decertify, or otherwise disturb the certified results of the November 5, 2024 general election or of any other past election.” Id. (unnumbered concluding paragraph). There is no retrospective relief in this pleading to narrow.

Plaintiffs recognize that the ongoing-violation argument presents the most difficult question the current pleading raises, and address it directly rather than minimize it. The violation identified is not the 2024 election, and not a prediction that county officials will repeat a past error — it is the Secretary's own present, continuing certification of the software family at issue, a decision he has not revisited notwithstanding documented deficiencies, and that remains in effect today. Third Am. Compl. ¶¶ 128, 130–132. That certification is what authorizes the system's continued use in the November 3, 2026 general election, an identified and scheduled election now weeks away. Id. ¶¶ 25, 142. Unlike a plaintiff who can only speculate that a past malfunction might recur, Plaintiffs identify four presently-existing facts, none dependent on any prediction about future human conduct: the software family remains certified; the same systems remain deployed in Cambria County; the documented deficiencies have not been remediated; and no examination has been performed on the systems Cambria County will use in November. Id. ¶ 142(a)–(d). Whether a present certification decision, rather than a discrete ongoing act of enforcement, satisfies Ex parte Young is a genuinely contested question on which reasonable minds may differ; Plaintiffs raise it because it is fairly presented, not because it is free from doubt.

## VI. THE THIRD AMENDED COMPLAINT STATES AN EQUAL PROTECTION CLAIM UNDER THE FRAUD-BASED DILUTION THEORY

### A. The baseline the Secretary invokes, and where it comes from

The Secretary's incorporated Opposition argues that Plaintiffs' Equal Protection claim fails because a vote-dilution theory premised on the counting of unlawfully cast ballots does not state a cognizable claim, since it would convert every violation of state election law into a federal constitutional claim. ECF No. 91 at 16–17 (citing *Donald J.*

*Trump for President, Inc. v. Boockvar*, 493 F. Supp. 3d 331, 390–91 (W.D. Pa. 2020)). Plaintiffs do not dispute that holding as far as it goes: "[i]f dilution of lawfully cast ballots by the 'unlawful' counting of invalidly cast ballots were a true equal-protection problem, then it would transform every violation of state election law . . . into a potential federal equal-protection claim." Id. at 391. That is a correct statement of the baseline, and it comes from this District's own, undisturbed opinion in *Boockvar*.

### B. A correction to the record on Bognet

The Secretary's Opposition also cites *Bognet v. Secretary Commonwealth of Pa.*, 980 F.3d 336, 355 (3d Cir. 2020), for the proposition that "[a] month later, the Third Circuit quoted the Western District's opinion with approval." ECF No. 91 at 17. Plaintiffs' own reply brief in support of the motion for leave cited the same panel opinion the same way. Neither citation noted that the Supreme Court granted certiorari, vacated that judgment, and remanded with instructions to dismiss the case as moot on April 19, 2021. *Bognet v. Degraffenreid*, 141 S. Ct. 2508 (2021), applying *United States v. Munsingwear, Inc.*, 340 U.S. 36, 39–40 (1950). Under settled practice, that vacatur strips the panel opinion of precedential and preclusive effect; it "clears the path for future relitigation of the issues between the parties" and prevents a judgment that was never reviewed on appeal from binding either side going forward. *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 22–23 (1994). Plaintiffs correct the record and do not rely on *Bognet* as authority. It is nonetheless worth noting, purely as history, that the panel whose judgment was later vacated as moot found the very reasoning at issue here — *Boockvar*'s — persuasive enough to adopt. That observation carries no more weight than what it is: one since-vacated panel's independent agreement with an opinion that remains good law regardless. Plaintiffs rest on *Boockvar* directly.

### C. The Third Amended Complaint does not plead the theory Boockvar rejected; it pleads fabricated votes, a theory the Third Circuit has recognized as legally distinct

*Boockvar* addressed a dispute over whether ballots that were lawfully cast and lawfully intended to be counted — mail ballots received within an extended deadline under a disputed interpretation of state law — should be counted at all. 493 F. Supp. 3d at 390–91. Plaintiffs do not allege that Cambria County counted ballots that were lawfully cast under a disputed reading of state law. They allege that their votes "were not counted for the candidates they voted for and were overridden and offset by manufactured votes not cast by legitimate electors." Third Am. Compl. ¶ 3; see also id. ¶¶ 6–8, 111. That is an allegation of fabricated votes, not a dispute over which lawfully cast ballots should be tallied.

The Third Circuit has recognized relief on that theory before, in a decision that has never been questioned, let alone vacated. In *Marks v. Stinson*, 19 F.3d 873 (3d Cir. 1994), the court affirmed a finding that fabricated absentee ballots submitted in a Philadelphia state senate election diluted the votes of legitimate electors in violation of the Equal Protection Clause, reasoning that "when a representative exercises that authority under circumstances where the electors have no assurance that he or she was the choice of the plurality of the electors, the legitimacy of the governmental actions taken is suspect." Id. A similar theory has been recognized outside this Circuit: in *Griffin v. Burns*, 570 F.2d 1065 (1st Cir. 1978), voters obtained relief after a state retroactively invalidated absentee and shut-in ballots it had itself issued, on the ground that the process failed to afford fundamental fairness to the affected electors.

Plaintiffs raise *Marks* and *Griffin* with their limits acknowledged. Neither engaged in the kind of Article III standing analysis this Court's June 12, 2026 Opinion and *Forman v. Schmidt*, No. 25-2013, 2026 WL 810648 (3d Cir. Mar. 24, 2026), require; both were decided on developed evidentiary records after fraud or an invalidating irregularity had been proven, not at the pleading stage; and both involved harm tied to specific, identified ballots or a discrete group of ballots rather than a county-wide statistical inference alone. Plaintiffs cite them not as cases that themselves resolve the standing question, but as binding and persuasive authority, respectively, that fraud-based ballot dilution is legally distinct from a dispute over which lawfully cast ballots should count — precisely the distinction *Boockvar*'s own reasoning draws.

### D. The individualized, ballot-specific allegations bring this claim within that line

The distinction is not merely doctrinal labeling; it turns on whether the harm alleged is undifferentiated and suffered equally by all voters, or instead tied to identifiable government conduct affecting a specific plaintiff's specific ballot. A claim resting solely on the showing that 111 of 125 Cambria County precincts exhibit anomalous vote-share deviations, Third Am. Compl. ¶ 114, would risk falling on the wrong side of that line for the same reason the individual Plaintiffs' injury-in-fact does not rest on the statistics alone. See Section III, supra. It is the ballot-specific allegations in Section III — that each named Plaintiff's own physical ballot was displaced into an unverifiable duplication process as a result of identifiable government action, id. ¶¶ 32, 39, 47 — that supply the individualized character *Marks* and *Griffin* share. Plaintiffs preserve the statistical analysis as corroborating evidence, not as the sole basis for the claim.

### E. Plaintiffs also preserve a narrower, class-of-one theory as an independent alternative

Count I also rests on a narrower, precinct-specific differential-treatment theory: that the 111 of 125 Cambria County precincts flagged by the statistical analysis — including the precincts in which each named Plaintiff voted in 2024 and will vote in 2026 — were subject to the irregularities described, while voters in unflagged precincts were not. Third Am. Compl. ¶¶ 114–116, 152. Plaintiffs recognize that the pleading does not allege that any Defendant intentionally selected the flagged precincts for different treatment, an element *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000), and *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006), require, and that this remains the weaker of the theories pled. Plaintiffs raise it for completeness and preservation; the fraud-based theory in Sections VI.A–D above is the principal ground on which Count I should survive.

## VII. COUNT II STATES A CLAIM WHEN READ, AS IT MUST BE, TO INCORPORATE THE EQUAL PROTECTION ALLEGATIONS ABOVE

Section 1983 does not itself create substantive rights and cannot support a claim standing alone; it is a vehicle for vindicating a right independently secured by the Constitution. *Berg v. County of Allegheny*, 219 F.3d 261, 268 (3d Cir. 2000) (per curiam). Count II incorporates by reference the preceding averments of the Complaint, Third Am. Compl. ¶ 156, and rests on the same Cambria BOE and Secretary conduct — the false Logic and Accuracy certification, the use of untested equipment, the missing chain-of-custody documentation, the unexplained ballot discrepancies, and the statistical divergence pattern, id. ¶¶ 157–165 — that underlies the Equal Protection claim in Count I. So read, Count II rises or falls with the Equal Protection claim addressed in Section VI above, and does not present an independent basis for dismissal.

## VIII. COUNT IV IS PROPERLY READ AS ANCILLARY DECLARATORY RELIEF, NOT A STANDALONE CAUSE OF ACTION

The Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, creates a remedy rather than an independent cause of action. Plaintiffs do not contend otherwise. Count IV is properly understood as a request for declaratory relief ancillary to, and dependent on, the constitutional claims pled in Counts I through III, consistent with Plaintiffs' invocation of this Court's declaratory-judgment jurisdiction in the jurisdictional allegations of the Complaint. Third Am. Compl. ¶ 17. To the extent the Court concludes Count IV should not stand as a separately captioned count, Plaintiffs do not oppose that relief being treated as part of the prayer for relief under Counts I through III rather than as a freestanding claim. That clarification does not bear on whether the claims that remain should be dismissed.

## IX. THE SECRETARY'S JOINDER IN ES&S'S STANDING ARGUMENTS FAILS FOR THE REASONS STATED IN PLAINTIFFS' OPPOSITION TO ES&S'S MOTION

The Secretary's motion joins "Defendant Election Systems & Software's motion to dismiss the third amended complaint due to lack of standing," citing ES&S's brief at pages 6–9, 11–12, and 14–18. ECF No. 96 at 2. Those pages address injury-in-fact, causation, associational standing, and a survey of out-of-circuit 2020-cycle decisions. Plaintiffs respond to each of those arguments in their concurrently filed Opposition to ES&S's Motion to Dismiss and incorporate that response here by reference rather than repeat it. In brief: the injury-in-fact and causation showing set out in Sections III and IV above answers the standing arguments the Secretary joins, because those arguments and ES&S's are the same arguments directed at the same operative allegations.

## X. THE COMPLAINT'S IDENTIFICATION OF THE SOFTWARE VERSION DOES NOT WARRANT DISMISSAL

The Secretary separately argues that the Third Amended Complaint "misidentifies the software used by Cambria County's election system," and that this makes the pleading "even less plausible as to injury-in-fact and threat of future injury," citing Plaintiffs' concession in their brief in support of the motion for leave that the pleading "rest[s] on an inference that defects documented in one version of the ES&S EVS family are likely present in an adjacent version." ECF No. 96 at 2 (quoting Pls. Br. in Supp. of Mot. for Leave 7, ECF No. 78).

Plaintiffs do not walk back that concession, and address it directly. The Complaint's causation theory has always been pled at the level of the software family, not a single version number: it alleges that ES&S "designed, built, and licensed the EVS 6.3.0.0 software family, including the hash-validation mechanism" whose deficiencies were documented, Third Am. Compl. ¶ 122 (emphasis added), and that the systems Plaintiffs will vote on in 2026 run "the same or comparable ES&S voting equipment, running the same ES&S EVS 6.3.0.0 software family," id. ¶¶ 34, 41 (emphasis added). That family-level framing is precisely why Plaintiffs moved for leave to amend to correct the specific version reference in the first place, rather than treating the correction as immaterial. But an imprecise version number does not make the underlying inference implausible as a matter of law. Neither the Secretary nor Cambria County has identified, in an affidavit or any record document properly before the Court on this facial motion, which version of the EVS 6 family Cambria County in fact uses, or any respect in which that version's hash-validation mechanism differs from the one the Texas and New York records document. Cambria County's own filing states only that it does not use the two

version numbers at issue in a dispute involving a different county, ECF No. 92 at 2 (addressing versions 6.4.0.0 and 6.5.0.0, at issue in Allegheny County's motion), which does not identify what version Cambria County does use, nor does it engage the family-wide hash-validation allegation at all. Whether the family-level inference holds up as to the specific version actually deployed in Cambria County is a factual question for discovery, not one this Court can resolve against Plaintiffs on the face of the pleading.

## XI. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Secretary Schmidt's Motion to Dismiss the Third Amended Complaint.

Respectfully submitted,

MCNAIR LAW OFFICES, PLLC

By: s/ Timothy D. McNair
Timothy D. McNair, Esquire
Pa. ID No. 34304
821 State Street
Erie, PA 16501
(814) 452-0700
(814) 454-2371 (fax)
tmcnair@mcnairlaw.com
Counsel for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on this _5th_ day of October, 2026, I caused the foregoing document to be filed with the United States District Court for the Western District of Pennsylvania via the Court's CM/ECF system, which will provide electronic notice to all counsel and parties of record.

s/ Timothy D. McNair
Timothy D. McNair, Esquire