**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ELECTION TRUTH ALLIANCE, JENNIFER REESE, CHRISTOPHER MACK, and GRACE HOHMAN,<br><br>Plaintiffs,<br><br>v.<br><br>AL SCHMIDT, in his official capacity as Secretary of the Commonwealth of Pennsylvania; BOARD OF ELECTIONS OF CAMBRIA COUNTY; ELECTION SYSTEMS & SOFTWARE, LLC; and JOHN DOE,<br><br>Defendants. | : ELECTRONICALLY FILED<br>: CIVIL NO. 1:25-cv-00329-SPB<br>:<br>: HONORABLE SUSAN PARADISE<br>: BAXTER |

**PLAINTIFFS' OPPOSITION TO DEFENDANT ELECTION SYSTEMS & SOFTWARE, LLC'S MOTION TO DISMISS THE THIRD AMENDED COMPLAINT**

## I. INTRODUCTION

Plaintiffs Election Truth Alliance, Jennifer Reese, Christopher Mack, and Grace Hohman submit this opposition to the Motion to Dismiss the Third Amended Complaint filed by Defendant Election Systems & Software, LLC ("ES&S") [ECF No. 82], and the Memorandum in Support re-filed at ECF No. 89. ES&S argues that Plaintiffs lack Article III standing to sue it; that Plaintiffs' claims present non-justiciable political questions; and that, on the merits, ES&S is not a state actor for purposes of 42 U.S.C. § 1983 and is not a necessary party under Rule 19(a)(1)(A). Secretary Schmidt and Cambria County join ES&S's standing arguments in their own motions [ECF No. 96 at 2; ECF No. 99 at 1]; this brief responds to those arguments as well, and Plaintiffs' concurrently filed

Oppositions to those motions incorporate this brief's analysis by reference for that purpose.

As explained below, Plaintiffs' claims against ES&S are traceable to ES&S's own conduct — not merely to its role as a commercial vendor — and the relief sought against it is integral to the prospective relief the case as a whole seeks. The political question doctrine does not bar a case asking the Court to determine whether requirements Pennsylvania's own election code already imposes were followed, rather than asking the Court to choose among methods of counting ballots. And the Third Amended Complaint pleads specific joint-action conduct sufficient, at the pleading stage, to allege that ES&S acted under color of state law.

## II. PLAINTIFFS HAVE STANDING TO PURSUE THEIR CLAIM AGAINST ES&S

### A. Injury-in-fact: the Complaint does not plead a generalized grievance

ES&S argues that each Plaintiff's alleged injury — that his or her vote was diluted by irregularities in the 2024 election — is a generalized grievance shared equally by every voter in Cambria County, citing this Court's own June 12, 2026 Opinion and the concession at Third Amended Complaint ¶ 29 that Plaintiffs "do not allege that they know their own 2024 ballots were altered." ECF No. 89 at 2, 8 (quoting *Election Truth All. v. Schmidt*, No. 1:25-CV-329, 2026 WL 1707266, at *4–5 (W.D. Pa. June 12, 2026)).

That characterization elides the distinction the Complaint itself draws. Paragraph 29 concedes that Plaintiffs cannot show their 2024 ballots were altered — and pleads why: because Cambria County's own conduct destroyed the means of verification. Third Am. Compl. ¶ 29. The injury pled is not "my vote was altered"; it is "I cannot verify whether

my vote was counted as cast, because of an unverifiable duplication process that identifiable government conduct created," a distinct and, Plaintiffs submit, concrete injury this Court's own standard accommodates: "[w]here a voter can demonstrate that his or her specific ballot was, as a concrete and non-speculative matter, miscounted or not tabulated at all as a result of identifiable government action, a particularized injury exists." Election Truth All., 2026 WL 1707266, at *4. Each named Plaintiff pleads that her own, specific, physical ballot could not be scanned, was therefore necessarily among the ballots Cambria County duplicated, and was replaced by a copy prepared by a person whose identity Cambria County did not record, with no record permitting comparison to the ballot as marked. Third Am. Compl. ¶¶ 30–32 (Reese), 37–39 (Mack), 44–47 (Hohman). That is personal to each named Plaintiff and rests on facts each Plaintiff personally experienced, not on the county-wide statistical showing alone. Id. ¶ 31 ("This is not an inference from statistics. It follows from what Plaintiff Reese personally experienced.").

*Forman v. Schmidt*, No. 25-2013, 2026 WL 810648 (3d Cir. Mar. 24, 2026), does not require a different result. There, the plaintiff alleged only that ES&S equipment contained unspecified "security vulnerabilities" and provided "no mechanism for voters to verify their ballots are tabulated correctly," a generic and equipment-wide claim untethered to any fact particular to that plaintiff's own ballot. Id. at *1–2. Plaintiffs here plead the opposite: specific, personally experienced facts about what happened to each named Plaintiff's own ballot at her own polling place, tied to an identified, unrecorded duplication event. That is precisely the kind of "factual content sufficient to permit the

inference to be drawn" that this Court's Opinion requires and that Forman found lacking. Election Truth All., 2026 WL 1707266, at *5.

**B. The threat of future injury is non-speculative, and the relief sought would meaningfully prevent it from recurring**

This Court's June 12, 2026 Opinion held that prospective standing additionally requires "a plausible, non-speculative threat of future injury traceable to the Defendants' conduct, and a showing that injunctive relief would meaningfully prevent that injury from recurring." Election Truth All., 2026 WL 1707266, at *14. Plaintiffs address that showing as it bears on ES&S specifically, and incorporate by reference the fuller treatment in Section III of Plaintiffs' concurrently filed Opposition to Secretary Schmidt's Motion to Dismiss.

The threat of future injury does not depend on predicting that any particular scanning malfunction will recur. It rests on a presently-existing condition: the hash-validation deficiency in the software family ES&S designed and continues to supply to Cambria County remains undisclosed to Pennsylvania authorities and unremediated in the code itself, Third Am. Compl. ¶¶ 122–126, and ES&S "continues to supply, license, service, and support that software and the associated hardware in Cambria County for use in the November 3, 2026 general election." Id. ¶ 126. Each named Plaintiff will vote on that same software family in November 2026. Id. ¶¶ 34, 41. Because the deficiency is a current condition in code ES&S itself wrote and continues to distribute, not a prediction about a future event, the threat that it will again affect Plaintiffs' votes is not speculative.

The relief sought against ES&S is what makes that threat preventable rather than merely predictable: production of the source code, build records, and vulnerability history necessary to determine, before the November 2026 election, whether the documented deficiency remains present and to correct it if so. Id. ¶ 170; Prayer for Relief ¶ G. That is examination and correction in advance of the injury, which is the kind of relief this Court's standard requires — not a request to unwind a past election.

### C. Causation: the Complaint traces a specific chain to ES&S's own conduct

ES&S argues that any injury is traceable to Cambria County and the Secretary, not to ES&S, because ES&S is a private vendor engaged in arm's-length commercial transactions and the Complaint's narrative of Election Day conduct — the scanning failure, the ballot duplication — concerns county officials. ECF No. 89 at 9–10.

That argument addresses the wrong paragraphs. The Complaint's causation allegations directed at ES&S do not rest on Election Day conduct; they rest on ES&S's own design, knowledge, and disclosure decisions. ES&S designed, built, and licensed the software family containing the hash-validation mechanism whose deficiencies Texas examiners documented — a mechanism that is "ES&S's own product," whose "condition is the direct result of ES&S's own design and engineering choices." Third Am. Compl. ¶ 122. ES&S had actual knowledge of the deficiencies, identified to it directly in the Texas certification process and in the exchange concerning a specific engineering change order. Id. ¶ 123. ES&S did not remediate the deficiency in the code; it updated documentation instead. Id. ¶ 124. ES&S characterized the fix as specific to Texas and, on information and belief, did not disclose the deficiency to the Pennsylvania Department of State or to Cambria County. Id. ¶ 125. And ES&S continues to supply, license, service,

and support the affected software and hardware in Cambria County for the November 2026 election. Id. ¶ 126. As pled: "ES&S's own conduct — building the mechanism, learning of its deficiencies, declining to remediate them, withholding notice of them from Pennsylvania purchasers, and continuing to supply the affected systems — is what places Plaintiffs' November 2026 votes on an unverified system. No act of any third party is required to complete that chain." Id. ¶ 127. That is a causal chain running to ES&S's own design and disclosure decisions, independent of what any county official did on Election Day 2024.

### D. Redressability: the relief sought against ES&S is integral to the prospective relief the Complaint as a whole seeks

ES&S argues that producing source code, build records, and audit logs does not "un-count" any ballot or restore the weight of any vote, and so cannot redress the alleged dilution. ECF No. 89 at 10–11.

Plaintiffs do not seek that production as a freestanding remedy for past dilution; Count III seeks only prospective relief, and the examination materials sought from ES&S are the means by which the prospective, systemic relief the Complaint seeks as a whole — independent forensic examination of the software before the November 2026 election — can actually be performed. Third Am. Compl. ¶ 170; Prayer for Relief ¶ G. ES&S is, on the Complaint's allegations, the only party in possession of the source code, engineering change records, and vulnerability history necessary to determine whether the documented deficiency has been remediated in the version currently deployed. Id. ¶¶ 122–126. Relief that examines and, where warranted, requires correction of the systems Plaintiffs will vote on in November 2026 redresses the prospective-unverifiability injury pled in paragraph 28 directly: it is the means of restoring the

verifiability the Complaint alleges has been lost. That the requested production is subject to an appropriate protective order, Prayer for Relief ¶ G, addresses ES&S's separate trade-secret concern without eliminating the redressability of the relief sought.

### E. ETA's associational standing follows from the individual Plaintiffs' standing

Because ETA's associational standing depends on at least one member having standing to sue in his or her own right, and because Plaintiffs Reese, Mack, and Hohman each independently have standing for the reasons above, ETA's associational standing follows. Third Am. Compl. ¶ 51. The interests ETA seeks to vindicate — its members' interest in casting an effective, verifiable vote — are germane to ETA's stated purpose of protecting election integrity, and the prospective, systemic relief sought does not require the participation of individual members in this suit.

## III. PLAINTIFFS' CLAIMS DO NOT PRESENT A NON-JUSTICIABLE POLITICAL QUESTION

ES&S argues that the Elections Clause commits the regulation of elections to the state legislature and Congress, and that the Court lacks judicially manageable standards to determine which method of counting ballots is "most accurate." ECF No. 89 at 3, 12–14 (citing *Baker v. Carr*, 369 U.S. 186, 217 (1962); *Agre v. Wolf*, 284 F. Supp. 3d 591, 620 (E.D. Pa. 2018)).

Plaintiffs do not ask this Court to select among methods of counting ballots, to prescribe a preferred counting technology, or to override any policy choice the Pennsylvania General Assembly has made. Plaintiffs ask the Court to determine whether requirements the Commonwealth has already imposed by statute — the Secretary's certification obligations under 25 P.S. § 3031.5, and the chain-of-custody and ballot-

accounting recordkeeping obligations imposed on county boards under 25 Pa. Stat. §§ 2971 and 3154 — were followed, and whether the failure to follow them deprived Plaintiffs of rights secured by the Fourteenth Amendment. That is a familiar judicial function, not a request that the Court design an election system from the bench. Courts routinely adjudicate Equal Protection challenges to the administration of elections, including challenges to disparate ballot-counting practices, without transgressing the political question doctrine. See *Bush v. Gore*, 531 U.S. 98, 104–05 (2000) (per curiam) (adjudicating an Equal Protection challenge to disparate standards for counting ballots without invoking the political question doctrine); *Reynolds v. Sims*, 377 U.S. 533, 555 (1964) (the right to vote may be neither denied outright nor diluted by ballot-box stuffing). *Marks v. Stinson*, 19 F.3d 873 (3d Cir. 1994), likewise adjudicated a fraud-based vote-dilution claim to judgment without any suggestion that the claim was non-justiciable.

None of the six Baker factors is implicated on the theory Plaintiffs actually plead. There is no textually demonstrable commitment of the specific question presented — whether documented software deficiencies were disclosed and remediated, and whether required recordkeeping was performed — to a coordinate branch; no policy determination of the kind reserved to the legislature is required to determine whether a certification statute or a recordkeeping statute was complied with; and resolving that question expresses no disrespect to the General Assembly, which has already fixed the standard Plaintiffs ask the Court to apply. The cases ES&S cites in Section III.B of its brief, addressing claims that a state's chosen election procedures were themselves unconstitutional or that voting machines generally were unreliable, are inapposite to a

claim that a specific, identified statutory certification and recordkeeping regime was not followed.

## IV. THE THIRD AMENDED COMPLAINT ADEQUATELY ALLEGES THAT ES&S ACTED UNDER COLOR OF STATE LAW

ES&S argues it is not a state actor because it does not organize, regulate, or supervise elections, and that its activities — programming election definitions, supplying and validating counting software, and instructing county officials on testing — are the ordinary activities of a commercial vendor, citing *M.B. v. Schuylkill County*, 375 F. Supp. 3d 574, 596 (E.D. Pa. 2019). ECF No. 89 at 18–21.

A private party acts under color of state law where it is a willful participant in joint action with the State or its agents. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 941 (1982). The Complaint alleges more than an arm's-length vendor relationship. It alleges that ES&S "directed Cambria County officials in the handling of ballots during the November 5, 2024 general election," Third Am. Compl. ¶ 167 — an allegation of active direction over the county's conduct of the election itself, not merely the sale and technical support of equipment. Taking that allegation as true, as the Court must on this motion, ES&S is alleged to have jointly participated in the specific conduct — the handling of ballots on Election Day — that gives rise to Plaintiffs' injury, which distinguishes this case from *M.B.*, where the private defendant's conduct was not alleged to have directed the government actor's handling of the specific conduct at issue. Whether that allegation is ultimately borne out is a question for summary judgment or trial; at the pleading stage, it is sufficient to allege joint action under color of state law.

Because Count III's joint-action theory is adequately pled, ES&S's alternative Rule 19(a)(1)(A) argument does not need to be reached. If the Court nonetheless concludes that ES&S is not a state actor, Plaintiffs maintain in the alternative that ES&S remains a necessary party: it is, on the Complaint's own allegations, the only party in possession of the source code, engineering records, and vulnerability history necessary to the examination the requested prospective relief requires, Third Am. Compl. ¶¶ 122–126, 171, such that complete relief cannot be accorded among the remaining parties in ES&S's absence. Fed. R. Civ. P. 19(a)(1)(A).

## V. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny ES&S's Motion to Dismiss the Third Amended Complaint.

Respectfully submitted,

MCNAIR LAW OFFICES, PLLC

By: s/ Timothy D. McNair
Timothy D. McNair, Esquire
Pa. ID No. 34304
821 State Street
Erie, PA 16501
(814) 452-0700
(814) 454-2371 (fax)
tmcnair@mcnairlaw.com
Counsel for Plaintiffs

**CERTIFICATE OF SERVICE**

I hereby certify that on this _5th_ day of October, 2026, I caused the foregoing document to be filed with the United States District Court for the Western District of Pennsylvania via the Court's CM/ECF system, which will provide electronic notice to all counsel and parties of record.

s/ Timothy D. McNair
Timothy D. McNair, Esquire