**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ELECTION TRUTH ALLIANCE, JENNIFER REESE, CHRISTOPHER MACK, and GRACE HOHMAN,<br>Plaintiffs,<br>v.<br>AL SCHMIDT, in his official capacity as Secretary of the Commonwealth of Pennsylvania; BOARD OF ELECTIONS OF CAMBRIA COUNTY; ELECTION SYSTEMS & SOFTWARE, LLC; AND JOHN DOE,<br>Defendants. | ELECTRONICALLY FILED<br>CIVIL NO.: 1:25-cv-00329<br><br>**HONORABLE SUSAN PARADISE BAXTER** |

**DEFENDANT ELECTION SYSTEMS & SOFTWARE, LLC'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS**

Defendant Election Systems & Software, LLC ("ES&S") respectfully submits this Reply Memorandum in Support of its Motion to Dismiss with Prejudice Plaintiffs' Third Amended Complaint (the "Complaint").

## I. INTRODUCTION

Plaintiffs Election Truth Alliance ("ETA"), Jennifer Reese ("Reese"), Christopher Mack ("Mack"), and Grace Hohman ("Hohman," collectively, "Plaintiffs") have asserted three general arguments in opposition to ES&S's Motion to Dismiss (the "Motion")—namely, (1) that the Complaint pleads a particularized grievance that is redressable; (2) that the Complaint presents a justiciable issue; and (3) that the Complaint adequately alleges that ES&S acted under color of state law. These arguments are addressed below.

## II. ARGUMENT

### A. The Complaint contains only generalized grievances common to all voters and presents non-justiciable political questions.

Plaintiffs admit that they cannot show their 2024 ballots were altered. *See* ECF 102 at 2. In this sense, Plaintiffs have not alleged that they have actually been harmed *at all*—they have only speculation to support this alleged harm. Plaintiffs' "personal" experience was, by their own account, the same as everyone else's: ballots that did not contain timing marks which were not able to be scanned by ES&S' voting system "affected all precincts within the County," and the County duplicated "all unscannable ballots." ECF 71 ¶¶ 102, 106. An injury suffered identically by every in-person voter in Cambria County is the definition of a generalized grievance. Additionally, no facts have been pleaded—nor are there any facts that could be pleaded—which permit the inference to be drawn that the duplicated ballots were incorrectly duplicated.

Plaintiffs have also claimed that Cambria County made a decision about how to duplicate ballots in the event of a technological breakdown. They disapprove of that process, and are asking the Court to change that process. The process of alleged duplication of ballots applies to all voters equally and thus constitutes a generalized grievance. *See Election Truth All. v. Schmidt*, No. 1:25-CV-329, 2026 WL 1707266, at *4–5 (W.D. Pa. June 12, 2026); *Forman v. Schmidt*, No. 25-2013, 2026 WL 810648, at *2 (3d Cir. Mar. 24, 2026) (noting one's inability to verify that one's votes were tabulated accurately "does not amount to a violation of any right protected by those constitutional provisions"); *see also* ECF 71 ¶¶ 102–106.

Further, this requested relief contradicts Plaintiffs' arguments relating to the political question doctrine: "Plaintiffs do not ask this Court to select among methods of counting ballots, to prescribe a preferred counting technology, or to override any policy choice the Pennsylvania General Assembly has made." ECF 102 at 7. However, that is *exactly* what Plaintiffs request—to prevent Cambria County from replicating its duplication process, to allow or disallow ES&S's products to be used (after Plaintiffs unilaterally determine whether ES&S's software is satisfactory), and to generally "correct" the voting process set forth by the Pennsylvania General Assembly. *See id.* at 37 (a)-(b), 39 (c)-(d), and 41-42 (A)-(G).[1]

Additionally, there is no injunctive relief which could meaningfully prevent scanning issues from occurring, nor is there any injunctive relief which would prevent Cambria County from duplicating ballots in the manner that is alleged to be improper other than by requiring the Court to interfere in a process textually committed to the legislature. *See* U.S. Const. art. I, § 4, cl. 1; *Baker v. Carr*, 369 U.S. 186, 217 (1962).

As to ES&S's software itself, Plaintiffs have asserted that it contains "undisclosed" code deficiencies. Plaintiffs seek only the production of certain documents associated with ES&S's products to determine "whether the documented deficiency remains present and to correct it if so." ECF 102 at 5; *see* ECF 71 ¶ 170. However, an injunction should not be used to require ES&S to turn over its source code to allow Plaintiffs to unilaterally "determine" whether there is any deficiency.

[1] While Plaintiffs claim to seek to address future harm, not past harm, several of their requests for relief relate to past alleged harm. *See* ECF 71 at 37 (b), (f) & 39 (a)-(c).

Thus, as to ES&S, the claims are speculative and non-redressable. Furthermore, the "relief" sought by Plaintiffs could be sought via a subpoena without the need for ES&S to be a party to this present suit.

As to causation, ES&S's products were approved by the State of Pennsylvania and specific (and unique) requirements held by the State of Texas are not relevant to the requirements of the State of Pennsylvania. To reiterate, Plaintiffs' alleged harm relates to the duplication process—a process designed, directed, and carried out exclusively by Cambria County officials (*see* ECF 71 ¶¶ 106, 136) and which could follow *any* technological issue. Thus, Plaintiffs' first two arguments fail.[2]

**B. The Complaint fails to adequately allege ES&S acted under color of state law.**

Plaintiffs attempt to exaggerate the extent of ES&S's role in the November 5, 2024 election. As alleged by Plaintiffs, ES&S "directed Cambria County officials in the handling of ballots." ECF 71 ¶ 167. However, directing an individual how to use an election machine which was already selected by Cambria County as the method to be used to count ballots does not constitute independent and additional instruction on what should be done with the ballots in the event of a scanning issue. Nor do Plaintiffs allege that ES&S instructed poll workers as such. Contrary to Plaintiffs' assertion, this allegation actually suggests ES&S's role was limited to the sale and technical support of equipment. Furthermore, the "handling of ballots on Election Day" does not constitute state action in and of itself. Thousands of voters "handle" their ballots and volunteer poll workers "handle" thousands of ballots. This is not the

[2] ES&S addressed Plaintiffs' associational standing arguments in ECF No. 89 at 11.

type of "joint action" which constitutes a private party acting under color of state law. Finally, contrary to Plaintiffs' assertions, it is not necessary for ES&S to be a party to this action as Plaintiffs seek only records from ES&S—records which could be sought via a subpoena.

## III. CONCLUSION

For the foregoing reasons, Defendant Election Systems & Software, LLC respectfully requests that the Court dismiss Plaintiffs' Third Amended Complaint as against ES&S with prejudice, and grant ES&S such other and different relief as the Court deems appropriate.

Dated this 9th day of October 2026.

Respectfully submitted,

By: */s/ John Matson*

John V. Matson (Neb. Bar #25278)
Kendra M. Vosler (Neb. Bar #27686)
KOLEY JESSEN P.C., L.L.O.
One Pacific Place, Suite 800
1125 South 103rd Street
Omaha, NE 68124-1079
(402) 390-9500
(402) 390-9005 (facsimile)
John.Matson@koleyjessen.com
Kendra.Vosler@koleyjessen.com

*Attorneys for Defendant ES&S.*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 9th day of October, 2026, the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system, which sent notification to all CM/ECF participants.

*/s/ John Matson*