**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ELECTION TRUTH ALLIANCE, *et al.*,** <br> **Plaintiffs,** <br><br> **v.** <br><br> **AL SCHMIDT, in his official capacity as Secretary of Commonwealth of Pennsylvania, *et al,*** <br> **Defendants.** | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | **ELECTRONICALLY FILED** <br> **CIVIL NO. 1:25-cv-00329** <br><br> **HONORABLE SUSAN PARADISE BAXTER** |

**SECRETARY SCHMIDT'S REPLY IN SUPPORT OF HIS MOTION TO DISMISS THE THIRD AMENDED COMPLAINT**

Defendant, Secretary of the Commonwealth Al Schmidt, by and through his undersigned counsel, hereby files this Reply in support of his Motion to Dismiss the Third Amended Complaint, Dkt. No. 96.[1]

## I. Individual Plaintiffs Have Not Established Injury-in-Fact

The individual Plaintiffs explain that their "concrete, personal harm" is that their ballots could not be scanned, were subsequently duplicated, and there is no record to show whether the duplication was accurate. Pls. Opp. 5, 7, Dkt. No. 100. This theory of harm fails to meet what this Court required of the first and second amended complaints. It does not show that Plaintiff's "specific ballot[s] . . . as a concrete and non-speculative matter, [were] miscounted or not tabulated at all as a result of identifiable government action." Op. 10, Dkt. No. 67. Indeed, the individual plaintiffs fail to provide "factual content sufficient to permit the inference to be drawn." *Id.*

A lack of record regarding duplication is not itself an injury, nor is it the same thing as the

[1] Also pending before this Court is Plaintiffs' motion to file a fourth amended complaint, which the Secretary has opposed at Dkt. No. 91.

miscounting of or failure to tabulate a ballot.[2] But a lack of records also does not plausibly establish that the ballots were wrongly duplicated. The individual Plaintiffs have failed to provide any "factual content sufficient to permit the inference to be drawn" that election workers in Cambria County in fact failed to properly duplicate their ballots. Instead, the individual Plaintiffs' theory of injury-in-fact boils down to a lack of trust in basic election administration procedures, and in Cambria County election officials' execution of those procedures. Individual Plaintiffs' lack of trust is not an injury, and the plausibility standard requires more.

Moreover, there is no relationship between the County duplicating ballots because the first ballots could not be read, and any sort of software vulnerabilities or problems with the machines. Assuming *arguendo* that the Third Amended Complaint's allegations about software system vulnerabilities are plausible, they are unrelated to the "concrete, personal harm" that the individual Plaintiffs allege. Pls. Opp. 5. If the ballots were not properly duplicated and individual Plaintiffs' ballots were wrongly marked for the winning Presidential candidate, then any software vulnerabilities or manipulation to change the results in favor of the winning Presidential candidate

[2] Plaintiffs phrase it more broadly in their Complaint: "The deprivation of the ability to verify that one's own vote was counted as cast is itself a concrete and particularized injury." Compl. ¶ 29. This cannot be correct. The right to cast a secret vote is fundamental and protected by the Pennsylvania Constitution. *Banfield v. Cortés*, 100 A.3d 155, 178 (Pa. 2015); Pa. Const., Article VII, § 4. For voters to verify that their vote was *counted* as cast would at the very least require them to access cast ballots and/or the cast vote records and to be able to positively identify which was theirs. This would violate the law. *See* 25 P.S. § 2648 (exempting "the contents of ballot boxes and voting machines" from public disclosure); 25 P.S. § 3146.8(g)(4) (mail-in or absentee ballots that have identifying marks on them must be set aside and cannot be counted); *Honey v. Lycoming Cnty. Offs. of Voter Servs.*, 355 A.3d 801, 819 (2026) ("[T]here appears to be no debate that the actual physical ballots cast in an election constitute 'contents of' a ballot box."); *id.* at 823-24 (holding that the cast vote record at issue was subject to public disclosure in part because the "multiple levels of randomization alleviate any concern about voter secrecy making voter identification remote and minimal," but recognizing that "a county's method of generating [cast vote records] may violate the secrecy mandate" and that whether it does or does not "is a question to be addressed on a case-by-case basis").

would be irrelevant, because there would have been nothing to change in the tabulation of those particular ballots.

The individual Plaintiffs here take a basic election administration problem and attempt to leverage it as an excuse to do the exact sort of deeply intrusive examination that can and does render electronic voting systems unusable. *See Cnty. of Fulton v. Sec'y of Commonwealth*, 330 A.3d 481, 502 (Commw. Ct. 2024) ("These provisions [of the Election Code] reflect a legislative intent of limiting access to EVSs, which aids in ensuring that the systems can be operated in a manner that is safe, secure, and consistent with the requirements of the Election Code); *id.* at 505 (finding that the Secretary has authority to prohibit use of voting equipment that is "rendered decertified as a result of unauthorized third-party access").[3] This Court should not countenance such actions, particularly where Plaintiffs seek to interfere with voting systems less than a month before the election. *See* Pls. Opp. 6 (seeking examination "to be completed before the November 3, 2026 general election, with correction of any documented deficiency as a predicate to the systems' continued use").

Finally, having failed to establish an injury in fact from the 2024 general election, Plaintiffs also fail to plead factually specific, concrete, particularized injuries-in-fact in connection with future elections. Op. 16. The individual Plaintiffs tie their forward-looking injury to four alleged facts: the software remains certified, the same systems are deployed in Cambria County, the

[3] *See also* Pa. Dep't of State, "Directive Concerning Access to Electronic Voting Systems, Including But Not Limited to the Imaging of Software and Memory Files, Access to Related Internal Component, and the Consequences to County Boards for Allowing Such Access," Version 1.1 (Apr. 6, 2026), *available at* https://www.pa.gov/content/dam/copapwp-pagov/en/dos/resources/voting-and-elections/directives-and-guidance/2026/2026-directive3_on-access-to-voting-systems.pdf (prohibiting unauthorized access to electronic voting systems, which "undermines chain of custody requirements and strict access limitations necessary to prevent both intentional and inadvertent tampering with electronic voting systems [and] jeopardizes the security and integrity of those systems[.]").

alleged deficiencies have not been remediated, and no examination has been performed on the systems. Pls. Opp. 4. These are precisely the type of generic, county-wide allegations that go to a generalized vote-dilution claim. They do nothing to establish plausibility that the individual Plaintiffs' specific ballots are likely to be miscounted or not tabulated, or that the "alleged (historical) inaccuracies" in Plaintiffs' ballots are likely to reoccur, particularly as Plaintiffs specifically disclaim that "any particular contingent event . . . will happen again at any particular polling place." Pls. Opp. 4.[4]

**II. Individual Plaintiffs Have Not Established Causation**

Plaintiffs' Third Amended Complaint establishes causation no better than the First and Second Amended Complaints. Plaintiffs respond that the Secretary certified the election system at issue and has failed to re-examine it or rescind its certification. Pls. Opp. Br. 8. This Court has already held that this is not enough. Op. 12-13 ("Both pleadings allege that . . . Secretary Schmidt's failure to disapprove non-compliant systems caused the asserted vote-counting inaccuracies. The alleged causal chain instead depends on the actions of third-party voting machine vendors and software developers who programmed the systems at issue, yet the complaints do not describe with any specificity how any named Defendant was involved *in the alleged manipulation*.") (emphasis added).

**III. *Ex Parte Young* Precludes Retrospective Relief.**

Plaintiffs state that they do not seek retrospective relief. Opp. Br. 9. The Third Amended Complaint in fact contains multiple requests for retrospective relief. *See* Dkt. No. 71 ¶¶ 155(b)-(f), 165(a)-(c). However, the Secretary is content to consider these requests drafting errors that were

[4] Plaintiffs' opposition brief does not address any allegations relevant to Election Truth Alliance's claim for organizational standing based on diversion of resources.

mistakenly not deleted from prior iterations of the Complaint, and to rely on Plaintiffs' representation in their opposition brief that they do not seek retrospective relief.

**IV. Plaintiffs Fail to State a Claim.**

Plaintiffs acknowledge that the two cases they cite in support of their fraud theory—*Marks v. Stinson*, 19 F.3d 873 (3d Cir. 1994), and *Griffin v. Burns*, 570 F.2d 1065 (1st Cir. 1978)—"both involved harm tied to specific, identified ballots or a discrete group of ballots rather than a county-wide statistical inference alone." Pls. Opp. Br. 13. Plaintiffs attempt to get around this by arguing that they have alleged each individual Plaintiff's "own physical ballot was displaced into an unverifiable duplication process as a result of identifiable government action." *Id.* But as explained *supra*, the alleged unverifiability of the process is not an injury, and the individual Plaintiffs have not plausibly alleged that their ballots were not properly duplicated or counted. Accordingly, their attempt here fails. As to Plaintiffs' "narrower, class-of-one theory," Pls. Opp. Br. 14, the Secretary has already explained why that theory fails as to the Fourth Amended Complaint, and the same remains true for the Third Amended Complaint. *See* Sec'y Opp. to Mot. for Leave to Amend 19-22, Dkt. No. 91.

Respectfully submitted,

Date: October 13, 2026

/s/ Michelle Rupp
Kathleen A. Mullen (Pa. 84604)
Executive Deputy Chief Counsel
Michelle Rupp (Pa. 337463)
Assistant Counsel
Pennsylvania Department of State
306 North Office Building
Harrisburg, PA 17120
Tel: 717-783-0736
Fax: 717-214-9899
Email: kamullen@pa.gov
mirupp@pa.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on October 13, 2026, I caused the foregoing document to be filed with the United States District Court for the Western District of Pennsylvania via the Court's CM/ECF system, which will provide electronic notice to all counsel and parties of record.

*/s/ Michelle Rupp*
Michelle Rupp